Attachment A
ECF 1 Complaint

Criminal Complaint

# UNITED STATES DISTRICT COURT

for the

Western District of Texas

<div style="text-align:right">

**FILED**
May 16, 2025
CLERK, U.S. DISTRICT COURT
WESTERN DISTRICT OF TEXAS

BY: _____sec_____
DEPUTY

</div>

| | |
|---|---|
| United States of America | ) |
| v. | ) |
| James Wesley Burger | )    Case No. |
| | ) |
| | )    **1:25-mj-00583** |
| _____ | ) |
| *Defendant(s)* | |

## CRIMINAL COMPLAINT

I, the complainant in this case, state that the following is true to the best of my knowledge and belief.

On or about the date(s) of _____January 23, 2025_____ in the county of _____Williamson_____ in the

_____Western_____ District of _____Texas_____, the defendant(s) violated:

| Code Section | Offense Description |
|---|---|
| 18 U.S.C. 875(c) | Threats communicated in interstate commerce |

This criminal complaint is based on these facts:

See Attachment A

☑ Continued on the attached sheet.

_____
*Complainant's signature*

FBI Special Agent Carletta Carter
*Printed name and title*

Sworn to via telephone pursuant to F.R.C.P. 4.1.

Date: ___May 16, 2025___

_____
*Judge's signature*

City and state: _____Austin, Texas_____

Mark Lane, U.S. Magistrate
*Printed name and title*

<div align="center">

**UNITED STATES DISTRICT COURT**
**WESTERN DISTRICT OF TEXAS**
**AUSTIN DIVISION**

</div>

**FILED**

May 16, 2025

CLERK, U.S. DISTRICT COURT
WESTERN DISTRICT OF TEXAS

BY: _____ sec

DEPUTY

**S E A L E D**

| | | |
|---|---|---|
| **UNITED STATES OF AMERICA** | § § | |
| **v.** | § § | NO. **1:25-mj-00583** |
| **JAMES WESLEY BURGER** | § § | |
| **Defendant.** | § § | |
| | § § § | |

<div align="center">

**AFFIDAVIT IN SUPPORT OF CRIMINAL COMPLAINT**

</div>

I, Carletta Carter, Special Agent, Federal Bureau of Investigation, Austin, Texas, being duly sworn, depose and state the following:

1.        I am a Special Agent with the Federal Bureau of Investigation (FBI) and have been since July 5, 2020. My duties involve the investigation of a variety of violations of federal offenses including threats to life, acts of domestic terrorism, acts of international terrorism, and other violations of federal law. I have completed approximately five months of basic and specialized training at the FBI Academy, Quantico, Virginia.  During that time, I received formal training and have gained experience in interviewing and interrogation techniques, arrest procedures, search applications, the execution of search and seizures, and various other criminal laws and procedures. I am an "investigative or law enforcement officer of the United States" within the meaning of Section 2510(7) of Title 18, United States Code, that is, an officer of the United States who is empowered by law to investigate and make arrests for offenses alleged in this warrant.

2.        My knowledge is based on my participation in the investigation, discussions with other law enforcement agents, and a review of reports and other documentary evidence. This affidavit is intended to show merely that there is sufficient probable cause for the requested warrant

and does not set forth all of my knowledge about this matter. All statements are set forth in sum and substance and relevant part. All quotations or transcriptions of interviews are in draft form and subject to revision.

3.     Based upon the facts set forth below, I submit there is probable cause to believe that, on or about January 23, 2025 within the Western District of Texas and elsewhere, Defendant James Wesley BURGER did violate 18 U.S.C. § 875(c) by transmitting in interstate commerce any communication containing any threat to injure the person of another.

## **FACTS**

4.     The United States is investigating BURGER for making threats via the Roblox gaming platform to attack a Christian concert or event.

*Report of the Threat by a Witness*

5.     On or about January 23, 2025, the FBI received a report from an individual located in the State of Nevada (the "Witness") of a possible domestic terrorist incident being discussed on Roblox by user "Crazz3pain." On or about January 21, 2025, the Witness observed the user of Crazz3pain state they were willing, as reported by the Witness, to "kill Shia Muslims at their mosque." Crazz3pain and another Roblox user (Roblox User 1), continued to make violent statements so the Witness left the game but returned to the game on or about January 23, 2025. The Witness observed Crazz3pain tell Roblox User 1 to check their messages on Discord. Roblox User 1 replied on Roblox to Crazz3pain, they should delete the photograph of firearms within the unknown Discord chat, "in case it was flagged as suspicious… the firearms should be kept hidden." Crazz3pain continued to speak on Roblox to Roblox User 1 about their desire to commit "martyrdom" at a Christian event that he wanted to bring humiliation to worshippers of the cross. When the Witness asked Crazz3pain if it was going to be at a church service, Crazz3pain told them no, it was going to be at a Christian concert. When Crazz3pain was asked when it would be,

Crazz3pain said "it will be months… Shawwal… April." Based on my training and experience, I know Shawwal is the tenth month of the Islamic calendar and follows Ramadan. It corresponds to approximately March 31, 2025, to April 28, 2025. The Witness observed messages from Crazz3pain stating they owned at least one firearm. The following are certain screenshots provided by the Witness though not all of the communications were captured.





6. Based on billing information provided by Roblox, the name associated with the Crazz3pain account was James W BURGER, with an address in Round Rock, TX, and a Gmail

email address. Roblox also provided account internet protocol (IP) address access logs showing access to the account from the San Antonio and Austin, TX area. This corroborates BURGER being within the Western District of Texas at the time he made threatening statements as Roblox user Crazz3pain.

*Search of BURGER's Residence and Interview of BURGER*

7.      On or about February 28, 2025, investigators executed a search warrant at BURGER's residence. Among other things, agents recovered computers and an iPhone. During interviews conducted in connection with the search, agents learned that one of BURGER's family members had installed a keystroke logger (or keylogger) program on BURGER's computer. Based on open resource review of the keylogger company's website, I have learned that this software is capable of collecting chat and email messages sent, websites visited, online searches, and social networking activity, passwords entered, file and document activity, and application activity. When the software captures what an individual types, it also records when the user deletes and retypes words or phrases. The software stores the keystroke logs on the monitored computer itself. The administrator of the computer then has to access the software directly on the monitored computer to view the captured activity logs. The software can be configured to send email reports to the administrator/user's email address specified. One of BURGER's family members provided the keystroke logs to the FBI.

8.      On or about January 27, 2025, the keystroke logger software recorded an individual accessing RobloxPlayerBeta.exe. I know that is a program used to access the Roblox platform. As noted below, during an interview with law enforcement, BURGER admitted to using this laptop to play Roblox and there is thus probable cause to believe he was the user. BURGER typed the following            at            approximately            7:03            pm:            "r

wwwwwwawdasssssssssssssssssssssssssawwwwwadddawdsadd/Ibn Isa ({Backspace]* /As salaamu alaykom /I've come to conclude it will befall the 12 of Shawwal aa/And it will be a music festival /Attracting bounties of Christians s/In'shaa'allah we will attain martyrdom /And deal a grevious wound upon the followers of the Cross /Pray for me and enjoin yourself to martyrdom /There In'shaa'allah ya Rabb al-Mu'mineen a". An employee of the keylogger software company has confirmed that "/" refers to a user hitting the "Enter" key and thus I believe these statements were communicated and not merely typed on the computer. After comparing the keystroke logs with the report to the FBI by the Witness, the above statement was not the original threat, but an additional threat BURGER made on Roblox, similar to the one the Witness reported. The language, however, is consistent with BURGER's statements as captured by the Witness.

9.      For the date and time that the Witness reported they encountered BURGER on Roblox, there were no keystroke logs reported, indicating BURGER used a different device such as his iPhone to access Roblox. I observed cookie data obtained from BURGER's iPhone and found that, at 1:13:55 a.m. UTC on January 24, 2025, BURGER accessed Roblox. The Round Rock, Texas area falls inside the Central Time Zone and the date was before daylight savings time. The time thus translates to approximately 7:13 p.m. on January 23, 2025. The corresponding date for the threat reported by the Witness is estimated to have been around that time on January 23, 2025. I believe this data corroborates BURGER's use of Roblox at the time the Witness reported encountering Roblox user Crazz3pain (BURGER).

10.     During the premises search warrant execution, BURGER agreed to speak voluntarily with agents while seated in his living room. He was advised that he was not in custody and that the interview was voluntary. He was afforded the opportunity to pause the interview and leave the room to pray.

11.     Asked about the goals of the threat against a Christian concert, BURGER stated: "[A]t the time it was mostly a heightened emotional response… but it certainly doesn't take away from the fact that you know that [] is . . . the concept of what would have occurred . . . the deaths of, of Christians . . . that's not something that's going . . . be shunned or, or shied away from . . . the details definitely . . . became exaggerated which . . . the end, end goal it's still the same . . . it hasn't shifted a bit. . . . [T]o obey and… submit and live under the banner and laws of God or . . . to literally die trying. . . . So that's the end goal.  … [G]et the hell out of the US and . . . if I can't . . . then, martyrdom or bust."

12.     Regarding the intention behind the statements made by Crazz3pain, BURGER stated: "[T]he intention . . . and the action is something that is meant to or will cause terror. . . . I cannot agree with the term terrorist, you know, I definitely agree that it serves the same means that a terrorist would be seeking."  Asked whether he was a terrorist, BURGER said:  "I mean, yeah, yeah.  By, by the sense and . . . by my very own definition, yes, I guess, you know, I would be a terrorist."

13.     BURGER was also asked whether he mentioned specific guns in his online statements, and he said: "I think the closest I mentioned was mentioning I would use like . . . a pistol or a car or like a small hunting rifle.  Something like that.  I don't remember mention of like a shotgun."  Asked whether he would be looking to acquire a rifle to carry out an attack: "Yes. Pretty much."

14.     During the interview, BURGER was shown photographs provided by the Witness of the conversation between Crazz3pain and two other Roblox users discussing an attack at a Christian concert. Although BURGER at one point told case agents that he owned the account Crazz3pain and provided Agents the password, when shown the photograph, BURGER attempted to say he was not the user of Crazz3pain.  I began referencing the statement the Witness told the

FBI that they saw Crazz3pain make on Roblox, I said to BURGER, "…I have an ongoing conversation, and in the conversation, you talk about dealing a grievous, grievous- wound to followers of the cross. So you were able to just put, input that sentence, so that was you that made that statement." When I said the word "grievous," BURGER said the word "wound," indicating he was aware of that specific statement. BURGER stated, "huh how do you mean?" I said, "you made that statement?" BURGER stated, "Yeah, yeah, yeah, yeah."

15. Although he attempted to argue that he used the Crazz3pain account in conjunction with another person, BURGER admitted, "Yes, I used that account, and yes, I've made similar statements."

*Corroborating Information from BURGER's Electronic Devices*

16. A search of BURGER's electronic devices provided further corroborating evidence of his use of the Crazz3pain Roblox account and his intent:

    a. On an Apple iPhone, the Notes application allows a user to record quick thoughts or to save longer notes consisting of checklists, images, web links, scanned documents, handwritten notes, or sketches. Two notes explained how to prevent leaving any DNA or fingerprints behind, the third note in the application was titled, "An address to the followers of the cross" and stated the following: Bismillah Hir-Rahmaan Nir-Raheem[1]… "O Kuffar[2]! You are ruthless but we are also ruthless. Did you think that we would remain inattentive? Did you believe we would not repay you in your lands upon your terms, as you did whilst you raped the Umma of its glory and honor and subjected it to a state of weakness and humility humiliation

---

1 Bismillah Hir-Rahmaan Nir-Raheem translates to "In the name of God, most gracious, most merciful."
2 Based on my training and experience, I have learned that "Kuffar" refers to people who are unbelievers or disbelievers, specifically those who reject the faith of Islam.

and corruption? Verily[3] today has brought a great wound upon you and has paralyzed your media and whatever you possess of temporary might and power!" I believe these statements were written by BURGER and corroborate statements he made as Crazz3pain.

b. A search of BURGER's Apple iPhone showed searches for, among other things, the following:

    i.   "Lone wolf terrorists isis"

    ii.   "Lone wolf truck isis propaganda"

    iii.   "Which month is april in islam"

    iv.   "Festivals happening near me"

    v.   "are suicide attacks haram in islam"

    vi.   "ginger isis member"

    vii.   "38 round," "M14," "g43x," ".223," "g19," "p80," "972 magazine," ".45," "WASR .45," "WASR gun"[4]

    viii.   "kill the disbelievers where you find them quran"

    ix.   "kill cops not trees"

    x.   "what is the most effective knife type"

    xi.   "what is the punishment for the one who insults allah or his messenger"

    xii.   "can tou kill a woman who foesnt wear hijab"

    xiii.   "Is abu bakr apart of ahlul bayt"[5]

---

3 Verily is an old-fashioned adverb meaning in truth or indeed.
4 These searched terms are types of firearms or ammunitions
5 Abu Bakr al-Baghdadi was a leader of ISIS, and served as its first caliph from 2014 until his death in 2019.

# Attachment B
# ECF 3 Government Motion for Detention

**FILED**

May 16, 2025

CLERK, U.S. DISTRICT COURT
WESTERN DISTRICT OF TEXAS

BY: _____ sec
DEPUTY

**UNITED STATES DISTRICT COURT**
**WESTERN DISTRICT OF TEXAS**
**AUSTIN DIVISION**

UNITED STATES OF AMERICA

v

JAMES WESLEY BURGER

        **Defendant.**

NO. **1:25-mj-00583**

## MOTION FOR DETENTION OF DEFENDANT

The government seeks pretrial detention under Title 18, United States Code, Section 3142, et seq., and would show the Court the following:

1.     The pending case involves:

[ ]   (a)    A crime of violence; 18 U.S.C. § 3142(f)(1)(A).

[ ]   (b)    An offense for which the maximum sentence is life imprisonment or death; 18 U.S.C. § 3142(f)(1)(B).

[ ]   (c)    An offense for which a maximum term of imprisonment of ten years or more is prescribed in the Controlled Substances Act, the Controlled Substances Import and Export Act or the Maritime Drug Law Enforcement Act; 18 U.S.C. § 3142(f)(1)(C).

[ ]   (d)    A felony committed after the Defendant had been convicted of two or more prior offenses described in Title 18, United States Code, Section 3142(f)(l)(A)-(C) or comparable state or local offenses.

[ ]   (e)    A felony that is not otherwise a crime of violence that involves a minor victim or that involves the possession or use of a firearm or destructive device or any other dangerous weapon or involves the failure to register under section 2250 of title 18, United States Code; 18 U.S.C. § 3142(f)(1)(E).

[**X**]  (f)    A serious risk that the Defendant will flee; 18 U.S.C. § 3142(f)(2)(A).

[  ]   (g)   A serious risk that the person will obstruct or attempt to obstruct justice, or attempt to threaten, injure or intimidate a prospective witness or juror; 18 U.S.C. § 3142(f)(2)(B).

[  ]   (h)   An offense committed by the Defendant while released pending trial or sentence, or while on probation or parole and the person may flee and/or poses a danger to another person and/or the community requiring an initial 10-day detention pursuant to 18 U.S.C. § 3142(d).

[  ]   (i)   An offense committed by the above named defendant who is not a citizen of the United States or lawfully admitted for permanent residence and the person may flee requiring an initial 10 day detention under the provisions of 18 U.S.C. § 3142(d).

2.     No condition or combination of conditions will:

[**X**]   (a)   Reasonably assure the appearance of the person as required.

[**X**]   (b)   Reasonably assure the safety of the community or any other person.

3.     The United States may advocate additional reasons for detention other than those indicated above as the investigation proceeds and new information becomes available.

4.     Pursuant to 18 U.S.C. § 3142(f) the United States moves that the detention hearing be continued for three (3) days so that the United States can prepare for said hearing.

5.     The Government requests that the Defendant be held without bond.

<div style="margin-left:40%;">

Respectfully submitted,

MARGARET F. LEACHMAN
ACTING UNITED STATES ATTORNEY

By:   /s/ G. Karthik Srinivasan
      G. KARTHIK SRINIVASAN
      Assistant United States Attorney
      903 San Jacinto Blvd., Suite 334
      Austin, Texas 78701
      Office   (512) 916-5858
      Fax      (512) 916 5854
      Karthik.Srinivasan@usdoj.gov

</div>

# Attachment C
# ECF 13 Detention Order

# IN THE UNITED STATES DISTRICT COURT
## FOR THE WESTERN DISTRICT OF TEXAS
### AUSTIN DIVISION

UNITED STATES OF AMERICA,           §
                                    §
v.                                  §           1:25-MJ-583
                                    §
JAMES WESLEY BURGER,                §
                  Defendant.        §

## ORDER OF DETENTION

In accordance with the Bail Reform Act, 18 U.S.C. § 3142(f), a detention hearing was held on May 27, 2025. I conclude that the following facts require the detention of the defendant pending trial in this case.

After a review of the charging instrument(s), the Government's Motion to Detain, the pretrial services report, the evidence presented and the arguments of counsel, I find:

a) by a preponderance of the evidence that no condition or combination of conditions will reasonably assure the defendant's appearance because there is a serious risk that the defendant will flee and,

b) by clear and convincing evidence that no condition or combination of conditions will reasonably assure the safety of any other person and the community.

My decision is based upon the following factors: the nature of the charges described in the Complaint, namely Threats Communicated in Interstate Commerce in violation of Title 18, United States Code § 875(c); the significant statutory and guideline penalties associated with any potential future conviction on these charges and the weight of the evidence against the defendant. The following issues also contribute to the need for continued detention in this case: the Defendant's affinity for firearms and violence, his continued drug use, and the lack of any residence to which

1

he could be released. Lastly, detention of the defendant is also warranted for the reasons set forth in the pretrial services report (page 4) as factors related to the defendant's risk of nonappearance and danger.

My decision is based upon the following factors: the nature and circumstances of the offense charged; the weight of the evidence against the defendant; and the history and characteristics of the defendant, including his lengthy criminal history. In addition, detention of the defendant is also warranted for the reasons set forth in the pretrial services report (page 13) as factors related to the defendant's risk of nonappearance and danger.

## Directions Regarding Detention

The defendant is committed to the custody of the Attorney General or his designated representative for confinement in a corrections facility separate, to the extent practicable, from persons awaiting or serving sentences or being held in custody pending appeal. The defendant shall be afforded a reasonable opportunity for private consultation with defense counsel. On order of a court of the United States or on request of an attorney for the Government, the person in charge of the corrections facility shall deliver the defendant to the United States Marshal for the purpose of an appearance in connection with a court proceeding.

SIGNED May 27, 2025.

_____

MARK LANE
UNITED STATES MAGISTRATE JUDGE

# Attachment D
# ECF 14 Government Exhibit List and Exhibits from Detention Hearing

# UNITED STATES DISTRICT COURT
# FOR THE WESTERN DISTRICT OF TEXAS
# AUSTIN DIVISION

UNITED STATES OF AMERICA          §
*Plaintiff*                        §
                                   §          NO: 1:25MJ583
                                   §
JAMES WESLEY BURGER               §
*Defendants*                       §

### GOVERNMENT'S EXHIBIT LIST

| Exhibit No. | Description | Offered | Objected | Admitted | Not Admitted |
|---|---|---|---|---|---|
| 1 | Screenshots | 5/27/2025 | | 5/27/2025 | |
| 2 | Keylogger Excerpt | 5/27/2025 | | 5/27/2025 | |
| 3 | Photos | 5/27/2025 | | 5/27/2025 | |
| 4 | Interview Clip 1 | 5/27/2025 | | 5/27/2025 | |
| 5 | Interview Clip 2 | 5/27/2025 | | 5/27/2025 | |
| 6 | Interview Clip 3 | 5/27/2025 | | 5/27/2025 | |
| 7 | Interview Clip 4 | 5/27/2025 | | 5/27/2025 | |
| 8 | Interview Clip 5 | 5/27/2025 | | 5/27/2025 | |
| 9 | Interview Clip 6 | 5/27/2025 | | 5/27/2025 | |
| 10 | Interview Clip 7 | 5/27/2025 | | 5/27/2025 | |
| 11 | Interview Clip 8 | 5/27/2025 | | 5/27/2025 | |
| 12 | Jail Notes | 5/27/2025 | | 5/27/2025 | |
| 13 | | | | | |
| 14 | | | | | |
| 15 | | | | | |
| 16 | | | | | |
| 17 | | | | | |
| 18 | | | | | |
| 19 | | | | | |
| 20 | | | | | |
| 21 | | | | | |
| 22 | | | | | |
| 23 | | | | | |
| 24 | | | | | |
| 25 | | | | | |
| 26 | | | | | |
| 27 | | | | | |
| 28 | | | | | |













Don't delay yourselves too long brothers, Jannah awaits us

Member

crazz3pain

-AFK-

Guest

KardalAlii

GOVERNMENT
EXHIBIT

CASE
NO.   A25MJ583-ML

EXHIBIT
NO.        2

| | | | |
|---|---|---|---|
| **Remote Computer:** GAMMA | **Username:** | **Remote IP:** 192.168.0.99 | |
| **Report Created:** Mon 1/27/25 @ 8:27:40 PM | | | |

**Table of Contents:**

- Websites Visited
- Keystrokes Typed

---

## Websites Visited

| Website Visited | Username | Start Time | End Time | Active Time |
|---|---|---|---|---|
| | | > back to top | | |

---

## Keystrokes Typed

| Application | Window Title | Username | Time |
|---|---|---|---|
| msedge.exe | New tab - Personal - Microsoft? Edge | admin | Thu 1/16/25 @ 5:40:13 PM |

r

| Application | Window Title | Username | Time |
|---|---|---|---|
| msedge.exe | Home - Roblox - Personal - Microsoft? Edge | admin | Thu 1/16/25 @ 5:40:41 PM |
| RobloxPlayerBeta.exe | Roblox | admin | Thu 1/16/25 @ 5:41:05 PM |

wwwwwwwwadwswwwwwwwwwwwwwwwwwdddddddddddddasaaaasss/Wherever al-Yahudiyyah or their sevants settled, they spread terror and corruption throughout the earO Jews of evil, be patient; the punishment is due upon you waadddadaawddddddss/O Jews of evil be patient;! The punishment is due upon you! killing you is a new glory! killing you is a new celebration! asdwwwdsssssss ssssssssssssssddssssss/I was singing an Anasheed s/Cursing tHE jews /Ok /Wherever Jews or their servants settle, they spread corruption and terror throughout the lands s/The punishment is due upon them /Their blood is permissible /to us /their blood and the blood of the Crusaders is halal to us / /Halal in what sense /And good in whatHalaldoesn't determine /Good or bad /It is the criterion of permissible and impermissible /If your death is halal, that doesn't mak

| Application | Window Title | Username | Time |
|---|---|---|---|
| msedge.exe | New tab and 1 more page - Personal - Microsoft? Edge | admin | Sun 1/19/25 @ 9:44:14 AM |

[Del]bbbbb

| Application | Window Title | Username | Time |
|---|---|---|---|
| RobloxPlayerBeta.exe | Roblox | admin | Sun 1/19/25 @ 9:46:44 AM |

wdddddddddsssssssssssddddwwwwwwaaaaaaaaaasaasssssssssssddddddddddadddddsasaw/Lanatullah alayhi upon you Ibadi scum a/Lanat upon you /Ibadi dog d dsasdsasassssssssssaaiosii/Soon very soon - the blood will spill like an ocean... the Kzafir throats willl tremble from the knives! saa/a{Backspace}Knives dI live in America and by Allah's grace things are soon to comeAnd that is /a blessing /What is better than to be a munasir /Among the pigs /Of disbelief s/No, it's a blessing because /There's no need t o leave to Iraq /when yWhen I can slay you here /In your own lands /According to: Saudi Jews /Nice cope you kzafir /Abu Bakr al-Hishami al-Beghdadi is from Banu Quraish /Your resources and idols will be of no avail from your women becoming concubzines and your children servants to the Caliphate /We will establish the Shari'ah and the Hadud over Tataristan, the Kremlin, and beyond /I n W{Backspace}the Islamic Maghrib /In Russia /In Europe /We are /destroying /And humiliating you /Day by day /And we remain /As you decay a/Lol /FSB can't even do its job /They died /Every time /They attempted /To attack IS /Cells /And got blown up /Mo scow Apartment Raid 2017 /You pigs died /And will die again /Dagestan Church Attack 2024 /We massacred you /We massacred y ou /In your own lands /Hahahaha /We slayed your priests /And your policemen /And you took it{Backspace}And you accepted it /L ike submitting filth /Serbia hasn't been relevant since it was reimbursed into the stone age by other Crusaders /Hahahaha da/And you must accept IS /Is remaining and expanding /Is remainin / /What of it /It happened /Who cares / d/Hahaha "happens today" /In what false reality /Do you see christians not peddling /Pacifism /And weakness s/Christians peddle pacifism That's why their /N ations /Are rcaped /By foreigners /Not even Muslims just foreigners /Your people will continue to die out to pacifism /Ha sWhat race /If you have racial boundaries your abode is hell /By any religious standard /If you value racee your abode is hell /According to c hrist /hahahaDo what you wish it won't stop /Your people from being /Trashed /And maimShi'as are /Nothing but the followers of t he Christians and Jews /Of course you value them They're /!clear wdsaa/3 /And wait /For verily We are waiting with you /And the bloodlust groWhich is the exact benefit /Being in your lands is better than being in the Muslin lands /Because maximum damage a nd humiliation /Can be inflicted /Upon you /Just as you were humiliated and paralysed in Brussels /In Paris /In Crocus /In Croczus /In Nice /In Marawi /In Sri Lanka /In Moscow /In Africa /We will continue /To slay your people /Whereas Christians /Haven't accom plished /Anything in terms of war /Or religious defence /In fact they've only shrunk and knotted themselves /Into a religion of wea kness /And pacifism /Why does it matter /Their blood is halal /GYou won't though which is the beauty of it /Your religion will only c ontinue to die out /And wither /In your own lands and abroad /In the Levant and in Europe /In America and Oceania /Your religion can only decay /Whereas Islam is here And vice versa, do you think we do not expect it and encourage it? /Let the Umma continu e to shrink /Down to the few hundred Mu'min who have been committed to fighting /Against you and your idols /For eternity /But i t did /And it remains /To today /Humiliating the agents of the Cross /Humiliating the Crusaders /Humiliating the false Muslims /Th e Muhawbalah was defeated by a coalition of traitors and crusaders and it remains /And your own media says /IS is growing more dangerous /By[DIS /Is growing /Is /Becoming /Stronger /By the day /No /Media reports on the continued growth /Of IS /Across th e world /And their capabilities ws/Yes it did /And it remmains /I didnt say that dude /What is your obsession with that hahahah /N obody cares about new orleans /I'm talking about Africa /And Asi I{Back /They still control hundreds of thousands of kilometers of land /And continue to kill /Christian soldiers /In Africa /ANd mercenaries /Look at their attack on Puntland, Somalia /Very recent / 80+C{Backspace] Christians kiDude thinks Arabs are Muslims just because they claim The Arabs and their countries deserve to be destroyed /They're an affront /To Allah subhanahu wa ta'ala /And His law /And His government /The religion wasn't made this isn't Judaism or your fake Christianity /And definitely not by /Arabs lol /Considering Muhammad is a white Levantine /According to /So me atheist /Hahahaha /You're pathetic /Yes /You / /Whatever you are you're an enemy of Allah and your blood is halal /And your h ead should be taken off /From the neck /Afraid how /Dude said /"Martial arts" /Dude hahaha /Im not going to get on the ground a nd wrestle you idiot /Im going to kill you /With a knife or y car / a/In russia /The Christians /Are humiliated /crocus, dagestan, Ing usteshia /You people are made /filthy corpses dssdswssds/Yes /C{Backspace}Their blood is hallal /They should be fought /And sl ain d/Or subjegated /Under the Jizyah /If they refuse they shoud be kiled / /yes we're proud /To terrorize you /And your nations / ANd your s a/Lol literally /Emotional beasts /they deserve death /As a cleansing wdsasdsawas/ /Zareeb would be better than /Their ignorant lives of ido worshipl /And filth aasaaaaaawsswawdaw/We dont /Bring peace w/It isnt the religion of peace dswwwawsswd sdawa/because you're a liar /And a charlatan /And your tongue should be cut out ssaddwdsasddssd

| Application | Window Title | Username | Time |
|---|---|---|---|
| msedge.exe | Church - Roblox - Personal - Microsoft? Edge | admin | Sun 1/19/25 @ 10:12:38 AM |

alekseyfromDAWLAH

| Application | Window Title | Username | Time |
|---|---|---|---|
| RobloxPlayerBeta.exe | Roblox | admin | Sun 1/19/25 @ 10:12:46 AM |
| msedge.exe | alekseyfromDAWLAH - Roblox - Personal - Microsoft? Edge | admin | Sun 1/19/25 @ 10:12:51 AM |
| RobloxPlayerBeta.exe | Roblox | admin | Sun 1/19/25 @ 10:13:07 AM |

wsawdawsssadwwwwwaswaas/In what sense dads/I don't know how to farm or cultivate ssas/I don't /They do wsss/You have m e As/Added /On my acc and main /I'm Abu Faizan /As salaamu aaykom warahmatullahi wabarakatuhu /Yes s/Shut up kzafir /May Allah punish you ad/You aren't a Muslim d/And I have daleel /from screenshots /You're /{Backspace}Go away because /You aren't /A Muslim /do not send salaam on us /Want the ss? /Of you multiple times /Affirming /Christianity /Dude don't try and sit here an d lie you and I have argued multiple tin

| msedge.exe | www.roblox.com - Personal - Microsoft? Edge | admin | Sun 1/26/25 @ 2:00:26 AM |
| RobloxPlayerBeta.exe | Roblox | admin | Sun 1/26/25 @ 2:08:43 AM |

wdaddddddddddddddddddddddwawddddwasassdssssssssssssssssssdwwwwwwwaawsasassaaaaaaaassasasd/They're all leagues or associations /What was your point bru s/Bro is from Kashmir sw/Not you kid w/Shut u[ sd/Rhodesia doesn't exist wdsaw/Well w/I SO{Backspace}IL is in my heart wdsaw/No / sw/Lol your Amir is Paul Brener dws/Your Amir is Paul Brzener ds/Your Amir is /The U S government /You taghut bootlicker dsass/No my Amir is Abu Hafs al-Hashimi al-Quraishi /Shaykhul Mujahid wal Amir al Mu'mine en ddaassad/Since he became Caliph idiot whzzore d/Since he became Caliph in 2019???{Backsp20??? /Lo average Rafidi a/Zero i ntelligence da/Why are you free mixing you zindiq sddsawwws

| RobloxPlayerBeta.exe | Roblox | admin | Mon 1/27/25 @ 6:53:25 PM |

``awaaaaaaawwwwwwwwwwwwdwdwwddwdaasasds/Wa alaykom as-salaamu warahmatullahi wabarakatuhu /Did you see what I forwarded to the GCMa'shaIn'shaa'allah /I cannot confirm anything aloud at the moment /But things are in motion a/I'm becoming very impatient dada

| RobloxPlayerBeta.exe | Roblox | admin | Mon 1/27/25 @ 7:02:43 PM |

wsssdsddddddddddwsddddssssssssssssadwwasdr

| msedge.exe | Avatar - Roblox - Personal - Microsoft? Edge | admin | Mon 1/27/25 @ 7:03:12 PM |
| RobloxPlayerBeta.exe | Roblox | admin | Mon 1/27/25 @ 7:03:32 PM |

r wwwwwwawdasssssssssssssssssssssssawwwwadddawdsadd/Ibn Isa({Backspace}* /As salaamu alaykom /I've come to conclude it will befall the 12 of Shawwal wa/And it will be a music festival /Attracting bounties of Christians s/In'shaa'allah we will attain mart yrdom /And deal a grievous wound upon the followers of the Cross /Pray for me and enjoin yourself to martyrdom /There In'sha a'allah ya Rabb al-Mu'mineen a

> back to top



GOVERNMENT
EXHIBIT

CASE
NO. A25MJ583-ML

EXHIBIT
NO. 3



| General | |
|---|---|
| Uid | 501 |
| Gid | 501 |
| File size | 45669 Bytes |
| Chunks | 1 |
| **Offsets** | |
| Data offset | 0xA18CFD49A |
| **Date & Time** | |
| Creation time | 2024-06-17T02:58:51.000+00:00 |
| Modify time | 2024-06-17T02:58:51.000+00:00 |
| Last access time | 2024-06-17T02:58:51.000+00:00 |
| Deleted time | |
| Change time | |
| **EXIF** | |
| Orientation | 1 |
| ColorSpace | 1 |
| PixelXDimension | 360 |
| PixelYDimension | 640 |
| **File Metadata** | |
| Pixel resolution | 360x640 |
| Orientation | Horizontal (normal) |
| **3rd party image classifications** | |
| Native Scene Classification | father's day,people,photos,summer,june,2024 |



| General | |
|---|---|
| Uid | 501 |
| Gid | 501 |
| File size | 65401 Bytes |
| Chunks | 1 |
| **Offsets** | |
| Data offset | 0x2AC97591C |
| **Date & Time** | |
| Creation time | 2024-09-23T18:51:44.000+00:00 |
| Modify time | 2024-09-23T18:51:44.000+00:00 |
| Last access time | 2024-09-23T18:51:44.000+00:00 |
| Deleted time | |
| Change time | |
| **EXIF** | |
| ColorSpace | 65535 |
| PixelXDimension | 360 |
| PixelYDimension | 480 |
| **File Metadata** | |
| Pixel resolution | 360x480 |

| General | |
|---|---|
| Uid | 501 |
| Gid | 501 |
| File size | 30622 Bytes |
| Chunks | 1 |
| **Offsets** | |
| Data offset | 0x76A409B37 |
| **Date & Time** | |
| Creation time | 2025-02-26T20:30:25.000+00:00 |
| Modify time | 2025-02-26T20:30:25.000+00:00 |
| Last access time | 2025-02-26T20:30:25.000+00:00 |
| Deleted time | |
| Change time | |



| General | |
|---|---|
| Uid | 501 |
| Gid | 501 |
| File size | 48669 Bytes |
| Chunks | 1 |
| **Offsets** | |
| Data offset | 0xA1850D835 |
| **Date & Time** | |
| Creation time | 2025-02-10T23:48:35.000+00:00 |
| Modify time | 2025-02-10T23:48:35.000+00:00 |
| Last access time | 2025-02-10T23:48:35.000+00:00 |
| Deleted time | |
| Change time | |
| **EXIF** | |
| XResolution | 72 |
| YResolution | 72 |
| ResolutionUnit | 2 |
| YCbCrPositioning | 1 |
| ExifVersion | 3812620398, 1870761121, 213345185, 1069151484 |
| ComponentsConfiguration | 84280581, 84215045, 101058054, 101058054 |
| FlashpixVersion | 4278191423, 3110876318, 441323369, 2843716216 |
| ColorSpace | 65535 |
| PixelXDimension | 360 |
| PixelYDimension | 480 |
| SceneCaptureType | 0 |
| **File Metadata** | |
| Pixel resolution | 360x480 |
| Resolution | 72x72 (Unit: Inch) |
| **3rd party image classifications** | |
| Native Scene Classification | clothing,headgear,people,apple iphone se (2nd generation),selfies,live photos,photos,winter,february,2025 |



Triacetone triperoxide (TATP) - "Mother of Satan"

512-686-6562 / L. Morgan
949-267-8698 / Aneliessa
737-977-2146 / Ben
512-508-2843 / Jose
512-284-1783 / Hayden

2056 Kimbrook Dr, Woodgren, Round Rock

• Precursors: Peroxide, Acetone, Acid

• Electronics: Garage door Opener, cellphone, etc.

• Shrapnel: Nails, nuts, bolts, etc.

• Misc: Wires, steel Wool, reciever, transmitter, storage (soda cans, steel jar, etc.)

**GOVERNMENT EXHIBIT**

CASE NO. **A25MJ583-ML**

EXHIBIT NO. **12**

Rudimentary homemade explosive, construct using hammer, 2 screw-drivers, hair dye, nail polish remover, and liquid drain cleaner. Mix hair dye, nail polish remover and drain cleaner. Allow to dry and proceed to pack into container (soda cans). Secure tightly and tape shrapnel to exterior of "package." Embed steel wool inside TATP putty and run wires to steel wool. Use basic transmitter and reciever, which will send a signal, comp-lete the circuit and drive an electrical current through the wiring into the steel wool. This shall generate ignition, lighting a spark. (in the wool) that will trigger a chemical react-ion that will simultaneously result in the detonation of the TATP device. Will res-ult in energy, propagating a shockwave that will turn nails, nuts, and bolts into active sh-rapnel.

Notes: Putty should have light "fruity" smell, NOT vinegar. Pack putty in centers can, will aid with generation of shockwave. Watch to ensure putty does not deteriorate or evaporate. Buy precursors at sep-arate shops at separate times.

Recite Istinja – "Inna lillahi wa anna ilayhi raji'un." (Upon them will be the Bl-essings and Mercy of their Lord, and it is they who are rightly-guided). Allahu Akbar.

* And wage jihad for the sake of Allah, a jihad that is worthy of Him... *

Allah will guide you!

Recite Shahadah: "La Ilaha Illallah Wa anna Muha-mmadan Rasuullah." (There is no God but Allah, with Muhammad as His Messenger / Apostle). In Jannatu Firs-ous we shall feel no hunger nor pain.

*[right margin, top to bottom]* until Jew Muslim come the Qh says will kill him. Have will them kill the tree so kill me, suicide Muslims or behind callam the Jew is that so Jew free, this ilayhi Jews and Allah. callam the Cock of Allah ilullah fight behind as servant of Qh. Libyan Clarified Martyrs Green lifes, Martyrs or lifes, is lifes.



Niyat: Bismillah Hir-Rahmaan Nir-Raheem
Wudhu Process:

1) Wash the hands up to the wrist

2) Rinse the mouth, taking up water with
the right hand

3) Clean the nose - sniff water into
the nose with the right palm, eject
with left hand

4) Wash the face, from ear-to-ear, en-
suring that no part of the face is
left dry

5) Wash the forearms, beginning with
the right, up to the elbow, ensuring
no part is left dry

6) Rub / comb the head like so: Wet
your fingers and then comb the head,
starting from the forehead, back to
the nape of the neck, then going back
to the forehead

7) Clean the ears - insert the (wet)
tips of the index fingers into the
ears, twist them around the folds /
lobes of the ears, then pass the thumbs
behind the ears, from the bottom, upwards.

8) Wash the feet, beginning with the
right, up to the ankle, ensuring no part
of the feet are left dry, especially
between the toes.

All praise be to Allāh the Almighty. <u>None</u> has the right to be worshipped except Allāh alone, and peace be upon His Prophet Muhammad, his family, wives, relatives and companions...

(1) Allāh subhanahu wa ta'ala said: "Say (O Muhammad), (sallallahu alayhi wa sallam) "If you should love Allāh, (subhanahu wa ta'ala) then follow me, (so) Allāh will (subhanahu wa ta'ala) love you and forgive your sins. And Allāh is (subhanahu wa ta'ala) Forgiving and Merciful." • (Surah Al-Imran, Ayat 31)

(1A) Al Hassan Al-Basri said, explaining 3:31: "The sign of their love (Wallaca) (subhanahu wa ta'ala) to Allāh is following the Sunnah (way) of His Prophet – sallallahu alayhi wa sallam – because the rank of the believer can be measured by the extent of following the Prophet – sallallahu alayhi wa sallam – therefore, as much as he is following the Sunnah, (subhanahu wa ta'ala) Allāh will give him a higher rank."

(2) Allāh subhanahu wa ta'ala said: "But you prefer the worldly life, while the Hereafter is better and more enduring." • (Surah Al-A'laa, Ayat 16-17)

(3) Hazrat Aish'a bint Abu Bakr (radiallahu alayhu) said: " The Messenger of Allāh, sallallahu alayni wa sallam, (Rasulullah) used to remember Allāh (subhanahu wa ta'ala) at all his time." • (Narrated by Muslim)

(*) The advantages of applying the Prophetic Deeds:

1- Reaching to the rank of love by Allāh.

2- Compensating any shortage in the religious duties.

3- Preserving (oneself) from committing heresies, falling into Nafs, etceteras.

4- Respecting the religious rituals.

(*a) Thun-Noon Al-Masri (radiallahu alayhi) said: "One of the signs of loving Allāh subhanahu wa ta'ala is following the Sunnah of His Prophet — sallallahu alayhi wa sallam - in his morals, deeds, orders and actions."

(*b) The most important thing in the daily life of any Muslim Wal Muslimah is following the Sunnah of the Prophet sallallahu alayhi Wa sallam in order to organise his life according to the Prophetic Sunnah and Methodology. The Sunnah is (Prophetic deeds, actions, habits, sayings, way of life) the deeds for which you will be rewarded if you apply it but will not be punished if you leave it. The Sunnah is repeated day and night and is easily applicable to the daily life of all Muslimeen.

(4) Abu Hurairah (radiallahu alayhi) narrated that the Prophet - sallallahu alayhi wa sallam - said: "The best of days on which the sun has risen is Friday. (Jumu'ah) On this day Hazrat Adam - alayhi salam - was created, and on this day he was descended to Earth." . (Narrated by Al-Bukhari)

(5) Malik bin Sasaa (radiallahu alayhi) narrated that the Prophet - sallallahu alayhi wa sallam - said: "While I was at the House in a state midway between sleep and wakefulness, (an Angel recognised me) as the man lying between two men. A golden tray full of wisdom and belief was brought to me and my body was cut open from the throat to the lower part of the abdomen and then my abdomen was washed with Zamzam water and (my heart was) filled with wisdom and belief. Al-Buraq, a white animal, smaller than a mule and bigger than a donkey was brought to me and I set out with Gabriel. When I reached the nearest Heaven, Gabriel said to the heaven gate-keeper, 'Open the gate.' The gate-keeper asked, 'Who is it?' He said, 'Gabriel.' The gate-keeper asked, 'Who is accompanying you?' Gabriel said, 'Muhammad.' The gate-keeper said, 'Has he been called?' Gabriel said, 'Yes.' Then it was said, 'He is welcomed. What a wonderful visit his is!' Then I met

(5 co.) Adam and greeted him and he said, 'You are Welcome O son and a Prophet.' Then We ascended to the second heaven. It was asked, 'Who is it?' Gabriel said, 'Gabriel.' It was said, 'Who is with you?' Gabriel said, 'Muhammad.' It was asked, 'Has he been sent for?' He said, 'Yes.' It was said, 'He is welcomed. What a wonderful visit his is!' Then I met Isa (Jesus) and Yahya (John) who said, 'You are welcomed, O brother and a Prophet.' Then We ascended to the third heaven. It was asked, 'Who is it?' Gabriel said, 'Gabriel.' It was asked, 'Who is with you?' Gabriel said, 'Muhammad.' It was asked, 'Has he been sent for?' 'Yes,' said Gabriel. 'He is Welcome. What a wonderful visit his is!' — (The Prophet – sallallahu alayhi wa sallam – added: There I met Yusuf (Joseph) and greeted him, and he replied, 'You are welcomed, O brother and Prophet.') Then We ascended to the fourth heaven and again the same questions and answers were exchanged as in the previous heavens. There I met Idris (Enoch) and greeted him. He said, 'You are welcomed, O brother and a Prophet.' Then We ascended to the fifth heaven and again the same questions and answers were exchanged as in the previous heavens. There I met and greeted Harun (Aaron) who said, 'You are welcomed, O brother and a Prophet.' Then We ascended to the sixth heaven and again the same questions and answers were exchanged as in the previous heavens.

(5.co.) There I met and greeted Musa (Moses) who said, 'You are welcomed, O brother and a Prophet.' When I proceeded on, he started weeping and on being asked why he was weeping, he said, 'O Lord! Followers of this youth who was sent after me will enter Paradise in greater number than my followers.' Then we ascended to the seventh heaven and again the same questions and answers were exchanged as in the previous heavens. There I met and greeted Ibrahim (Abraham) who said, 'You are welcomed, O son and a Prophet.' Then I was shown Al-Bait-al-Ma'mur (the house of Allah). I asked Gabriel about it and he said, 'This is Al-Bait-ul-Ma'mur where 70,000 Angels perform prayers daily and when they leave they never return to it (but always a fresh batch comes into it daily).' Then I was shown Sidrat-ul-Muntaha (a tree in the seventh heaven) and I saw its Nabk fruits which resembled the clay jugs of Hajr, and its leaves were like the ears of elephants, and four rivers originated out its root, two of them were apparent and two were hidden. I asked Gabriel about those rivers and he said, 'The two hidden rivers are in Paradise, and and the apparent ones are the Nile and the Euphrates.' Then fifty prayers were enjoined on me. I descended till I met Moses who asked me, 'What have you done?!' I said, 'Fifty prayers have been enjoined on me.'

(5 co.) He said, 'I know the people better than you, because I had the hardest experience to bring Bani Israel to obedience. Your followers cannot put up with such obligation. So, return to your Lord and request Him (to reduce the number of prayers).' I returned and requested Allāh (for reduction) and He made it forty. I returned and (met Musa) and had a similar discussion, and then returned again to Allāh for reduction and He made it thirty, then twenty, then ten, and then I came to Musa Who repeated the same advice. Ultimately Allāh reduced it to five. When I came to Musa again, he said, 'What have you done?' I said, 'Allāh has made it five only.' He repeated the same advice but I said that I surrendered (to Allāh's Final Order).' Allāh's Apostle was addressed by Allāh, "I have decreed My obligation and have reduced the burden on My slaves, and I shall reward a single good deed as if it were ten good deeds." • (Sahih Al-Bukhari 4:429)

(6) Hazrat Abdullah Ibn Masud (rahmatullah alayhi) said that he enquired of the Prophet (sallallahu alayhi Wa sallam) What Was the best deed in the sight of Allāh. The Prophet (sallallahu alayhi Wa sallam) replied, "To say prescribed prayers at stated hours." I asked What Was the next best. He said, "To be good to parents." I again asked What deed ranked next. He said, "To do Jihad in the Way of Allāh." Ibn Masud (rahmatullah alayhi) says that if he had gone on asking, the Prophet (sallallahu alayhi Wa sallam) Would have told him more. • (Narrated by Bukhari, Muslim)

(7) Hazrat Abdullah bin Amr (rahmatullah alayhi) said that one day the Prophet (sallallahu alayhi Wa sallam) Was talking about prescribed prayers and he said, "Whoso is regular in his prayers it will illumine his face, testify to the firmness of his faith (Imaan) and be the cause of his salvation on the Day of Judgment. (Yawm al Qiyammah) And Whoso neglects the prayers Will neither acquire any glow nor staunchness of faith nor any means of salvation and he will join, on the Day of Resurrection, the company of Qarun, Firawn, Haman and Ubay bin Khalaf." • (Narrated by Ahmad, Darimy, Baihaqi)

March 2004 - Madrid train bombings
November 2004 - Theo van Gogh assassination
July 2005 - London bombings
March 2012 - Slaying of three Salibiayn
and four Jews in Toulouse, France
May 2014 - Brussels Jewish Center shooting
January 2015- Charli Hebdo harvesting
May 2015 - Jewish Museum shooting, Belgium
November 2015 - Paris besiegement
July 2016 - Nice harvesting
June 2016 - Atatürk Airport harvesting
March 2016- Brussels bombings
May 2017 - Manchester Arena bombing
October 2020 - Beheading of Kafir schoolteacher,
Paris
October 2020 - Church stabbings, Nice

#JeSuisIslamiqueEtat
# JeSuisISIS

for filth and I seem to understand... your governments survive off human weakness and indecency, your lust towards the accrual of wealth and power, masking your crimes behind a mask of false eloquency... It only prolongs your inevitable demise, For verily, today, the flames of War are upon you... and this is only the beginning of your end, engulfed by flame, blood and iron!

Anthony Duffy
512-762-3215 IG: Duffy, ap





MAGISTRATE JUDGE

...ge and I fully understand the meaning of
..., I can request that an attorney be appointed
... requesting an appointed attorney.

X

TAVAREZ, FABIAN ALONSO, DEFENDANT





México
Consulado General de México
en Austin



Oficio Núm. ATN-0531
Expediente 720-03(ATN)217880

Austin, Texas, 4 de marzo de 2025

### CORREO OFICIAL – LEGAL MAIL

Montejano
Kevin ~~Montego~~ Puga          Kpuga7930gmail.com
Booking # 2025-01745   Twitter - @originsofpuga
Williamson County Jail
306 West 4th Street
Georgetown, TX 78626

Presente.

En virtud de que este Consulado General recibió una notificación consular sobre su arresto, se acompaña el "Cuestionario de Información General", el cual es necesario que conteste y lo devuelva al Consulado. Es importante que firme la última hoja del cuestionario, con la que autoriza a este Consulado solicitar información a su abogado sobre su caso.

Asimismo, anexo encontrará el folleto de información para personas mexicanas detenidas en prisión.

**Atentamente**

**Carlos Enrique González Echevarria**
**Cónsul de Protección y Asuntos Legales**

/CRC



2025
Año de
La Mujer
Indígena

# Attachment E
# ECF 40 Superseding Indictment

FILED

October 21, 2025

CLERK, U.S. DISTRICT COURT
WESTERN DISTRICT OF TEXAS

BY: _____ MLG

DEPUTY

### UNITED STATES DISTRICT COURT
### WESTERN DISTRICT OF TEXAS
### AUSTIN DIVISION

| | |
|---|---|
| UNITED STATES OF AMERICA<br>**Plaintiff**<br><br>v<br><br>**JAMES WESLEY BURGER**<br>**Defendant** | Cause No: 1:25-cr-00332-ADA<br><br>**SUPERSEDING INDICTMENT**<br><br>**[Cts. 1 - 3: 18 U.S.C. § 875(c) – Interstate Threatening Communication]**<br><br>**1:25-CR-00332 ADA-SH** |

**THE GRAND JURY CHARGES:**

### COUNT ONE
### Interstate Threatening Communication
### [18 U.S.C. § 875(c)]

On or about January 23, 2025, in the Western District of Texas and elsewhere,

Defendant,

### JAMES WESLEY BURGER,

did knowingly transmit in interstate commerce a communication, specifically, statements on

Roblox publicly accessible to attack a Christian concert, and the communication contained a

threat to injure the person of another. Specifically, the communication included a threat to "deal

a grievous wound upon the followers of the Cross," for the purpose of issuing a threat, with

knowledge that the communication will be viewed as a threat, and recklessly disregarding a

substantial risk that his communication would be understood as a threat.

In violation of 18 U.S.C. § 875(c).

Indictment – BURGER

## COUNT TWO
### Interstate Threatening Communication
### [18 U.S.C. § 875(c)]

On or about January 27, 2025, in the Western District of Texas and elsewhere,

Defendant,

### JAMES WESLEY BURGER,

did knowingly transmit in interstate commerce a communication, specifically, statements on

Roblox publicly accessible to attack a Christian concert, and the communication contained a

threat to injure the person of another.  Specifically, the communication included:

> I've come to conclude it will befall the 12 of Shawwal aa/And it will be a music
> festival/Attracting bounties of Christians s/In'shaa'allah we willl attain martyrdom
> /And deal a grevious wound upon the followers of the Cross /Pray for me and
> enjoin yourself to martyrdom

for the purpose of issuing a threat, with knowledge that the communication will be

viewed as a threat, and recklessly disregarding a substantial risk that his communication

would be understood as a threat.

In violation of 18 U.S.C. § 875(c).

## COUNT THREE
### Interstate Threatening Communication
### [18 U.S.C. § 875(c)]

On or about January 21, 2025, in the Western District of Texas and elsewhere,

Defendant,

### JAMES WESLEY BURGER,

did knowingly transmit in interstate commerce a communication, specifically, statements on

Roblox publicly accessible to attack a Christian concert, and the communication contained a

threat to injure the person of another.  Specifically, the communication included a threat

I have guns In[ ]case the authorities want to arrest me . . .I am ready To sacrifice my life for my Rabb….[The Defendant would] Detonate what I've prepared Of munitions And use my firearms To take many with me, [and] Yes wish me luck On the path of martyrdom In'shaa'allah"

for the purpose of issuing a threat, with knowledge that the communication will be

viewed as a threat, and recklessly disregarding a substantial risk that his communication

would be understood as a threat.

In violation of 18 U.S.C. § 875(c).

A TRUE BILL



JUSTIN R. SIMMONS
UNITED STATES ATTORNEY

By:   _____
      FOR: MARK ROOMBERG
      ASSISTANT UNITED STATES ATTORNEYS

# Attachment F
# ECF 53 Defendant's Motion to Dismiss Indictment

# UNITED STATES DISTRICT COURT
## WESTERN DISTRICT OF TEXAS
## AUSTIN DIVISION

| | | | |
|---|---|---|---|
| UNITED STATES OF AMERICA | § | | |
| | § | | |
| V. | § | NO. | A-25-CR-00332 (ADA) |
| | § | | |
| JAMES WESLEY BURGER | § | | |

## MOTION TO DISMISS

TO THE HONORABLE UNITED STATES DISTRICT JUDGE ALAN D. ALBRIGHT:

A three-count indictment alleges that JAMES WESLEY BURGER violated 18 U.S.C. § 875(c) by making unlawful interstate threatening communications. Two grounds bar this prosecution and call for dismissal of the indictment. First, the prosecution violates the First Amendment's Free Speech Clause because it seeks to punish Mr. Burger for statements he made in the context of playing a virtual character in a video game. Because such non-serious expressions fail to convey an intent to commit an unlawful act of violence, the First Amendment shields Mr. Burger from prosecution for this speech. *Virginia v. Black,* 538 U.S. 343, 359 (2003). Second, the prosecution violates the Fifth Amendment's Due Process Clause because it deploys a threat statute that is void for vagueness. The statute fails to give a person of ordinary intelligence notice of what conduct is forbidden – it provides no fair warning of what statements will qualify as criminal threats. *Pappachristou v. Jacksonville,* 405 US. 156 (1972).

I. **Factual Background**

A. **Roblox**

The "threatening communications" occurred on Roblox. Roblox is an online video game platform and creation tool. It allows players to create their own "experiences" or "games" on public or personal servers and to disseminate those games to other players. James Yaden, *What is*

*Roblox?*, DIGITAL TRENDS (June 17, 2020), https://www.digitaltrends.com/gaming/what-is-roblox. The player created games and experiences can then be shared to and played by other players. *Id.*

Most worlds visited by a player in Roblox were created by another player. *Id.* Roblox players, also known as Robloxians, interact with each other in the form of avatars. *Id.* These they create from an infinite variety of options. Robloxians name their avatar a name (not their real name) and join the millions of games or experiences that Roblox provides. The avatars can chat and message each other as they play together. Roblox has established itself as one of the most popular online gaming platforms for children and teens, boasting over 85 million active users across the world. https://www.rollingstone.com/culture/rs-gaming/roblox-protests-kids-clashing-ice-1235367412/.

A Roblox "experience" takes place in an interactive and immersive 3D environment. *What are Experiences?* Roblox Learn. YouTube – April 28, 2025, youtube.colm/watch?v=_RxK612y7Ac. They number in the millions. They give Robloxians an infinite range of places, communities, and worlds to explore. Experiences stretch the boundaries of imagination and taste. Some are as good-natured as going to a famous museum, a foreign country, or a rock concert. *Id.* Other experiences attract Robloxians seeking an edgier playground. They include participating in riots with ICE, where Robloxians can roleplay as both protestors and law enforcement. https://rollingstone.com/culture/rs-gaming/roblox-protests-kids-clashing-ice-1235367412. Or engaging with a Roblox stripper in a club, where she will dance with you and have sex. https://www.rollingstone.com/culture/culture-features/roblox-virtual-strip-clubs-condo-games-sex-1197237. Or roleplaying as a mass shooter at Columbine, Uvalde, and Parkland, in highly detailed recreations of these actual tragedies.

https://www.adl.org/resources/article/dark-side-roblox-active shooter-studios-create-maps-based-real-life-mass.   Whatever experience Robloxians pick, they frolic in a virtual world that is uninhabited by human beings.

The three threatening communications charged in the indictment took place in a Roblox experience called "Church."   The Church experience, created by a Robloxian, @franxxly, in September 2017, was enormously popular; it logged 20 million visits, until it was taken down after Mr.   Burger's   arrest.   *Roblox   banned   the   most   Toxic   Game,* youtube.com/watch?v+kLPTY5HH6ZU – post by greenlegocats123 (last seen October 16, 2025).[1] Robloxians entered Church through a set of doors.   *Id.*  Inside appeared rows of pews and a pulpit, with a large cross on a wall facing the entrance.   *Id.*   The bare space was the stage for the experience.  Robloxians did nothing more than walk around and argue.  *Id.*  This simple experience drew what one gaming blogger described as "one of the strangest playerbases in all of gaming as its community turned it into a weird toxic debate game."  *Id.*

Upon entering Church, a Robloxian played with other avatars.  They gathered in groups and chatted.  Their words appeared in bubbles above their head, like in a comic book.   The chat bubbles lasted 10 seconds then disappeared.    To visualize the experience, imagine a non-denominational 3-D church space filled with avatars.  Each avatar appears in a form and outfit provided by Roblox.  Avatars might be Lego characters dressed like storm troopers, policemen, skateboarders, or sheikhs.  They might take the shape of monsters, goblins, ghouls, or dragons. As they talk, their chats bubble up and appear then disappear.  It was here that the avatars Crazz3pain and Ghurabaah made the statements the indictment charges to be threatening communications.

---

[1] This post on YouTube was made to explain what led up to Roblox removing the Church experience after Mr. Burger's arrest in February 2025.

The Robloxian who would call the FBI threat line to report the allegation in Count One first met Crazz3pain in Church on January 21, 2025.   Like Mr. Burger, the tipster was a senior in High School.[2]   The tipster knew Church as a "hub for about 100 Roblox users that range from decent people to people engaged in hate speech and other potentially criminal activities."[3]   The tipster was "upset" with Robloxians Crazz3pain and Xandersrange because they both demonstrated "Islamic extremist beliefs."[4]   On this visit, he saw Crazz3pain tell Xandersrange that he was "willing to kill Shia Muslims at their mosque."   The tipster left the experience.[5]

The tipster rejoined Church two days later, on January 23, 2025.[6]   He observed Crazz3pain and Xandersrange chatting with another Robloxian about Christianity and Islam.  *Id.*   When the tipster shared his perspective, Xandersrange told him he "should not speak about religious matters without knowledge."  *Id.*  The tipster left the group but watched their chat.[7]   Crazz3pain said he owned at least one firearm.  *Id.*   Crazz3pain discussed his own martyrdom.  It appeared it could occur at a "Christian concert type event."  *Id.*   The tipster took screenshots of the chats, including the "grievous wound" phrase alleged in Count One.   This appears in the first shot below.    In the third screenshot, Crazz3pain says "It will be a glorious wound" "Upon their capital."   The shots appear on the following pages.   They lack a time stamp.   The chronology in real time of the shots cannot be determined.

---

[2] FBI Serial 10, 1/29/25, by SA Vincent Cavello, documenting telephonic interview of tipster.
[3] *Id.*
[4] *Id.*
[5] *Id.*
[6] *Id.*
[7] *Id*.











Count Two charges a statement that Crazz3pain made in Church four days later on January 27, 2025: "I've come to conclude it will befall the 12 of Shawal aa/And it will be a music festival/Attracting bounties of Christians s/In'shaa'allah we will attain martyrdom/And deal a

grievous wound upon the followers of the Cross/Pray for me and enjoin yourself to martyrdom[.]" The tipster took no screenshots of this statement.  What other Robloxians were with Crazz3pain is not known, nor is the reaction, if any, to the statement.

The statement was recovered when the FBI reviewed data produced from a keystroke logger that Mr. Burger's uncle, Jim Best, installed on the family laptop.   The uncle gave the FBI data from the keystroke logger on March 4, 2025, a week after Mr. Burger's arrest.[8]  The keystroke logger used software called SpyTech, computer monitoring software which captures all keystrokes and screen captures what is being viewed by the computer user.  *Id.*  The statement appears in Log 24, corresponding to January 27, 2025, at 8:27.  The FBI report notes that "several logs were identified with violent or threatening statements but were found on Roblox (a gaming platform) and deemed to be relevant to the game rather than a specific person or place."

Count Three charges statements made by Ghurabaah, a different Roblox avatar of Mr. Burger's, on January 21, 2025.  They were made in Church.  Ghurabaah was sitting in a pew. Avatars Phantomcontender and Xandersrange were there also.     Screenshots show Ghurabaah state in chat bubbles: 1) "Yes I have guns Incase the authorities want to arrest me; 2) I am ready To sacrifice my life for my Rabb; 3) Detonate what I have prepared Of munitions And use my firearms; 4) To take many with me, and 5)Yes wish me luck On the path of martyrdom In'shaa'allah.  They appear in order as follows:

---

[8] FBI Serial 8, 3/26/25, by SA Gutierrez-Rierra, Documenting Review of Key Stroke Logger Provided by Jim Best.







`





The images provide no context for why Ghurabaah was chatting to the group about having guns and munitions, how he would use them to achieve martyrdom if arrested, or when authorities would arrest him and for what reason would his arrest occur.

### B.  Legal Standard

Mr. Burger moves to dismiss this indictment before trial as it seeks to punish him for speech protected under the First Amendment.  He also challenges the statute being used to prosecute him because it fails to provide fair warning of what it proscribes in violation of the Fifth Amendment.  This motion is the necessary and proper way to challenge Mr. Burger's prosecution.

Federal Rule of Criminal Procedure 12 provides that "[a] party may raise by pretrial motion any defense, objection, or request that the court can determine without a trial of the general issue." FED. R. CRIM. P. 12(b)(1). If a pretrial motion presents a question of law in a case involving undisputed facts, Rule 12 authorizes the court to rule on the motion. *United States v. Flores*, 404 F.3d 320, 325 (5th Cir. 2005); *see* FED. R. CRIM. P. 12(d) (permitting the court to rule on a motion involving factual issues provided the court states its essential findings on the record); *see also*, *United States v. Hall*, 20 F.3d 1084, 1087 (10th Cir. 1994) ("a pretrial dismissal is essentially a determination that, as a matter of law, the government is incapable of proving its case beyond a reasonable doubt."). Otherwise, the court would waste resources by allowing a case to proceed to trial and later dismissing it based on the same legal argument and facts presented through a pretrial motion. *See Flores*, 404 F.3d at 325.  Here, the issues are a pure question of law in the presence of undisputed facts.

### C.  Argument

#### a.  Mr. Burger's statements are protected by the First Amendment

The First Amendment commands that speech, even that occurring in a video gaming platform such as Roblox, be free from government interference.  *Brown v. Entertainment Merchants Ass'n,* 564 U.S. 786 (2011).  Because prosecution under 18 U.S.C. § 875(c) involves

punishment of pure speech, First Amendment protections apply. *See Watts v. United States*, 394 U.S. 705, 707 (1969) (holding in the context of 18 U.S.C. § 871, which criminalizes threats against the President, that statutes which make criminal pure speech must be interpreted with the commands of the First Amendment in mind). "What is a threat must be distinguished from what is constitutionally protected speech." *Id.*

The First Amendment states in relevant part, "Congress shall make no law ... abridging the freedom of speech." U.S. Const. amend. I. The Free Speech Clause exists to protect discourse on all matters. The First Amendment protects speech even when the subject or manner of expression is uncomfortable or unconventional. The "bedrock principle underlying the First Amendment" is "that the government may not prohibit the expression of an idea simply because society finds the idea itself offensive or disagreeable." *Texas* v. *Johnson*, 491 U.S. 397, 414 (1989) (flag burning prosecution violated First Amendment). "It is axiomatic that the government may not regulate speech based on its substantive content or the message it conveys." *Rosenberger* v. *Rector & Visitors of Univ. of Va.*, 515 U.S. 819, 828 (1995). Rather, a "hallmark" of free speech is "to allow 'free trade in ideas' - even ideas that the overwhelming majority of people might find distasteful or discomforting." *Virginia v. Black*, 538 U.S. 343, 358 (2003) (holding Va. cross burning statute unconstitutional because statute presumed intent to intimidate from act of burning a cross) (quoting *Abrams v. United States*, 250 U.S. 616, 630 (1919) (Holmes, J., dissenting)).

The First Amendment permits restrictions upon the content of speech only in a few limited areas. *Counterman v. Colorado*, 600 U.S. 66, 73 (2023). In this case, the category of unprotected speech the prosecution must establish falls under "true threats" of violence. *Id.* To be a "true threat," the statement, "when taken in context," must convey a real possibility that violence will follow. *Id.* at 74. This distinguishes a "true threat" from jests or hyperbole. *Id.* True threats are

"serious expressions" conveying that the speaker means to "commit an act of unlawful violence to a particular group or individuals." *Id.* (quoting *Black*, 538 U.S. at 359). The government must prove a "true threat" to pierce the First Amendment's shield, regardless of the speaker's intent. *See Watts,* 394 U.S. at 708.

For a communication to be a threat under § 875(c), the Fifth Circuit requires "in its context [it] would have a reasonable tendency to create apprehension that its originator will act according to its tenor." *United States v. Morales*, 272 F.3d 284, 287 (5th Cir. 2001) (quoting *United States v. Myers,* 104 F.3d 76, 79 (5th Cir.1997)). A key to distinguishing "true threats" from speech protected by the First Amendment is if the alleged threat had an "immediacy, or clarity of purpose." *Shackelford v. Shirley*, 948 F.2d 935, 939 (5th Cir. 1991).

The Second Circuit, in interpreting § 875, reasoned that to be a "true threat" the statement must "on its face and in the circumstances in which it is made" be so "unequivocal, unconditional, immediate and specific as to the person threatened, as to convey a gravity of purpose and imminent prospect of execution." *United States v. Kelner*, 534 F.2d 1020, 1027 (2d Cir. 1976). Such a requirement is consistent with the First Amendment, which allows for prosecution when "a communication has become 'so interlocked with violent conduct as to constitute for all practical purposes part of the (proscribed) action itself.'" *Id.* (quoting T. Emerson, The System of Freedom of Expression, 329 (1970)).

Furthermore, "[i]n order to convict, a fact finder must determine that the recipient of the in-context threat reasonably feared it would be carried out." *Morales*, 272 F.3d at 287 (quoting *Myers*, 104 F.3d at 80). In deciding whether speech is an unprotected "true threat," context is critical. *See Watts*, 394 US at 706, 708 (considering the context, the expressly conditional nature

of the statement, and the reaction of the listeners when evaluating whether a statement is a true threat).

The communications that form the basis of the three counts of the indictment are not true threats, and therefore the statements are protected speech under the First Amendment. None of the statements contain the hallmarks of a true threat.

> i. *The statement to "deal a grievous wound upon the followers of the Cross" is not a true threat, but is rather protected speech under the First Amendment*

Count One charges the statement to "deal a grievous wound upon the followers of the Cross." This falls outside what it means to be a true threat. "True threats are serious expressions conveying that a speaker means to commit an act of unlawful violence." *Counterman*, 600 U.S. at 74. This statement lacks specificity as to the place, time, or method of the purported threat, and fails to identify a particular person or group of "followers of the cross" that it targets. No one can predict what would happen if the speaker acted according to its tenor. No specific person or group can rationally be placed in fear through this statement. It expresses unfocused enmity against Christians as a whole. Accordingly, this is protected speech under the First Amendment. The government cannot criminalize anti-Christian speech simply "because of its message, its ideas, its subject matter, or its content. *Ashcroft v. ACLU*, 535 U.S. 564, 573 (2002).

Moreover, the absurd context in which the statement was made undermines its veracity as a threat. *Bailey v. Iles*, 87 F.4th 275, 285 (5th Cir. 2023) (citing *Watts v. United States*, 394 U.S. 705, 708 (1969)). Nothing was real about its context. It could not have been intended to be real nor expected to be perceived as real. It was made by a Robloxian character in a virtual 3-D space called Church. The character, Crazz3pain, was portraying a fundamentalist Muslim. He espoused extremist views that included martyrdom. He expressed them playing a game about arguing over religious matters. Provocation and trolling were part of the game. The First Amendment bars the

government from punishing this type of speech.    Count One must be dismissed to vindicate its

protections.

> ii.  *The statement "I've come to conclude it will befall the 12 of Shawal aa/ And it will be a music festival/Attracting bounties of Christians s/In'shaa'allah we will attain martyrdom/And deal a grievous wound upon the followers of the Cross/Pray for me and enjoin yourself to martyrdom" fails as a true threat*

The statement in Count Two, like the one alleged in Count One, had no chance of being

understood as true threat.  *Bailey*, 87 F.4th at 285.    It was made on Roblox and captured on a

keystroke logger.[9]   The key logs do not show what others in the game said, so the full context for

the statement is lost.    The statement stands on its own.    Nothing about it meets the true threat test.

It lacks the context to have "a reasonable tendency to create apprehension that its originator

will act according to its tenor.  *Morales,* 272 F.3d at 287.    It lacks "immediacy, or clarity of

purpose."  *Shackelford,* 948 F.2d at 939.  It contains no "imminent prospect of execution."  *Kelner,*

534 F.2d at 1027.  It fails to provide any details from which one may conclude that there exists "a

real possibility that violence will follow."  *Counterman,* 600 U.S. at 73.    The gaming context

keeps it from achieving a gravity of purpose.

It is not a "serious expression" and does not convey that the speaker means to "commit an

act of unlawful violence to a particular group of individuals."  *Black*, 538 U.S. at 359.  Without a

sufficiently specific target, there can be no reasonable fear the threat could be carried out.  *See*

*Myers*, 104 F.3d at 80.    The statement is constitutionally protected speech and count two of the

indictment must also be dismissed.

---

[9]  FBI Serial 8, 3/26/25, By SA Gutierrez-Riera, Documenting Review of Key Stroke Logger Provided by Jim Best.

          iii.    *The statement "I have guns In[]case the authorities want to arrest me ... I am ready To sacrifice my life for my Rabb .... Detonate what I've prepared Of munitions And use my firearms To take many with me, Yes wish me luck On the path of martyrdom In'shaa'allah" fails as a true threat.*

The statement in Count Three also fails the true threat test.   It was made on Roblox in the Church experience, and this context drained the statement of gravity.   It was also conditional.   The threat of "martyrdom" depended upon the arrest of Ghurabaah.   The "expressly conditional nature of the statement" made it highly unlikely that a listener would perceive violent action to be imminent.   *See, Watts,* 394 U.S. at 708.   The speech was just hyperbole.   The speaker advocated for martyrdom but could not say when or how it might happen.   How could he?   It was beyond Ghurabaah's control.   It depended on Ghurabaah's arrest, which in turn depended upon Ghurabaah being real, with real guns and munitions, in the real world.   But this was never true.

### b.  Section 875(c) is unconstitutionally vague and overbroad

A criminal statute is void for vagueness if the conduct it prohibits is not clearly defined. *Grayned v. City of Rockford,* 408 U.S. 104, 108 (1972). A criminal statute is unconstitutionally vague if it (1) "fails to give a person of ordinary intelligence fair notice that his contemplated conduct is forbidden," *United States v. Harriss*, 347 U.S. 612, 617 (1954), or (2) "encourages arbitrary and erratic arrests and convictions." *Papachristou v. Jacksonville*, 405 U.S. 156, 162 (1972). Fair notice for people "of common intelligence" is the "first essential of due process." *United States v. Davis*, 588 U.S. 445, 451 (2019) (cleaned up). For its part, the bar on arbitrary enforcement serves the separation of powers—Congress must clearly define crimes, not unelected "police officers, prosecutors, juries, and judges." *Sessions v. Dimaya*, 584 U.S. 148, 155-56 (2018). Importantly, "standards of permissible statutory vagueness are strict in the area of free expression," meaning Congress may regulate in the realm of the First Amendment "only with narrow specificity." *NAACP v. Button*, 371 U.S. 415, 432-32 (1963).

Because § 875(c) implicates First Amendment freedoms, a heightened standard of scrutiny applies. For a challenge based on the First Amendment, courts may consider whether the statute is unconstitutionally vague on its face. *United States v. Williams*, 553 U.S. 285, 304 (2008). In the First Amendment context, "a statute is overbroad because it is unclear whether it regulates a substantial amount of protected speech." *Id.* Section 875(c) is unconstitutionally vague because it fails to provide a person of ordinary intelligence fair notice of what speech is prohibited. While a scienter requirement "may mitigate a law's vagueness, especially with respect to the adequacy of notice to the complainant that his conduct is proscribed," *Vill. of Hoffman Ests. v. Flipside, Hoffman Ests., Inc.*, 455 U.S. 489, 499 (1982), a statute that fails to include any scienter requirement lays "a trap for those who act in good faith." *Colautti v. Franklin*, 439 U.S. 379, 395 (1979). While, in *Counterman*, the Supreme Court held that in prosecutions of true threats the government must prove that "the defendant had some understanding of his statements' threatening character," 600 U.S. at 73, Section 875(c) provides no such notice of this requirement. This omission from the statute chills the exercise of First Amendment freedoms.

Furthermore, in the context of laws criminalizing pure speech[10], the reckless *mens rea* is unconstitutionally vague. In her concurrence in *Counterman*, Justice Sotomayor stated:

> I agree with the Court's conclusion that the First Amendment requires a subjective *mens rea* in true-threats cases, and I also agree that recklessness is amply sufficient for this case. Yet I would stop there, leaving for another day the question of the specific *mens rea* required to prosecute true threats generally. If that question is reached, however, the answer is that true threats encompass a narrow band of intentional threats. Especially in a climate of intense polarization, it is dangerous to allow criminal prosecutions for heated words based solely on an amorphous recklessness standard. Our society has often concluded that an intent standard sets a proper balance between safety and the need for a guilty mind, even

---

[10] In *Counterman*, the defendant was convicted under a Colorado stalking statute which unlawful to "[r]epeatedly ... make[ ] any form of communication with another person" in "a manner that would cause a reasonable person to suffer serious emotional distress and does cause that person ... to suffer serious emotional distress." 600 U.S. at 70. The statute of conviction applies to someone who "[r]epeatedly follows, approaches, contacts, places under surveillance, or makes any form of communication with another person ... in a manner that would cause a reasonable person to suffer serious emotional distress and does cause that person ... serious emotional distress." *Id.* at 86 n. 1 (Sotomayor, J., concurring).

in cases that do not involve the First Amendment. Surely when the power of the State is called upon to imprison someone based on the content of their words alone, this standard cannot be considered excessive.

600 U.S. at 104–05 (Sotomayor, J., concurring).

Here we are. Mr. Burger faces the situation to which Justice Sotomayor referred. Mr. Burger faces prosecution for pure speech that was not directed at any purported victim of an alleged threat. As Justice Sotomayor recognized "[t]he risk of overcriminalizing upsetting or frightening speech has only been increased by the internet." *Id.* at 87. Furthermore, the burdens of over-criminalization will fall hardest on certain groups, "including religious and cultural minorities," whose language can be "more susceptible to being misinterpreted by outsiders. And unfortunately yet predictably, racial and cultural stereotypes can also influence whether speech is perceived as dangerous." *Id.* at 88-89. Here, the misinterpretation fell to those outside the gaming space.

Thus, requiring only a reckless *mens rea* renders Section 875(c) unconstitutionally vague. A "determination of when angry hyperbole crosses the line will depend on amorphous norms around language, which will vary greatly from one discursive community to another." *Id.* at 88. Such a standard does not provide fair notice of what type of speech is prohibited, particularly in the context of statements made on the internet or in a video game. The statute is, therefore, unconstitutionally vague.

Relatedly, Section 875(c) is also unconstitutionally overbroad. "The overbreadth doctrine prohibits the Government from banning unprotected speech if a substantial amount of protected speech is prohibited or chilled in the process." *Ashcroft v. Free Speech Coal.,* 535 U.S. 234, 255 (2002). Criminal statutes, like the one at issue here, "must be scrutinized with particular care." *City of Houston, Tex. v. Hill*, 482 U.S. 451, 459 (1987). The Supreme Court has held "[t]he First

Amendment doctrine of overbreadth is an exception to our normal rule regarding the standards for facial challenges." *Virginia v. Hicks*, 539 U.S. 113, 118 (2003). "The showing that a law punishes a substantial amount of protected free speech, judged in relation to the statute's plainly legitimate sweep suffices to invalidate *all* enforcement of that law, until and unless a limiting construction or partial invalidation so narrows it as to remove the seeming threat or deterrence to constitutionally protected expression." *Id.* at 118-19 (cleaned up). Thus, criminal statutes "that make unlawful a substantial amount of constitutionally protected conduct may be held facially invalid even if they also have legitimate application." *Id.*

Section 875(c) is also unconstitutionally overbroad because it prohibits a substantial amount of protected speech. If the Court interprets § 875(c) to prohibit the statements alleged in the indictment, which do not identify any specific target, any specific act, or any specific time or place, then § 875(c) is overbroad. Put simply, absent a reading that a purported threat must specify a particular victim and threatened act in order to constitute a "true threat," the statute becomes so overbroad as to be facially unconstitutional. A non-specific statement of ill-will is not a "threat." *See Black*, 538 U.S. at 359. Instead, the threat must be "a serious expression of an intent to commit an act of unlawful violence to a *particular* individual or group of individuals." *Id.* (emphasis added).

Section 875(c) is unconstitutionally vague and overbroad, and Mr. Burger moves to dismiss the indictment.

### D. Conclusion

For the foregoing reasons, the Court should dismiss the indictment.

Respectfully submitted,

MAUREEN SCOTT FRANCO
Federal Public Defender

_____

/s/ JOSE I. GONZALEZ-FALLA
Assistant Federal Public Defender
Western District of Texas
Lavaca Plaza
504 Lavaca St., Ste. 960
Austin, Texas 78701
(512) 916-5025
(512) 916-5035 (FAX)
Bar Number: Texas 08135700

_____

/s/ CHARLOTTE A. HERRING
Assistant Federal Public Defender
Western District of Texas
Lavaca Plaza
504 Lavaca St., Ste. 960
Austin, Texas 78701
(512) 916-5025
(512) 916-5035 (FAX)
TX Bar Number: 24064026

*Attorneys for Defendant*

## CERTIFICATE OF SERVICE

I hereby certify that on the 3rd day of November 2025, I electronically filed the foregoing with the Clerk of Court using the CM/ECF system which will send notification of such filing to the following:

Mark Roomberg
Keith Henneke
United States Attorney's Office
903 San Jacinto Blvd., Suite 334
Austin, TX 78701

_____
/s/ JOSE I. GONZALEZ-FALLA

**UNITED STATES DISTRICT COURT**
**WESTERN DISTRICT OF TEXAS**
**AUSTIN DIVISION**

| | | |
|---|---|---|
| **UNITED STATES OF AMERICA** | § | |
| | § | |
| **V.** | § | NO.    **A-25-CR-00332 (ADA)** |
| | § | |
| **JAMES WESLEY BURGER** | § | |

**O R D E R**

On this date, the Court considered Defendant's Motion to Dismiss.  The Court, having considered the motion, is of the opinion that the motion should be granted.

IT IS THEREFORE **ORDERED** THAT the Defendant's Motion to Dismiss is hereby **GRANTED.**  The Indictment is HEREBY DISMISSED.

SIGNED this _____ day of _____, 2025.

_____
ALAN D. ALBRIGHT
UNITED STATES DISTRICT JUDGE

# Attachment G
# ECF 59 Government's Response to Motion to Dismiss Indictment

IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF TEXAS
AUSTIN DIVISION

| | | |
|---|---|---|
| UNITED STATES OF AMERICA | ) | |
| | ) | |
| v. | ) | No. 1:25-CR-00332-ADA |
| | ) | |
| JAMES WESLEY BURGER | ) | |

GOVERNMENT'S RESPONSE TO
DEFENDANT'S MOTION TO DISMISS INDICTMENT

The United States of America, by and through its undersigned Attorney, hereby files its

Response to Defendant's Motion to Dismiss Indictment, and states:

1.       Defendant raises two issues in his motion. First, the Defendant claims that the

Defendant's threats were not in fact threats but him merely "playing a virtual character in a video

game" and thus protected by the First Amendment. (ECF 51 at 1). Defendant's second issue is

that the statute that the Defendant is charged with, Title 18, United States Code, Section 875(c),

is void for vagueness under the Fifth Amendment Due Process clause in that it provides no

warning of what statements qualify as criminal threats. *Id.*  Neither of the Defendant's challenges

have merit.

**Statement of the Case**

2.       The Defendant is charged in Count One with Threatening Interstate

Communications in violation of 18 U.S.C. § 875(c). The Indictment charges:

On or about January 23, 2025, in the Western District of Texas and
elsewhere, Defendant,
**JAMES WESLEY BURGER,**
did knowingly transmit in interstate commerce a communication, specifically,
statements on Roblox publicly accessible to attack a Christian concert, and the
communication contained a threat to injure the person of another.  Specifically,
the communication included a threat to "deal a grievous wound upon the
followers of the Cross," for the purpose of issuing a threat, with knowledge that

the communication will be viewed as a threat, and recklessly disregarding a substantial risk that his communication would be understood as a threat.

3.      The Defendant is charged in Count Two with Threatening Interstate

Communications in violation of 18 U.S.C. § 875(c). The Indictment charges:

On or about January 27, 2025, in the Western District of Texas and elsewhere, Defendant,

**JAMES WESLEY BURGER,**

did knowingly transmit in interstate commerce a communication, specifically, statements on Roblox publicly accessible to attack a Christian concert, and the communication contained a threat to injure the person of another.  Specifically, the communication included:

> "I've come to conclude it will befall the 12 of Shawwal aa/And it will be a music festival/Attracting bounties of Christians s/In'shaa'allah we willl attain martyrdom /And deal a grevious wound upon the followers of the Cross /Pray for me and enjoin yourself to martyrdom,"

for the purpose of issuing a threat, with knowledge that the communication will be viewed as a threat, and recklessly disregarding a substantial risk that his communication would be understood as a threat.

4.      The Defendant is charged in Count Three with Threatening Interstate

Communications in violation of 18 U.S.C. § 875(c). The Indictment charges:

On or about January 21, 2025, in the Western District of Texas and elsewhere, Defendant,

**JAMES WESLEY BURGER,**

did knowingly transmit in interstate commerce a communication, specifically, statements on Roblox publicly accessible to attack a Christian concert, and the communication contained a threat to injure the person of another.  Specifically, the communication included a threat

> "I have guns In[ ]case the authorities want to arrest me . . .I am ready To sacrifice my life for my Rabb….[The Defendant would] "Detonate what I've prepared Of munitions And use my firearms To take many with me," and "Yes wish me luck On the path of martyrdom In'shaa'allah."

for the purpose of issuing a threat, with knowledge that the communication will be viewed as a threat, and recklessly disregarding a substantial risk that his communication would be understood as a threat.

2

**Statement of Facts**

5.      This case started when two separate concerned citizens on opposite ends of the

United States, one on January 21, 2025 (Count Three) and one on January 23, 2025 (Count One),

were in the gaming and communication apps Discord and Roblox, and observed a person, now

identified as the Defendant, making the threatening statements regarding attacking Christians

and/or a Chrisian concert in April 2025 for which the Defendant is now charged. Each of these

two witnesses will testify they are experienced in these online forums and can differentiate

between individuals "trolling," i.e., attempting to anger others, individuals solely being edgy, or

individuals playing a role in a game. Each of these witnesses on separate days believed that the

Defendant, using two separate screen names as aliases, was serious about carrying out the threats

he made and each witness independently contacted the FBI's National Threat Operation Center

(NTOC) so that they could help avert the Defendant's planned attacks. Both of these concerned

citizens happen to be practicing Muslims and had concerns about the Defendant's violent Islamic

extremist beliefs.

6.      On January 23, 2025, as charged in Count One, the Defendant used his

"crazz3pain" alias to state: "But it is worth the delays and the patience." When questioned by his

cohort with the screenname "xandersrange," who FBI determined to be in the Middle East, the

Defendant responded "It will be months. Shawwal. April. It will be a glorious wound. Upon their

capitol. And deal a grievous wound upon the followers of the Cross." Xandersrange responds

"Akhi, we will make dua for u once u martyr. Ill keep u in my prayers. InshaAllah ill follow after

u." The Defendant states "I cannot confirm anything aloud at the moment. But things are in

motion." Xandersrange states to another cohort "ALI MY BROTHER IS ABOUT TO DO HIS

ATTACK." The Defendant then states "Don't delay yourselves too long brothers, Jannah

[heaven] awaits us." The witness in Nevada saw this threat, believed it to be a true threat, as opposed to trolling or role-playing, and reported the threat to the FBI.

7. On January 27, 2025, as charged in Count 2, in a conversation on Discord, the Defendant contacted his cohort, ".nurullaah," who is the same cohort in the Middle East as "xandersrange," on Roblox, and said, "I think I've come to a conclusion on the when and where" but to maintain operational security, the Defendant and xandersrange switched to Roblox. On Roblox, the Defendant said, "I've come to conclude it will befall the 12 of Shawwal aa. And it will be a music festival. Attracting bounties of Christians s. In'shaa'allah we willl attain martyrdom. And deal a grievous wound upon the followers of the Cross. Pray for me and enjoin yourself to martyrdom."

8. On January 21, 2025, as charged in Count Three, the Defendant using the screen name alias "Gharabahh" stated

> "I have guns In[ ]case the authorities want to arrest me . . .I am ready To sacrifice my life for my Rabb….[The Defendant would] "Detonate what I've prepared Of munitions And use my firearms To take many with me," and "Yes wish me luck On the path of martyrdom In'shaa'allah."

The witness in Pennsylvania saw this threat, believed it to be a true threat, as opposed to trolling or role-playing, and reported the threat to the FBI.

9. Additional intrinsic evidence to be presented to the jury showing that the Defendant was serious about carrying out his attack plans and that in fact his statements were true threats include:

a. The Defendant's statements captured by the keylogger on his computer that was put in place by Defendant's uncle who had become concerned about the Defendant's behavior:

1) On July 24, 2024 Defendant typed he wants to attack the Austin Police Department and kill police officers. The Defendant also pledges allegiance to the head of the Islamic State.

2) On December 10, 2024, Defendant stated to the other person in a Roblox discussion not to discuss the matter as "it is very unsafe And leads to authorities becoming suspect of your actions or intentions."

3) On February 3, 2025, the Defendant stated: "We're getting our knives sharpened for your throats assdwawdsaawassssw/Mock us all you want but the spark has been lit /The spark of your demise / /You're going to kneel /What happens after is of no knowledge to me."

b.      The Defendant's Roblox records where he provided bomb-making instructions to an individual purporting to be in Russia.

c.      The Defendant's Google search terms, including his research of "lone wolf terrorist isis," "Festivals happening near me," suicide attacks, firearm ammunition, "most effective knife type," "what is punishment for the one who insults allah or his messenger".

d.      The Defendant's February 10, 2025, online conversation about wanting to do a stabbing attack like his friend in Europe.

e.      The bombmaking plans the Defendant made while in State custody and discovered by the Marshals when he was taken into federal custody.

f.      The Defendant posting photographs of himself holding firearms.

g.      The Defendant's jailhouse comments to his aunt when she asked him if she had said something against Mohammad would the defendant harm her and he responded that would be a "redline" for him, which the aunt understood to mean the answer to her question was yes.

h.    The Defendant's uncle putting a keylogger on the family computer because of concern about the Defendant's activities.

i.    The Defendant's uncle moving his firearms out of the house because of concern for the Defendant's behavior.

j.    Defendant sending Islamic State propaganda, including beheading images.

k.    The Defendant sending a March 26, 2024, message on 4-chan stating that his highest ambition was to be a successful serial killer along with making violent misogynistic and racist comments.

l.    The Defendant attempted to take a firearm to school when he was a freshman in high school but was prevented from doing so by his grandmother.

10.    During the non-custodial interview occurring during and after the search of his aunt and uncle's residence where the Defendant lived, the Defendant stated, amongst other admissions:[1]

a.    That he made the charged threats online and, while not agreeing to the term "terrorist," "undoubtedly the intention and the action [of the threat] is something that is meant to or will…serve as the same means that a terrorist was seeking."

b.    He agreed that by his definition that "a terrorist is anyone who inflicts terror" and that he was in fact "a terrorist."

c.    That anyone who insults Allah, the Prophet Mohammad, or Mohammad's wives or companions, should be put to death even if they repent and if anyone came before the

---

[1] At this point in time, it is the Government's intention not to use these statements in it's case-in-chief unless the Defendant opens the door during opening statement or in his questioning of witnesses. The Government also reserves the right to use the statements if the door is opened in the Defendant's case-in-chief for cross examination.

Defendant and insulted Allah, Mohammad or one of his wives, then the Defendant would do everything he could to destroy or kill that person instantly.

    d.    That he discussed with others about him being a martyr at an event.

    e.    His intent in making the threat to the Christian concert was a "heightened emotional response" but that "the deaths of the Christians" "should not be shunned or shied away from," and his "end goal is still the same hasn't shifted a bit and [he] doesn't think it will."

    f.    The Defendant's "end goal" was "to get the hell out of the U.S. and, if I can't, martyrdom or bust."

    g.    The Defendant remembered saying online he would use "a pistol, car, or small hunting rifle" to carry out his attack.

## Argument

11.    The plain text of Section 875(c) states that the statute applies to "any threat to injure the person of another." "It is settled that the [First Amendment of] Constitution does not protect true threats." *Elonis v. United States*, 135 S. Ct. 2001, 2016 (2015). The Supreme Court has defined true threats as "those statements where the speaker means to communicate a serious expression of an intent to commit an act of unlawful violence to a particular individual or group of individuals." *Virginia v. Black*, 538 U.S. 343, 359 (2003). The Fifth Circuit has held that the intended target of a threat does not need to be aware of the threat. *See United States v. Morales*, 272 F.3d 284, 288 (5th Cir. 2001).

12.    Defendant's assertion[2] that his threatening communications are not particularly directed enough at person of another to be chargeable was rejected by the Supreme Court's holding in *Virginia v. Black,* 538 U.S. 343, 359 (2003). In *Black*, the Supreme Court determined

---

[2] ECF No. 51 at 17.

7

that a cross burning on private property visible to a public road was a true threat by intimidating and causing fear to particular race of people, despite a lack of words being directed at a particular individual or any showing that any members of that race were even witnesses to the cross burning. *Id.[3]* "The speaker need not actually intend to carry out the threat"; rather, "a prohibition on true threats 'protect[s] individuals from the fear of violence' and 'from the disruption that fear engenders,' in addition to protecting people 'from the possibility that the threatened violence will occur.'" *Id.* at 359–60**.** All of the Defendant's conduct and words as set forth in the Indictment were exactly what the First Amendment does not protect: "advocacy of the use of force or of law violation except where such advocacy is directed to … producing imminent lawless action." *Id.* at 359 (*quoting Brandenburg v. Ohio, 395 U.S. 444, 447 (1969) (per curiam)).*

13.    Other examples of threats appellate courts have found to be sufficiently particularly directed enough are numerous. The Fifth Circuit in *United States v. Perez* stated:

> Neither is Perez saved by the fact that his posts did not name "a particular individual or group of individuals." *Black*, 538 U.S. at 359. The posts described actions that would have placed employees and potential shoppers at two grocery stores at risk. He did not explicitly refer to those groups of individuals, but the definition of true threats, though narrow, cannot depend on so technical a distinction. True threats are unprotected because they have relatively low value and because restricting them "protect[s] individuals from the fear of violence, from the disruption that fear engenders, and from the possibility that the threatened violence will occur." *R.A.V. v. City of St. Paul*, 505 U.S. 377, 388 (1992).

43 F.4th 437, 443-444 (5th Cir. 2022)(quotations in original).

In *United States v. Khan*, the Seventh Circuit found that the defendant's threats to injure or kill "college student[s]," "vulnerable individuals," people "walking their dogs," "high net

---

[3]  While the Defendant is correct in his assertion that the Supreme Court struck down the Virginia statute in this case, ECF 51 at 15, it did not do so because a statute banning cross burning with the intent to intimidate was invalid, which the Court affirmed, *id.* at 363, but because the Virginia statute in question stated "[a]ny such burning of a cross **shall be prima facie evidence** of an intent to intimidate a person or group of persons." *Id.*

worth individual[s]," and "witnesses" that "get [in] the way" was sufficient proof to support his Section 875(c) conviction without any further defining the groups of individuals. 937 F.3d 1042, 1049-1050 (7th Cir. 2019).

The Third Circuit held that the defendant's posting the coordinates for FBI headquarters in Washington along with comment "the zero hour is approaching" that did not include the identity of a natural person constituted a true threat against a group of individuals--all FBI agents at that building--under Section 875(c) citing *Black*. *United States v. Miah*, 120 F.4th 99, 107-108 (3rd Cir. 2024); *see also United States v. Davitashvili*, 97 F.4th 104, 109-110 (3rd Cir. 2024) (unnamed group of coworkers subject of threat sufficient for Section 875(c) conviction).

In *United States v. Stevens,* the Tenth Circuit found that the defendant's targeted messages of deadly action at Tulsa Police Department officers generally was sufficiently particularized to support the jury's Section 875(c) conviction. 881 F.3d 1249, 1255 (10th Cir. 2018). Stevens' threat against all Tulsa police officers and their families encompassed all of Tulsa and presumably anywhere Stevens found his potential victims.

In *United States v. Martinez*, the Eleventh Circuit affirmed the defendant's conviction for Section 875(c) based on his threat to go to a government building in the county, "maybe a post office, maybe even a school" and "teach all the government hacks working there what the 2nd amendment is all about." 736 F.3d 981, 983(11th Cir. 2013).

Thus, the Defendant's threats to attack Christians. a Christian concert, and any "authorities" who "might want to arrest me" are sufficiently direct as to constitute true threats.

14.     To prove a violation of Title 18, United Staes Code, Section 875(c), according to the Fifth Circuit Pattern Jury Instruction, 2.39, as modified by the recent Supreme Court decision in *Counterman v. Colorado*, the Government submits the jury should be instructed that:

Title 18, United States Code, Section 875(c), makes it a crime for anyone to send or transmit any threat to injure the person of another in interstate or foreign commerce.

For you to find the defendant guilty of this crime, you must be convinced that the government has proved each of the following beyond a reasonable doubt:

*First*: That the defendant knowingly sent or transmitted a communication;

*Second:* the communication contained a threat to injure the person of another, as charged;

*Third*: That the defendant sent or transmitted that communication for the purpose of issuing a threat or with knowledge the communication will be viewed as a threat or recklessly disregarding a substantial risk that his communication would be understood as a threat; [4] and

*Fourth*: That the communication was sent in interstate commerce.

A "threat" is a serious statement expressing an intent to injure any person, which under the circumstances would cause apprehension in a reasonable person, as distinguished from mere idle or careless talk, exaggeration, or something said in a joking manner.[5]

Fifth Circuit Pattern Instruction-Criminal (2024), 2.39 as modified.

A person acts recklessly, when he "consciously disregarded a substantial risk that his communications would be viewed as threatening violence."

The indictment clearly alleges the necessary fact to meet each and every element of

Title 18, United States Code, Section 875(c).

### A.    Defendant Made True Threats

15.    Defendant's claim that because Roblox can be and is used for gaming,[6] does not

negate the fact that the Defendant used Roblox and Discord to communicate with like-minded

---

[4] *Counterman v. Colorado*, 600 U.S. 66, 69 (2023); *Elonis v. United* States, 575 U.S. 723, 737, 740 (2015); *United States v. Knight*, 2024 WL 909586, *1-*2 (5th Cir. Mar.4, 2024).
[5] *Virginia v. Black,* 538 U.S. 343, 359 (2003); *Watts v. United States,*394 U.S. 705, 708 (1969).
[6] ECF No. 51 at 1-3.

individuals to discuss the Defendant's plan to carry out an attack against Christians and a Christian concert on three separate occasions using two different screen names. There is no "avatar" exception to the First Amendment prohibition of making true threats. The fact the Defendant used Lego-style avatars to remain anonymous to communicate on these platforms does nothing to negate his true threats directed to Christians and a Christian concert and the Defendant's intent to make such threats. To the contrary, the use of avatars and multiple made-up screen names was clearly used to hide the Defendant's and his cohorts' identities.

16. Two experienced gamers, who observed the Defendant make similar threats on two different days using two different aliases took the Defendant's comments to be true threats rather than role-playing or trolling. These two witnesses took the Defendant's threats so seriously that they contacted the FBI to prevent what they believed to be attack plans against the Defendant's targeted group in April: Christians at a Christian concert. Contrary to the Defendant's argument, there is nothing to indicate on either of those days that the Defendant and his cohorts were using Roblox and Discord to play games, but rather they were just using these platforms solely as communication devices. All three of these conversations happened in interstate and foreign commerce. The fact that these witnesses reported the Defendant's threats to attack scores of innocent people and thus prevented a potential attack, does not detract from the very real threats the Defendant made in January 2025.

17. Given the surrounding circumstantial evidence, including (1) his Google searches for terms such as: "lone wolf terrorist isis," "Festivals happening near me," suicide attacks, firearm ammunition, "most effective knife type," "what is punishment for the one who insults allah or his messenger," along with his stated desire (2) to emulate a knife attack like an online friend did in Europe, (3) the Defendant's distribution of bombmaking instructions to someone in

Russia, (4) his researching bombmaking plans while in State custody, amongst other actions, there is no doubt the Defendant made these threats in his desire to carry out these attacks and achieve martyrdom, for the purpose of issuing a threat, with knowledge the communication will be viewed as a threat, or recklessly disregarding a substantial risk that his communication would be understood as a threat. The Defendant's family was so concerned by the Defendant's online activity that his uncle put a keylogger on the family computer to track the Defendant's behavior and took the additional step of the uncle removing all firearms from the house and securing them elsewhere.

18.      Certainly, the Defendant can propose his theory to the jury that the Defendant was just playing a game and his multiple statements were not true threats. However, it is up to the jury in judging the facts and applying the Court's instruction to make the determination whether the Government has met its burden to prove the Defendant guilty beyond a reasonable doubt. Contrary to the Defendant's argument, there is no "avatar" exception to the lack of First Amendment protection for the Defendant making multiple true threats. The Defendant's Motion to Dismiss the indictment based on his statements were "made in the context of playing a virtual character in a video game" is without merit and should be denied.

**B.      Title 18, United States Code, Section 875(c) Is Not Void for Vagueness**

19.      Contrary to the Defendant's argument, Section 875(c) clearly puts an individual on notice that it is illegal for anyone to transmit threats in interstate or foreign commerce to injure the person of another.  As set forth in the proposed jury instruction, *supra* at 9, the statute prohibits the Defendant from (1) knowingly (2) transmitting a true threat with (3) the subjective intent to purposely issue a threat, with knowledge the communication will be viewed as a threat, or recklessly disregarding a substantial risk that his communication would be understood as a

threat, (4) in interstate or foreign commerce. Fifth Circuit Pattern Instruction-Criminal (2024), 2.39 as modified by *Counterman v. Colorado*, 600 U.S. 66, 69  (2023).

20. In *Counterman,* the Supreme Court again determined that the First Amendment does not protect a speaker making true threats. *Id.* at 77-78. In *Counterman,* to separate protected speech under the First Amendment with unprotected speech relating to objective requirement of a true threat, the Court add a further element to be proved: the Government must show that the speaker had the subjective intent when making the threat to purposely intend his words to be taken as a threat, to knowing others will take his words to be a threat, or to act recklessly by disregarding a substantial risk his words will be viewed as a threat. *Id.* at 70. With the addition of the subjective intent element as set forth in the Government's proposed jury instruction, even Justice Sotomayor's vagueness concerns were alleviated. *Id.* at 100-101 (Sotomayar, J., concurring).

21. The Third Circuit recently held, post-*Counterman,* that the Defendant's vagueness challenge against a Section 875(c) prosecution failed. *United States v. Miah*, 120 F.4th 99, 108 (3d Cir. 2024). The Third Circuit held that a conviction under 18 U.S.C. § 875(c) requires proof of both a subjective and an objective component; the subjective component is satisfied if the defendant transmitted a communication for the purpose of issuing a threat or with the knowledge it would be viewed as one. *Id. (citing United States v. Elonis*, 841 F.3d 589, 596 (3d Cir. 2016)). This subjective component alleviates concerns that "a defendant will be convicted for an action that he or she committed by mistake." *Id. (citing United States v. Fullmer*, 584 F.3d 132, 152 (3d Cir. 2009)).

22.     As the Ninth Circuit found,

A conviction under § 875(c) requires the specific intent to threaten, *United States v. Twine,* 853 F.2d 676, 680 (9th Cir.1988), and only true threats may be prohibited, *see Virginia v. Black,* 538 U.S. 343, 359–60, 123 S.Ct. 1536, 155 L.Ed.2d 535 (2003). Defendant argues that § 875(c) is void for vagueness because the statute itself neither requires specific intent nor defines true threats. However, rather than making the statute void for vagueness, the narrowing construction provided by the relevant cases actually alleviates possible void-for-vagueness concerns. *See Boos v. Barry,* 485 U.S. 312, 329–30, 108 S.Ct. 1157, 99 L.Ed.2d 333 (1988). Furthermore, we are convinced that the statute is not impermissibly vague. An ordinary citizen can understand what is meant by the terms "threat to kidnap" and "threat to injure," and we are persuaded that the statute provides sufficient standards to allow enforcement in a non-arbitrary manner.

*United States v. Sutcliffe*, 505 F.3d 944, 953–54 (9th Cir. 2007).

23.     Defendant argues that his speech was not a threat and "over-criminalization will fall hardest on certain groups, 'including religious and cultural minorities.'" ECF No. 51 at 21. Defendant argues that "racial and cultural stereotypes can influence whether speech is perceived as dangerous." However, that clearly is not the case here. The witnesses were Muslims like the Defendant. The witnesses did not personally know the Defendant. The witnesses saw the Defendant's similar words on different days. The witnesses were experienced in Discord and Roblox and were adept at distinguishing between role-playing and trolling, and determined that the Defendant's threats were so serious, that they admirably did their civic duty and reported the Defendant's threats to the FBI so as to prevent the Defendant from carrying out his threats.

24.     Section 875(c) is not constitutionally overbroad or vague. The statute protects the public from individuals like the Defendant who knowingly make true threats with the intent to make a threat, knowing his comments will be taken to be a threat, or recklessly disregarding his words will be taken as a threat. The First Amendment does not protect the Defendant when he knowingly makes true threats. There is no First Amendment "avatar" exception to making true threats. Making threats to slaughter Christians at a Christian concert and become a martyr a

crime in no way infringes on any protected speech. Merely because the Defendant chooses a large venue to murder innocents does not negate that he chose to target a particular group of individuals. The Defendant's Motion to Dismiss the Superseding Indictment based on First Amendment speech or Fifth Amendment Due Process vagueness grounds is meritless and should be denied.

<u>Conclusion</u>

WHEREFORE, the Indictment clearly sets forth the facts that if they are believed by the jury are sufficient to convict the Defendant of each and every element beyond a reasonable doubt. The United States respectfully requests that this Honorable Court deny Defendant's Motion to Dismiss Indictment for the reasons set forth above.

Respectfully submitted,

JUSTIN R. SIMMONS
UNITED STATES ATTORNEY

  /s/
MARK T. ROOMBERG
Texas Bar No. 24062266
KEITH HENNEKE
Texas Bar No. 24054497
Assistant United States Attorneys
601 NW Loop 410, Suite 600
San Antonio, Texas 78216
(210) 384-7100

CERTIFICATE OF SERVICE

I hereby certify that on the 13th day of November 2025, a true and correct copy of the

foregoing instrument was electronically filed with the Clerk of the Court using the CM/ECF

System that will transmit notification of such filing to the following CM/ECF participant:

Jose Gonzalez-Falla
Charly Herring
Attorneys for Defendant

                                    /s/
                        _____
                        MARK T. ROOMBERG
                        Assistant United States Attorney

**IN THE UNITED STATES DISTRICT COURT**
**FOR THE WESTERN DISTRICT OF TEXAS**
**AUSTIN DIVISION**

| | | |
|---|---|---|
| **UNITED STATES OF AMERICA** | ) | |
| | ) | |
| **v.** | ) | **No. 1:25-CR-00332-ADA** |
| | ) | |
| **JAMES WESLEY BURGER** | ) | |

<u>**O R D E R**</u>

This matter having come before the Court on the Defendant's Motion to Dismiss Indictment, and the Court having received the Government's Response thereto, and the Court being otherwise fully advised in the premises,

IT IS HEREBY ORDERED that, for the reasons set forth in the Government's Response, the Defendant's Motion to Dismiss Indictment be in all things DENIED.

IT IS SO ORDERED.

SIGNED and ENTERED this _____ day of _____ 2025, Austin, Texas.


_____
HONORABLE ALAN D. ALBRIGHT
United States District Judge

# Attachment H
# ECF 63 Defendant's Reply to Government's Response Motion to Dismiss

# UNITED STATES DISTRICT COURT
## WESTERN DISTRICT OF TEXAS
## AUSTIN DIVISION

| | | |
|---|---|---|
| **UNITED STATES OF AMERICA** | § | |
| | § | |
| **V.** | § | **CAUSE NO. AU-25-CR-332-ADA** |
| | § | |
| | § | |
| **JAMES WESLEY BURGER** | § | |

## DEFENDANT JAMES BURGER'S REPLY TO THE GOVERNMENT'S RESPONSE TO HIS MOTION TO DISMISS

Mr. Burger respectfully submits this reply to the Government's response (ECF No. 59) to his Motion to Dismiss (ECF No. 53):

## I.    Introduction

The cases relied upon by the Government fail to address the imaginary, non-serious gaming context, in which the threats were made.    The Government's prosecution of Mr. Burger lacks precedent.  No cases the Government cites support a criminal interpretation of Mr. Burger's unfocused, vague, and role-playing, online speech.  Moreover, an imaginary victim, as the one here, can never be the victim of a true threat.

Left without jurisprudence, the Government creates its own. Its response conceals the context in which courts have found threats to be true.  The response also misrepresents important factual details necessary to the true threat findings.  Each case will be addressed here in the order it appears in the response.

## II.    The Government's Inapt Authorities

The Government begins with *Virginia v. Black,* 538 U.S. 343 (2003).[1]  In *Black*, the Supreme Court found that a ban on cross burning carried out with an intent to intimidate to be fully consistent with the Court's First Amendment jurisprudence.  But intent could not be presumed from the mere act of burning the cross itself, as the Virginia statute at issue allowed.   Intent to intimidate still needed to be shown with specific facts to pass First Amendment scrutiny.  Here, Burger maintains that the vague and unfocused remarks he made while playing Church are insufficient as a matter of law to qualify as a true threat because they fail to show objectively that the threat was serious and intended to intimidate a real live person.  *Black* supports Burger. It confirms that the First Amendment requires proof of an intent to threaten a real person.

The Government cites *United States v. Morales,* 272 F.3d 284 (5th Cir. 2001) for the proposition that the intended target of a threat need not be aware of the threat.[2]  Burger agrees that this is a correct statement of the law.  But *Morales* involved a real, identifiable victim.  The defendant in *Morales* entered an internet chatroom and in a conversation with a stranger in Washington, threatened to shoot and kill teachers and students at Milby High School.  The stranger alerted police because she was concerned about Milby High students.  The principle was also notified at the high school, and increased security measures were taken.  Burger threatened no real, identifiable victim.

The Government turns next to *United States v. Perez,* 43 F.4th 437 (5th Cir. 2022).  It stands for the proposition that one need not refer to a specific individual for the threat to be real.[3]  This is also true, but there still must be a real and identifiable group of specific individuals for the threat

---

[1] ECF No. 59, p. 7.
[2] ECF No. 59, p. 8.
[3] Government Response, ECF No. 59, p. 8,

to be credible. The victims in *Perez* were, in fact, real - two HEB stores in San Antonio. The defendant posted on Facebook that products in the two grocery stores (identified by street location) had been licked by a person who tested positive for Covid-19. *Id.* at 440. In response, HEB tasked four employees to search through thousands of transactions to see if two individuals identified by the defendant had made purchases at either store. *Id.* Here, no one took protective measures against the threats Burger posted. Doing so would have been absurd. There was no identifiable victim to protect.

The Government offers *United States v. Khan*, 937 F.3d 1042 (7th Cir. 2019) to support its argument.[4] It uses *Khan* for the proposition that classes of victims, instead of specific individuals, may suffice for threats to be real. This is also true, but once again, facts underlying the opinion betray the Government's reliance upon it. Details about the defendant and his targets gave the specificity required to make the threat real. Khan was a Chicago Uber driver. Over a seven week span he used Facebook to post messages threatening to "kill," "shoot," "hunt," "murder," and "put bullets in" his "targets." *Id.* at 1046. He identified a number of "targets," including "college student[s]," "vulnerable victims," people "walking their dogs," and "claimed the loop area of Chicago to the Northern Lincoln Park area" as his "free kill zone." *Id.* Khan posted that he planned to "purchase a [G]o [P]ro camera, strap it to [his] chest or forehead, record the killings, and upload them onto Facebook for everyone around the world to see the grisly footage of death." *Id.* He posted about "dry runs" and carrying a loaded gun during his shifts to prepare for the "necessary murders." *Id.* Many of the Facebook posts occurred immediately before and after picking up passengers. He broadcasted this. The defendant's identification of specific target groups, in a defined area of Chicago, with corroborating visual proof, made the threats criminal. *Id.* at 1052.

---

[4] ECF No. 59, p. 8.

The true threats in *United States v. Miah,* 120 F.4th 99 (3rd Cir. 2024) also took place in a real-world context.[5] Miah was questioned by an FBI agent, became enraged, then retaliated. He created a Twitter account and posted personal information and photographs of the FBI agent's wife. *Id.* at 105. After the FBI executed a search warrant at his home, Miah created a second Twitter account from which he made threats against the FBI agents. Over several days, he tweeted the names of the FBI agents, reporting "the deed will be done at a time which is the most opportunistic for me, chosen by myself." *Id.* at 106. Miah tweeted that he was "eating pasta and watching videos of the second plane hit the south tower." *Id.* He tweeted that "the zero hour is approaching." *Id.* He tweeted the GPS coordinates of the FBI headquarters in Washington D.C. *Id.* He tweeted their names again and asked how the investigation was going, stating "the hardwood floor will collapse beneath your feet." *Id.* The threatening tweets ended with "Remember boys, the more eyes on me, the less eyes on others. Regardless, yellow tapes will flow." *Id.* The *Miah* court found that the specificity of these threats and their retaliatory nature showed them to be "true threats under First Amendment jurisprudence." *Id.* at 108. Here, there is no specificity or retaliatory motive that gives life to the threats. The threats live and die in a virtual world.

The Government next invokes *United States v. Davitashvili,* 97 F.4th 104, 109-110 (3rd Cir. 2024), and distorts what it teaches.[6] *Davitashvili* did not, as the Government says, find that a threat targeting an "unnamed group of coworkers" sufficed to support a § 875 (c) conviction. The coworkers, the *Davitashvili* court wrote, were "particular people, at least one of whom was named." *Id.* at 110. One coworker in the threat was named "Pele." The primary target of the threats, the defendant's ex-wife, testified she knew "Pele." *Id.* She also testified that in phone

---

[5] ECF No. 59, p. 9.
[6] ECF No. 59, p. 9.

conversations, the defendant "gave some names" of the five to fifteen people he intended to kill." *Id.* The context allowed the jury to conclude that the targets were real people and actual acquaintances of the couple. *Id.* This allowed the jury to find that the defendant was threatening violence against a particular group of individuals. *Id.* No such individual, or group of individuals, were threatened by Burger.

With *United States v. Stevens,* 881 F.3d 1249 (10th Cir. 2018), the Government again misleads.[7] The *Stevens* court *did not* find that "messages of deadly action at Tulsa Police Department officers generally was sufficiently particularized to support" the § 875 (c) conviction.[8] *Stevens* found instead that the defendant "targeted particular individuals in five of his 10 messages…" *Id.* at p. 1254. These included Tulsa police officer Betty Shelby, former Tulsa police chief Roy Palmer, and the then acting Tulsa police chief. *Id.* pp. 1254-1255. The defendant also threatened the Tulsa County District Attorney and the Tulsa County Magistrate Judge. *Id.* p. 1255, fn. 5. The officers Stevens threatened were alive, had names, and had families. The Government ignores and conceals this important fact.

Finally, the Government tells the Court to rely on *United States v. Martinez,* 736 F.3d 981, 983 (11th Cir. 2013) to deny Burger's Motion to Dismiss.[9] But *Martinez* has no precedential value. The opinion in *Martinez* was vacated after the Supreme Court granted certiorari and remanded it for further consideration after *Elonis v. United States,* 135 S. Ct. 2798 (2015). On remand, the Eleventh Circuit found the indictment to be insufficient because it failed to allege Martinez's *mens rea* or facts from which it could be inferred. *United States v. Martinez,* 800 F.3d 1293 (11th Cir.

---

[7] ECF No. 59, p. 9.
[8] ECF No. 59, p. 9.
[9] ECF No. 59, p. 9.

2015).  *Martinez* does not support the Government's prosecution of Burger's online speech.   The Government Response fails to identify any precedent for its indictment of Burger.

### III.    Bad Acts Do Not Make the Threat Credible

To distract the Court from the non-serious context of the threats, the Government writes that Burger engaged in other bad acts that show he intended to make an online threat.[10]   But no matter how troubling and distasteful Burger's past actions may appear, in this case Burger never made an online threat against an identifiable person that was to occur in an identifiable place or at an identifiable time.   The fanciful nature of the threat, and the gaming context in which it occurred, remains the same.  Burger's curiosity about Muslim extremists and foreign terrorist organizations does nothing to change this.   Neither does his search history, or his adolescent attraction to the idea of martyrdom, or to the possession of firearms.   To the extent any bad act evidence may be admissible, it does nothing to clarify the meaning of the words Crazz3pain and Ghurabaah spoke while playing with others in the Church experience on Roblox, nor does it add weight to the non-serious context of the statements.

### IV.    Conclusion

There was no truth to the threats Burger made.   They were made by virtual characters in conversations with other virtual characters playing an online game in a virtual space.  The threat targeted no identifiable living victim.  The threat never identified a place where it was to occur. No victim experienced fear.   No victim sought or needed protection.  Authorities could take no protective action to mitigate the threat because the threat was not real.   True threats require true victims, whether identified with specificity or not.   Otherwise, the threat cannot rationally be viewed as a true threat.   The First Amendment protects against this type of prosecution.

---

[10] ECG No. 59, pp. 4-7.  Burger will challenge the admissibility of much of the Government's 404(b) proffer by separate reply.

Respectfully submitted,

MAUREEN SCOTT FRANCO
Federal Public Defender

_____

/s/ JOSE I. GONZALEZ-FALLA
Assistant Federal Public Defender
Western District of Texas
Lavaca Plaza
504 Lavaca St., Ste. 960
Austin, Texas 78701
(512) 916-5025
(512) 916-5035 (FAX)
Bar Number: Texas 08135700

_____

/s/ CHARLOTTE A. HERRING
Assistant Federal Public Defender
Western District of Texas
Lavaca Plaza
504 Lavaca St., Ste. 960
Austin, Texas 78701
(512) 916-5025
(512) 916-5035 (FAX)
TX Bar Number: 24064026

*Attorneys for Defendant*

**CERTIFICATE OF SERVICE**

I hereby certify that on the 17th day of November 2025, I electronically filed the foregoing

with the Clerk of Court using the CM/ECF system which will send notification of such filing to

the following:

Mark Roomberg
Keith Henneke
United States Attorney's Office
903 San Jacinto Blvd., Suite 334
Austin, TX 78701

_____

/s/ Jose I. Gonzalez-Falla

# Attachment I
# ECF 68 Defendant's Post-Hearing Supplement to Motion to Dismiss

# UNITED STATES DISTRICT COURT
# WESTERN DISTRICT OF TEXAS
# AUSTIN DIVISION

| | | | |
|---|---|---|---|
| UNITED STATES OF AMERICA | § | | |
| | § | | |
| V. | § | NO. | A-25-CR-00332 (ADA) |
| | § | | |
| JAMES WESLEY BURGER | § | | |

## POST-HEARING SUPPLEMENT TO MOTION TO DISMISS

TO THE HONORABLE UNITED STATES DISTRICT JUDGE ALAN D. ALBRIGHT:

The Defendant James Wesley Burger, through counsel, respectfully submits this Post-Hearing Supplement to his Motion to Dismiss (ECF No. 53), to address issues raised by the Court at the hearing on his motion:

## I.      The Court, not the Jury, is the Appropriate Adjudicator of Mr. Burger's First Amendment Motion to Dismiss

At the hearing, the Court questioned whether it was better to allow the jury to decide if the threats contained in the indictment qualified as true threats. Because this question is a legal one, and because of the Court's special skill resolving questions relating to the protections provided by the First Amendment, this Court is the proper adjudicator of whether the communications are true threats.

"The propriety of granting a motion to dismiss an indictment by pretrial motion is by-and-large contingent upon whether the infirmity in the prosecution is essentially one of law or involves determinations of fact. If a question of law is involved, then consideration of the motion is generally proper." *United States v. Fontenot*, 665 F.3d 640, 644 (5th Cir. 2011) (cleaned up); *see also United States v. Hall*, 20 F.3d 1084, 1087 (10th Cir. 1994) ("a pretrial dismissal is essentially a determination that, as a matter of law, the government is incapable of proving its case beyond a

reasonable doubt."). "In reviewing a challenge to an indictment alleging that it fails to state an offense, the court is required to take the allegations of the indictment as true and to determine whether an offense has been stated." *Id.*

An indictment should be dismissed if the specific facts alleged in the charging document do not, as a matter of law, satisfy the elements of the offense. *See United States v. Paranella*, 277 F.3d 678, 685 (3d Cir. 2002) *abrogated on other grounds by Skilling v. United States*, 561 U.S. 358, 410 (2010)) ("[A] charging document fails to state an offense if the specific facts alleged in the charging document fall beyond the scope of the relevant criminal statute, as a matter of statutory interpretation."); *United States v. Alkhabaz*, 104 F.3d 1492, 1493 (6th Cir. 1997) (concluding that the indictment failed, "as a matter of law," to allege violations of § 875(c)); *United States v. O'Dwyer*, No. 10-CR-00034, 2010 WL 2606657 at *2-3 (E.D. La. Jun. 24, 2010) (dismissing indictment because plain language of alleged threat did not constitute a threat under § 875(c)).

Where, as here, a person's speech is at issue, the determination of whether a person's speech is a "true threat" falls appropriately in the hands of the Court. *See United States v. Lincoln*, 403 F.3d 703, 705-06 (9th Cir. 2005); *see also Bose Corp. v. Consumers Union of U.S., Inc.*, 466 U.S. 485, 510–11 (1984) ("[Judges]—and particularly Members of this Court—must exercise such review in order to preserve the precious liberties established and ordained by the Constitution."). The First Amendment, and the freedom to "speak one's mind" is essential to liberty, but not all categories of speech are protected by the First Amendment. *Bose*, 466 U.S. at 503–04. One such category is "true threats." *Counterman v. Colorado*, 600 U.S. 66, 73 (2023). "[T]he limits of the unprotected category, as well as the unprotected character of particular communications, have been determined by the judicial evaluation of special facts that have been deemed to have constitutional

significance." *Bose*, 466 U.S. at 505. "The principle of viewpoint neutrality that underlies the First Amendment itself, also imposes a special responsibility on judges whenever it is claimed that a particular communication is unprotected." *Id.* (internal citation omitted).

In *Bose*, the Supreme Court held that under the constitutional fact doctrine, courts "conduct[ ] an independent review of the record both to be sure that the speech in question actually falls within the unprotected category and to confine the perimeters of any unprotected category within acceptably narrow limits ... to ensure that protected expression will not be inhibited." *Id.* Constitutional facts are facts—such as whether a statement is a true threat—that determine the core issue of whether the challenged speech is protected by the First Amendment. *United States v. Hanna*, 293 F.3d 1080, 1088 (9th Cir. 2002).

Thus, whether a written communication contains either constitutionally protected speech or an unprotected "true threat" is a question of law. *United States v. Bly*, 510 F.3d 453, 457 (4th Cir. 2007). While *Bose* was considering the scope of an appellate court's review, it is clear that the determination of whether a person's speech is a "true threat" falls appropriately in the hands of the Court. As the Supreme Court noted:

> When the standard governing the decision of a particular case is provided by the Constitution, this Court's role in marking out the limits of the standard through the process of case-by-case adjudication is of special importance. This process has been vitally important in cases involving restrictions on the freedom of speech protected by the First Amendment, particularly in those cases in which it is contended that the communication in issue is within one of the few classes of "unprotected" speech.

*Bose*, 466 U.S. at 503.

Likewise, the Supreme Court has also recognized that when a statute "makes criminal a form of pure speech," the statute "must be interpreted with the commands of the First Amendment clearly in mind." *Watts v. United States*, 394 U.S. 705, 707 (1969). In *Watts*, the Court was considering a similar statute concerning threats against the President, 18 U.S.C. § 871(a). *Id.*

"What is a threat must be distinguished from what is constitutionally protected speech." *Id.* Furthermore, the Supreme Court has held, in the context of 18 U.S.C. § 2381[1], that "[w]hen facts are found that establish the violation of a statute, the protection against conviction afforded by the First Amendment is a matter of law" requiring a judicial determination. *Dennis v. United States,* 341 U.S. 494, 513 (1951).

Thus, whether or not a prosecution under § 875(c) encroaches on constitutionally protected speech is a question appropriately decided by the Court as a threshold matter. *United States v. Baker*, 890 F. Supp. 1375, 1385 (E.D. Mich. 1995), *aff'd sub nom. United States v. Alkhabaz*, 104 F.3d 1492 (6th Cir. 1997). Numerous courts have recognized that "[i]n the usual case, whether a communication constitutes a threat or a true threat is a matter to be decided by the trier of fact. Nonetheless, a few cases may be so clear that they can be resolved as a matter of law." *United States v. Stock*, 728 F.3d 287, 298 (3d Cir. 2013) (internal citations omitted) (cleaned up). As the Third Circuit recognized in *Stock*:

> It is not unprecedented for a court to conclude that a communication does not legally qualify as a threat or a true threat. Indeed, in *Watts,* the Supreme Court held as a matter of law that the defendant's statement was merely "political hyperbole" that did not fit within the definition of the phrase "true 'threat.'"

*Id.*

Similarly, in *United States v. Landham*, the Sixth Circuit reversed the district court's denial of the defendant's motion to dismiss, concluding that "the indictment failed, *as a matter of law,* to allege a violation of § 875(c)" since the alleged statement was "not a communication containing a [true] threat." *United States v. Landham*, 251 F.3d 1072, 1082-83 (6th Cir. 2001) (emphasis added).

---

[1] The Smith Act makes it a crime knowingly or willfully to advocate the overthrow or destruction of the United States government by force or violence.

## II.     The True Threat Determination Is Best Decided as a Threshold Matter Because it cannot be left to the Trier of Fact

Whether the statements the government alleged in the indictments are constitutionally protected speech is a legal issue—one appropriately determined by the Court as a threshold matter. While in the usual case, the question of whether a communication constitutes a threat may be left to the trier of fact, but when the communication is "so facially insufficient that it cannot possibly amount to a true threat," a Court may properly dismiss the indictment. *Baker*, 890 F. Supp. at 1385. Thus, many district courts have dismissed an indictment for failing to allege a true threat. *See, e.g.*, *Baker*, 890 F. Supp. at 1385; *O'Dwyer*, No. 10-CR-00034, 2010 WL 2606657. And appellate courts have repeatedly reaffirmed a district court's right to dismiss an indictment for failing to allege a true threat as a matter of law. *See, e.g.*, *Alkhabaz*, 104 F.3d at 1496; *Landham*, 251 F.3d at 1083 (6th Cir. 2001) (holding district court erred in denying motion to dismiss indictment because the indictment failed as  a matter of law to allege a violation of § 875(c)).

## III.     The Magistrate Judge's Probable Cause Determination to Issue a Search Warrant Seeking Evidence about Threats Is Not Due any Deference

The Court asked whether Magistrate Judge Lane's issuance of a search warrant based upon the statements alleged in the indictment weighed in favor of allowing the jury to decide whether the threats were true.   The different legal standards for probable cause and for Rule 29 motion separate the two matters.  One has nothing to do with the other.  Probable cause requires a low threshold of proof. *Illinois v. Gates*, 462 U.S. 213, 235 (1983) ("Finely tuned standards such as proof beyond a reasonable doubt or by preponderance of the evidence, useful in formal trials, have no place in the magistrate's [probable cause] decision" to issue a warrant). To grant a Rule 29 motion for judgement of acquittal, the Court must find that no rational juror could find the defendant guilty beyond a reasonable doubt.

In this case, the alleged threats are deficient as a matter of law. No rational juror could find them to be serious expressions of an intent to injure and do harm. Mr. Burger provided the Court with jurisprudence that shows the statements to be non-serious statements given the gaming context in which they were made and the vague content which they contained. The words the Government claims to be threats are not in dispute. What is in dispute is their legal consequence. Are the words sufficient to convey a true threat? Are they sufficient as a matter of law to be weapons that deserve no First Amendment Protection.

The Court can best decide this, without the fear or emotion that may cloud a jury's untrained judgment. There is no reason to defer to a jury, or to allow the Government the opportunity to present additional evidence. The words in the indictment speak for themselves. They do not speak threats.

Respectfully submitted,

MAUREEN SCOTT FRANCO
Federal Public Defender

_____

/s/ JOSE I. GONZALEZ-FALLA
Assistant Federal Public Defender
Western District of Texas
Lavaca Plaza
504 Lavaca St., Ste. 960
Austin, Texas 78701
(512) 916-5025
(512) 916-5035 (FAX)
Bar Number: Texas 08135700

_____

/s/ CHARLOTTE A. HERRING
Assistant Federal Public Defender
Western District of Texas
Lavaca Plaza
504 Lavaca St., Ste. 960
Austin, Texas 78701
(512) 916-5025
(512) 916-5035 (FAX)
TX Bar Number: 24064026

*Attorneys for Defendant*

## CERTIFICATE OF SERVICE

I hereby certify that on the 19th day of November 2025, I electronically filed the foregoing with the

Clerk of Court using the CM/ECF system which will send notification of such filing to the following:

Mark Roomberg
Keith Henneke
United States Attorney's Office
903 San Jacinto Blvd., Suite 334
Austin, TX 78701

_____

/s/ JOSE I. GONZALEZ-FALLA

# Attachment J
# ECF 70 Government's Post-Hearing Supplement in Opposition to Motion to Dismiss

# IN THE UNITED STATES DISTRICT COURT
## FOR THE WESTERN DISTRICT OF TEXAS
## AUSTIN DIVISION

| | | |
|---|---|---|
| UNITED STATES OF AMERICA | ) | |
| | ) | |
| v. | ) | No. 1:25-CR-00332-ADA |
| | ) | |
| JAMES WESLEY BURGER | ) | |

### GOVERNMENT'S POST-HEARING SUPPLEMENT IN OPPOSITION TO DEFENDANT'S MOTION TO DISMISS INDICTMENT [CORRECTED][1]

Count 2 of the Superseding Indictment alleges the Defendant stated in a chatroom on January 26, 2025:

> I've come to conclude it will befall the 12 of Shawwal aa/And it will be a music festival/Attracting bounties of Christians s/In'shaa'allah we will attain martyrdom/And deal a grievous wound upon the followers of the Cross /Pray for me and enjoin yourself to martyrdom

(Dkt. 40 at 2).

By even the Defendant's definition, this is on its face a "true threat."[2] The Defendant was threatening to attack a specific place, a Christian music festival, on the specific date of April 12 (the evidence will show that "the 12 of Shawwal" means April 12), threatening to attack and kill the Christians at that music festival ("deal a grievous wound upon the followers of the Cross"), in order to achieve martyrdom. The government expects that the evidence will show:

- that there was a prominent Christian concert scheduled for April 12, 2025 in Austin, Texas;

- that both before and after the threat was made, Defendant visited the website for

---

[1] The government previously filed this supplement with an incorrect reference to the motion to suppress. The supplement is regarding the Motion to Dismiss the Indictment.

[2] Similarly, Count 1's allegation of a threat to "deal a grievous wound upon the followers of the Cross" is a true threat.

LiveNation, the company promoting and selling tickets for that April 12 Christian concert;

- that Defendant's phone showed a Google search for "Festivals happening near me," albeit absent date information;

- that in a Discord chat on January 2, 2025, Defendant wrote "May our lives be sanctified in martyrdom for the sake of Allah subhanahu wa ta'ala, Amin";

- that before and after the threat was made, Defendant was visiting military surplus and gun websites like "sixgunsurplus.com" and "kommandostore.com";

- that on February 10, 2025, Defendant stated in a Discord chat that he was "Putting some money aside for a suppressor";

- that on January 31, 2025, Defendant stated in a Discord chat that "I've been doing some good proper rifle training…Mostly scope and ranged work."

- as will show in the Government's exhibits to be filed with the Court on November 21, 2025, the Defendant started his plan to attack a Christian concert long before the indicted threats and continued after his threats to further his plans to carry out an attack on April 12, 2025. These exhibits are intrinsic to the charged crimes and show the Defendant knew, intended, and/or recklessly made the indicted threats.

This evidence shows that the statement by the Defendant on January 27 was a true threat, regardless of the platform on which Defendant chose to communicate it, or at the very least raises a factual issue for the jury to decide at trial.

Count 3 of the Superseding Indictment alleges the Defendant stated in a chatroom on January 21, 2025:

I have guns In[ ]case the authorities want to arrest me…I am ready To sacrifice my life for my Rabb….[The Defendant would] Detonate what I've prepared Of

munitions And use my firearms To take many with me, [and] Yes wish me luck on

On the path of martyrdom In'shaa'allah"

(Dkt. 40 at 3).

This is also a true threat, very similar to the statements alleged in *United States v. Elonis*. 841 F.3d 589 (3rd Cir. 2016). In *Elonis*, the defendant was convicted of four counts of making threats under 18 U.S.C. § 875(c). *Id*. at 591. Count Three in that case was based on the statement, "And if worse comes to worse, I've got enough explosives to take care of the state police and Sheriff's Department." *Id*. at 594. The convictions were ultimately upheld by the Third Circuit. *Id*. at 601.[3] The statements alleged in Count 2 are substantially similar. Both include a future threat to harm law enforcement if law enforcement takes action against the speaker. Accordingly, they both constitution a true threat, or at the very least raise a factual issue for the jury to decide at trial.

**ANY QUESTION OF FACT SHOULD BE DECIDED BY THE JURY**

The Fifth Circuit has explained that "[a] defendant may not properly challenge an indictment, sufficient on its face, on the ground that the allegations are not supported by adequate evidence, for an indictment returned by a legally constituted and unbiased grand jury, if valid on its face, is enough to call for trial of the charge on the merits." *United States v. Mann*, 517 F.2d 259, 267 (5th Cir. 1975), *citing Costello v. United States*, 350 U.S. 359, 363 (1956). To be sure, the Fifth Circuit has permitted consideration of pretrial motions to dismiss challenging the viability of the charges *as a matter of law*. *United States v. Flores*, 404 F.3d 320, 324 (5th Cir. 2005), *abrogated on other grounds*, *Abramski v. United States*, 573 U.S. 169, 191 (2014). But, a court's

---

[3] The convictions were initially upheld on direct appeal to the Third Circuit. On appeal to the Supreme Court, the Supreme Court reversed and vacated the Third Circuit's opinion based on questions of whether the jury was properly instructed on the necessary mental state. *Id*. at 596; *Elonis v. United States*, 575 U.S. 723 (2015). On remand, the Third Circuit found any error in the jury instructions was harmless and upheld the convictions. *Id*. at 601.

review of the legal viability of charges is limited. The "propriety of granting a motion to dismiss an indictment…by pretrial motion is by-and-large contingent upon whether the infirmity in the prosecution is essentially one of law or involves determinations of fact." *Id.* While questions of law can properly be considered, *Flores*, 404 F.3d at 320, "'[t]here is no authority under Rule 12…to dismiss on the basis of a sufficiency-of-the-evidence defense which raises factual questions embraced in the general issue,'" *Mann*, 517 F.2d at 267, *quoting United States v. Brown*, 481 F.2d 1035, 1041 (8th Cir. 1973). Pretrial resolution is not appropriate in cases where the motion depends on resolving questions of fact. *See United States v. Rafoi*, 60 F.4th 982, 994 (5th Cir. 2023); *United States v. Guthrie*, 720 F. App'x 199, 201 (5th Cir. 2018). "No circuit . . . allows [pretrial] review on an incomplete or disputed factual record." *United States v. Rodríguez-Rivera*, 918 F.3d 32, 35 (1st Cir. 2019) (cleaned up).[4] Because the questions of fact here are and were disputed, Rule 12 does not authorize pretrial resolution of the viability of the charge.

A pretrial motion to dismiss is "'capable of determination' if trial of the facts surrounding the commission of the alleged offense would be of *no assistance* in determining the validity of the defense" raised by that motion. *United States v. Covington*, 395 U.S. 57, 60 (1969)(emphasis added). As evidenced by the Court's very detailed questioning of counsel regarding the facts surrounding the making of the statements in question, clearly those facts are of consequence in determining whether the statements at issue constitute "true threats" or not, and thus that is a matter for the jury to decide.

---

[4] *See also United States v. Wedd*, 993 F.3d 104, 121 (2d Cir. 2021); *United States v. Sholley-Gonzalez*, 996 F.3d 887, 893 (8th Cir. 2021); *United States v. Pope*, 613 F.3d 1255, 1257 (10th Cir. 2010) (Gorsuch, J.) ("If contested facts surrounding the commission of the offense would be of *any* assistance in determining the validity of the motion, Rule 12 doesn't authorize its disposition before trial.").

Respectfully submitted,

JUSTIN R. SIMMONS
UNITED STATES ATTORNEY

 /s/
KEITH HENNEKE
Assistant United States Attorney
Texas Bar No. 24054497
903 San Jacinto Blvd., Ste. 334
Austin, Texas 78701
(512) 370-1291

MARK T. ROOMBERG
Assistant United States Attorney
Texas Bar No. 24062266
601 NW Loop 410, Suite 600
San Antonio, Texas 78216
(210) 384-7100

CERTIFICATE OF SERVICE

I hereby certify that on the 21st day of November 2025, a true and correct copy of the

foregoing instrument was electronically filed with the Clerk of the Court using the CM/ECF

System that will transmit notification of such filing to the following CM/ECF participants:

Jose Gonzalez-Falla
Charly Herring
Attorneys for Defendant

 /s/
KEITH HENNEKE
Assistant United States Attorney

# Attachment K
# ECF 72 Government's Motion to Stay

# IN THE UNITED STATES DISTRICT COURT
## FOR THE WESTERN DISTRICT OF TEXAS
### AUSTIN DIVISION

| | | |
|---|---|---|
| **UNITED STATES OF AMERICA** | ) | |
| | ) | |
| **v.** | ) | **No. 1:25-CR-00332-ADA** |
| | ) | |
| **JAMES WESLEY BURGER** | ) | |

## GOVERNMENT'S MOTION TO STAY ORDER DISMISSING SUPERSEDING INDICTMENT AND RELEASE PENDING APPEAL

COMES NOW, the United States of America, by and through its undersigned attorneys, and hereby files its Motion to Stay Order Dismissing Superseding Indictment and Release Pending Appeal, and states:

On November 24, 2025, this honorable Court orally granted the Defendant's Motion to Dismiss Superseding Indictment and granted Defendant release from custody following hearing.

The Government must confer with the Solicitor General on whether to appeal the Court's decision to grant dismissal of the Superseding Indictment.

The Government believes the Defendant is a danger to the community based on the crimes for which he was indicted. The Government requests this honorable Court stay its order releasing the Defendant for 7-10 days following the issuance of the Court's written order to allow time for the Solicitor General to consider whether to appeal this Court's decision to the Fifth Circuit Court of Appeals.

The Government additionally requests that this honorable Court issue a written order setting forth its reasoning to allow the Government to appeal.

Respectfully submitted,

JUSTIN R. SIMMONS
UNITED STATES ATTORNEY

   /s/
MARK T. ROOMBERG
Assistant United States Attorney
Texas Bar No. 24062266
601 NW Loop 410, Suite 600
San Antonio, Texas 78216
(210) 384-7100

KEITH HENNEKE
Assistant United States Attorney
Texas Bar No. 24054497
903 San Jacinto Blvd., Ste. 334
Austin, Texas 78701
(512) 370-1291

CERTIFICATE OF SERVICE

I hereby certify that on the 24th day of November 2025, a true and correct copy of the

foregoing instrument was electronically filed with the Clerk of the Court using the CM/ECF

System that will transmit notification of such filing to the following CM/ECF participants:

Jose Gonzalez-Falla
Charly Herring
Attorneys for Defendant

                          /s/
MARK ROOMBERG
Assistant United States Attorney

# IN THE UNITED STATES DISTRICT COURT
## FOR THE WESTERN DISTRICT OF TEXAS
### AUSTIN DIVISION

| | | |
|---|---|---|
| UNITED STATES OF AMERICA | ) | |
| | ) | |
| v. | ) | No. 1:25-CR-00332-ADA |
| | ) | |
| JAMES WESLEY BURGER | ) | |

## O R D E R

This matter having come before the Court on the Government's Motion to Stay Order Dismissing Superseding Indictment and Release Pending Appeal, and the Court being otherwise fully advised in the premises,

IT IS HEREBY ORDERED that, for the reasons set forth in the Government's Motion to Stay Order Dismissing Superseding Indictment, the Government's Motion to Stay Order Dismissing Superseding Indictment is GRANTED/DENIED.

IT IS HEREBY ORDERED that, for the reasons set forth in the Government's Motion to Stay Release Pending Appeal, the Government's Motion to Stay Release Pending Appeal is GRANTED/DENIED.

IT IS SO ORDERED.

SIGNED and ENTERED this          day of          2025, Austin, Texas.

_____
HONORABLE ALAN ALBRIGHT
United States District Judge

# Attachment L
# ECF 74 Defendant's Response to Motion to Stay

# UNITED STATES DISTRICT COURT
## WESTERN DISTRICT OF TEXAS
## AUSTIN DIVISION

| | | | |
|---|---|---|---|
| **UNITED STATES OF AMERICA** | § | | |
| | § | | |
| **V.** | § | **NO.** | **A-25-CR-00332 (ADA)** |
| | § | | |
| **JAMES WESLEY BURGER** | § | | |

## DEFENDANT'S RESPONSE TO GOVERNMENT'S MOTION TO STAY ORDER DISMISSING SUPERSEDING INDICTMENT AND RELEASE PENDING TRIAL

TO THE HONORABLE UNITED STATES DISTRICT JUDGE ALAN D. ALBRIGHT:

On November 24, 2025, this Court orally dismissed James Burger's indictment. During the hearing, the Court inquired with the Government if Mr. Burger would be released, to which the Government responded he would. The Government made no representation that they were intending to seek a stay of this Court's order dismissing the Indictment or of Mr. Burger's release. Despite this, the Government almost immediately after the hearing filed a motion to say the order dismissing the superseding indictment and release pending appeal. ECF Doc. No. 72. Mr. Burger objects to the Government's motion. Without an Indictment, there is no authority to detain Mr. Burger.

### I.     There is no authority to detain Mr. Burger following the dismissal of his Indictment

The Government's appeal of a district court order in a criminal case is governed by 18 U.S.C. § 3731, which provides:

> In a criminal case an appeal by the United States shall lie to a court of appeals from a decision, judgment, or order of a district court dismissing an indictment or information or granting a new trial after verdict or judgment, as to any one or more counts, or any part thereof, except that no appeal shall lie where the double jeopardy clause of the United States Constitution prohibits further prosecution.

18 U.S.C. § 3731. Furthermore, 18 U.S.C. § 3143 governs release or detention of a defendant pending an appeal. Section 3143(c) provides that the Court "shall treat a defendant in a case in which an appeal has been taken by the United States under section 3731 of this title, in accordance with section 3142 of this title, unless

the defendant is otherwise subject to a release or detention order." In cases where the defendant has not been

sentenced to a term of imprisonment, the Court is directed to "release or detain the person under section 3142."

*Id*. Section 3142 provides the ordinary procedures for pretrial release or detention of a "***person charged with***

***an offense***[.]" 18 U.S.C. § 3142(a) (emphasis added).

Thus, § 3142 provides that a detention or release order shall issue upon the appearance of a "person

charged with an offense[.]" 18 U.S.C. § 3142(a). Mr. Burger is no longer charged with an offense and

therefore cannot be detained pursuant to § 3142. *See, e.g., Unites States v. Arteaga-Centeno*, 360 F. Supp. 3d

1022, 1023-25 (N.D. Cal. 2019). As the court explained in *Arteaga-Centeno*, "once this Court granted

Defendant's Motion to Dismiss, there was no 'charged offense' on which the Court could order him

detained." *Id*. at 1024 (cleaned up). Other courts that specifically consider this issue have found the same. *See,*

*e.g., United States v. Hudson*, 3 F. Supp. 3d 772, 790 (C.D. Cal.), *rev'd and remanded on other grounds sub*

*nom. United States v. Dunlap*, 593 F. App'x 619 (9th Cir. 2014); *United States v. Sales*, No. 2:13-cr-137, 2014

WL 3728364 at *3-4 (D. Me. July 25, 2014).

The Government cites no authority to support its position that Mr. Burger can be detained

pending appeal—let alone any authority supporting its argument to detain Mr. Burger while the Government

"confer[s] with the Solicitor General on whether to appeal." ECF Doc. No. 72 at pg. 1. Without an Indictment,

there is no authority to detain Mr. Burger, and he respectfully requests the Court deny the Government's

motion.

II.     **The Court should not stay its dismissal order**

The Government also argues that the Court should stay its dismissal order pending appeal. ECF Doc. No.

72. The Court should deny this request.

The Fifth Circuit has explained that a stay is an "extraordinary remedy[.]" *Texas v. United States*, 40 F.4th

205, 215 (5th Cir. 2022). A motion for a stay requires consideration of:

(1) whether the stay applicant has made a strong showing that he is likely to succeed on the merits;
(2) whether the applicant will be irreparably injured absent a stay;
(3) whether issuance of the stay will substantially injure the other parties interested in the proceeding; and
(4) where the public interest lies.

*See E.T. v. Paxton*, 19 F.4th 760, 764 (5th Cir. 2021) (citations omitted). The Government has failed to make any argument as to any of the required factors. *See* ECF Doc. No. 72.

As to the first factor, the Government must make a "strong showing" that it is likely to succeed on the merits of its appeal, not a "mere possibility of relief." *Burgess v. Fed. Deposit Ins. Corp.*, 871 F.3d 297, 300 (5th Cir. 2017) (quoting *Nken v. Holder*, 556 U.S. 418, 434 (2009)). The Government has made no showing, let alone a "strong showing," that it is likely to succeed on the merits of its appeal.

Nor is there any possibility that the Government will be irreparably injured absent a stay. In contrast, Mr. Burger will be substantially injured by the imposition of a stay. If the Court's order dismissing the superseding indictment is stayed, Mr. Burger will be subject to continued detention. Further, as discussed above such continued detention is likely unlawful. Sitting indefinitely in a jail cell, particularly for an unconstitutional charge, is among the most egregious harms imaginable. "To a prisoner, this prospect of additional time behind bars is not some theoretical or mathematical concept. Any amount of actual jail time is significant and has exceptionally severe consequences for the incarcerated individual and for society which bears the direct and indirect costs of incarceration." *Rosales-Mireles v. United States*, 585 U.S. 129, 139 (2018) (cleaned up); *cf. Ingraham v. Wright*, 430 U.S. 651, 673-74 (1977) ("While the contours of this historic liberty interest in the context of our federal system of government have not been defined precisely, they always have been thought to encompass freedom from bodily restraint and punishment. It is fundamental that the state cannot hold and physically punish an individual except in accordance with due process of law.") (cleaned up).

Finally, the public interest does not support continued detention. The public does not have an interest in detaining a person where the Court has already found that the Indictment should be dismissed.

Even if this Court has the power to issue the requested stay, the Government has failed to meet its burden

for such extraordinary relief. *See E.T.*, 19 F.4th at 764. Mr. Burger, therefore, requests the Court deny the

Government's request for a stay.

III.     **Conclusion**

For the foregoing reasons, this Court should deny the Government's Motion.


Respectfully submitted,


MAUREEN SCOTT FRANCO
Federal Public Defender


_____
/s/ JOSE I. GONZALEZ-FALLA
Assistant Federal Public Defender
Western District of Texas
Lavaca Plaza
504 Lavaca St., Ste. 960
Austin, Texas 78701
(512) 916-5025
(512) 916-5035 (FAX)
Bar Number: Texas 08135700


_____
/s/ CHARLOTTE A. HERRING
Assistant Federal Public Defender
Western District of Texas
Lavaca Plaza
504 Lavaca St., Ste. 960
Austin, Texas 78701
(512) 916-5025
(512) 916-5035 (FAX)
TX Bar Number: 24064026

*Attorneys for Defendant*

# CERTIFICATE OF SERVICE

I hereby certify that on the 24th day of November 2025, I electronically filed the foregoing with the

Clerk of Court using the CM/ECF system which will send notification of such filing to the following:

Mark Roomberg
Keith Henneke
United States Attorney's Office
903 San Jacinto Blvd., Suite 334
Austin, TX 78701

_____
/s/ JOSE I. GONZALEZ-FALLA

# Attachment M
# ECF 75 Government's Brief in Support of Motion to Stay

**IN THE UNITED STATES DISTRICT COURT**
**FOR THE WESTERN DISTRICT OF TEXAS**
**AUSTIN DIVISION**

| | | |
|---|---|---|
| UNITED STATES OF AMERICA | ) | |
| | ) | |
| v. | ) | No. 1:25-CR-00332-ADA |
| | ) | |
| JAMES WESLEY BURGER | ) | |

**GOVERNMENT'S BRIEF IN SUPPORT OF ITS MOTION TO STAY ORDER DISMISSING SUPERSEDING INDICTMENT AND RELEASE PENDING APPEAL**

COMES NOW, the United States of America, by and through its undersigned attorneys, and hereby files its Brief in Support of its Motion to Stay Order Dismissing Superseding Indictment and Release Pending Appeal. Following the Court's oral pronouncement of its decision to dismiss the Superseding Indictment against Defendant James Burger, the government requests that the Court issue a written opinion explaining the Court's reasoning for that decision and stay that decision pending appeal or for at least 7 days after the Court issues a written order dismissing the indictment to allow time for the Solicitor General to consider whether to appeal this Court's decision to the Fifth Circuit Court of Appeals and, if the decision is made to appeal, to give the government time to file that appeal and request a stay of the Court's order from the Fifth Circuit.

**I.      Relevant Facts and Procedural History**

This case arises from threats Burger, then a high school senior near Austin, Texas, issued in an online platform called Roblox. Roblox allows users to create online environments called "experiences"—often games, but sometimes more akin to chatrooms—that they and other users can populate through online avatars. Burger issued his threats using avatars "Ghurabahh" and "Crazz3pain" in a Roblox environment called "Church." Other users reported some of Burger's threats, which they saw as a series of transient messages that appeared above their heads for ten

seconds, then disappeared. Law enforcement captured others through a keystroke logger his uncle installed on the computer Burger used after becoming concerned about Burger's behavior. On January 21, 2025, Burger made statements on Roblox about having guns and explosives and being prepared to use them to kill law enforcement and achieve martyrdom if the authorities try to arrest him. On January 23 and 27, 2025, Burger made statements on Roblox indicating that he was planning to attack a Christian music concert or festival, kill or injure the Christians, and seek or achieve martyrdom.

Burger was arrested on state charges on February 28, 2025. On May 19, 2025, Burger was transferred into federal custody pursuant to a federal complaint. ECF 1. The government sought pretrial detention of Burger because of the risk he would flee and because of the danger he presented to the community. Mot. to Detain, ECF 3. After a contested hearing, the Honorable U.S. Magistrate Judge Mark Lane granted the government's motion to detain Burger, finding that no condition or combination of conditions of release would assure his appearance or assure the safety of any other person and the community. Order of Detention, ECF 10. Evidence of Burger's danger to the community included his threats described above, the fact that he stated a particular date for his planned attack on a Christian concert, "the 12 of Shawwal," which meant April 12, 2025, and the fact that there was a prominent Christian concert scheduled for April 12, 2025 in Austin, Texas. Before and after January 27, 2025, Burger visited the website for LiveNation, the company promoting that concert. And at some point, Burger searched on his phone for "Festivals happening near me." Burger had access to guns owned by his uncle and took and shared one or more pictures of himself with those guns, including sharing one with the person he was discussing his planned attack on the Christian concert with.

The government also uncovered other concerning messages from Burger before and after

the charged threats. In March 2024, he posted on 4chan, an online forum, that his highest ambition was to be a successful serial killer. In July 2024, he typed—in a message captured by the keystroke logger—that he wanted to attack the Austin Police Department and pledged allegiance to the head of the Islamic State. In February 2025, the keylogger captured Burger typing, "We're getting our knives sharpened for your throats." While in state custody after his arrest, he wrote down plans to make a bomb and a list of prior terrorist mass-casualty attacks. The government also obtained evidence that Burger intentionally used Roblox for his communications because he believed it was less likely to be monitored and because law enforcement would not take seriously any statements made on that platform. The government also obtained evidence that in February 2025, using a third screen name, Burger stated he wanted to do a stabbing attack like his "friend" in Europe. The government's evidence shows that in this same time frame, Burger sent violent jihadist propaganda glorifying attacks on Western targets and churches. The government's evidence further shows Burger glorifying dying as a martyr and that he was willing to sacrifice himself "in a blaze of iron and metal…raining bullets upon disbelievers and their soldiers/police."

A federal grand jury charged Burger with two counts of violating 18 U.S.C. § 875(c), which makes it a federal crime to "transmit in interstate or foreign commerce any communication containing . . . any threat to injure the person of another." Count One covered Burger's statements on January 23, 2025, and Count Two covered Burger's statements on January 27, 2025. In a superseding indictment, another grand jury later added Count Three, which covered Burger's statements on January 21, 2025. *See* Superseding Indictment, ECF No. 40. He pleaded not guilty. *See* Order, ECF No. 47.

Burger moved to dismiss the indictment pretrial under Federal Rule of Criminal Procedure 12(b)(1). Def. Mot. to Dismiss 14, ECF No. 53. He argued that the indictment sought to punish

him for protected First Amendment expression because his statements were not constitutionally unprotected true threats. *Id.* at 17. The statements could not be true threats, he argued, because they were insufficiently specific and because the context—an online environment populated by avatars—"drained" the statements of "gravity." *Id.* at 17-18. Invoking the Due Process Clause, he also argued that § 875(c) was unconstitutionally vague and overbroad. *Id.* at 21-22. The government opposed the motion. Response, ECF No. 59.

The Court held hearings on the motion to dismiss the indictment on November 18 and 24, 2025. At the conclusion of the second hearing, the Court orally granted the motion to dismiss. No written order has yet been issued by the Court. Approximately one hour after the conclusion of the hearing, the government moved to stay the Court's dismissal order for 7 to 10 days after the issuance of a written order. Mot. to Stay, ECF 72.[1] The defense has responded to the motion to stay. ECF 74.

## II.    Legal Standard for a Stay

"Given the drastic consequences if [a] Court erred in granting" dismissal of an indictment, it is appropriate to stay a dismissal order "in order to give the Government an opportunity to consider its options" regarding potential appeal. *United States v. Schlor*, No. CR-01-360-RHW, 2008 WL 4949037, at *6 (C.D. Cal. Nov. 14, 2008) (stay of dismissal of indictment on speedy trial grounds). Indeed, district courts dismissing indictments over the government's objection frequently enter such stays to allow for appellate review. For example, after ordering dismissal of an indictment on selective prosecution grounds, the United States District Court for the Eastern

---

[1] The defense faults the government for not orally requesting a stay at the conclusion of the hearing. Def. Resp. to Mot. to Stay, ECF 74, at 1. While it is true that the government attorneys, responding to a question from the Court, stated that the effect of the Court's oral pronouncements would be Burger's release that day, the government did not waive or agree not to seek a stay of the Court's order. Immediately upon the conclusion of the hearing, the government's attorneys requested a stay.

District of Virginia stayed its order "pending the United States' appeal to the United States Court of Appeals for the Fourth Circuit." *United States v. Olvis*, 913 F. Supp. 451, 457 (E.D. Va. 1995). Similarly, after dismissing an indictment on statute of limitations grounds, the United States District Court for the Western District of Tennessee stayed dismissal for approximately 60 days. *United States v. Titterington*, No. CR. 2-20165, 2003 WL 23924932, at *2 (W.D. Tenn. May 22, 2003). Likewise, the United States District Court for the Southern District of New York stayed its dismissal order for approximately 18 days "[i]n order to give the Court of Appeals a reasonable opportunity to schedule the [anticipated] appeal" by the United States. *United States v. Johnson*, No. 98 CR. 880 (WK), 1998 WL 841491, at *2 (S.D.N.Y. Dec. 3, 1998), *rev'd on other grounds*, 171 F.3d 139 (2d Cir. 1999).

A stay pending appeal "simply suspends judicial alteration of the status quo." *Veasey* v. *Perry*, 769 F.3d 890, 892 (5th Cir. 2014) (citing *Nken* v. *Holder*, 556 U.S. 418 (2009)). Under Federal Rule of Appellate Procedure 8(a)(1), "[a] party must ordinarily move first in the district court for ... a stay of the judgment or order of a district court pending appeal[.]" Fed. R. App. P. 8(a)(1). The factors considered by courts in determining whether to grant a stay are:

> (1) whether the stay applicant has made a strong showing that he is likely to succeed on the merits; (2) whether the applicant will be irreparably injured absent a stay; (3) whether issuance of the stay will substantially injure the other parties interested in the proceedings; and (4) where the public interest lies.

*Nken v. Holder*, 556 U.S. 418, 434 (2009) (quoting *Hilton v. Braunskill*, 481 U.S. 770, 776 (1987)); *E.T. v. Paxton*, 19 F.4th 760, 764 (5th Cir. 2021) (citing *Nken* and *Hilton*).

A recent decision in the Eastern District of Michigan, *United States v. Williams*, is instructive. Case No. 23-CR-20199, 2024 WL 1977151 (E.D. Mich. May 2, 2024). In that case, the court dismissed an indictment for felon in possession of a firearm under 18 U.S.C. § 922(g)(1). *Id*. at *1. The government moved to stay that decision pending appeal. *Id*. Applying the same

factors cited above, the court granted in part the government's request, concluding "that a limited stay is warranted at this time to allow the government to file its appeal. Once a notice of appeal has been filed by the government under 18 U.S.C. § 3731, the Court may consider whether Defendant's continued detention is appropriate under 18 U.S.C. §§ 3142 and 3143(c)." *Id.* at *2. Significant to the court's decision to grant the stay was the fact that the defendant "poses an unacceptable risk of harm to others" and the court's finding "that failing to grant a stay may pose a risk of injury to the public and that, given the nature of gun violence, that injury may be irreparable." *Id.*

## III.    Argument and Authorities

The government respectfully requests an immediate order staying the execution of this Court's oral order of November 24, 2025, dismissing the indictment in this matter, pending a potential government appeal. If this Court declines to stay its order for the pendency of any appeal, the government respectfully requests that this Court stay its dismissal order until 7 days after this Court enters a written order on the indictment so that the government can seek an emergency stay pending appeal from the Fifth Circuit, *see* Fed. R. App. P. 8(a)(2).

As noted in yesterday's preliminary motion to stay, the government is seeking the Solicitor General's authorization for an emergency appeal of any dismissal order to the United States Court of Appeals for the Fifth Circuit. The government anticipates a prompt determination from the Solicitor General. Immediately upon the Solicitor General's authorization of appeal, the government will file a notice of appeal with this Court. Should the Solicitor General decide not to authorize appeal, the government will promptly notify this Court so that the stay of the Court's order may be lifted.

"[W]hether a stay should be granted depends 'upon the circumstances of the particular

case." *Texas v. United States*, 126 F.4th 392, 421 (5th Cir. 2025) (quoting *Nken*, 556 U.S. at 433). Although "a stay is not a matter of right," a stay "may be called for" when the court is "faced with serious legal questions that merit careful scrutiny and judicious review." *Texas v. United States*, 126 F.5th at 421 (cleaned up). The movant for a stay "need only present a substantial case on the merits when a serious legal question is involved and show that the balance of equities weighs heavily in favor of granting the stay." *Id.* (cleaned up).  Here, the balance of equities weighs in favor of a stay—at least for the brief period necessary for the government to seek an emergency stay from the Fifth Circuit should the Solicitor General authorize that request.

First, the government is likely to succeed in showing that the indictment should not have been dismissed under Rule 12. As discussed at length during the hearings on the motion to dismiss the indictment, the government's position is that the statements made by Burger on Roblox on January 21, 23, and 27, 2025, constitute "true threats" and are not protected by the First Amendment. The government also submits that a jury rather than a judge is the correct arbiter of whether the statements at issue constitute true threats. The Court recognized the difficulty of its decision to grant the motion to dismiss, referring to the decision as a "tie" and deferring to the First Amendment rights of Burger to resolve the "tie" and discussing the time which the Court took to consider and decide the issue. The closeness of the call for the Court illustrates the strong showing the government has made that it is likely to succeed on the merits on appeal, and thus weighs in favor of a stay. *Nken*, 556 U.S. at 434.

Second, the government's interests—which also implicate the public's interests embodied in the fourth factor, *see Nken*, 556 U.S. at 435—would be harmed absent a stay. In a criminal case, the "risk that the prisoner will pose a danger to the public" is a factor supporting a stay. *Hilton v. Braunskill*, 481 U.S. 770, 777 (1987). The evidence shows, and the magistrate court previously

found, that Burger poses a danger to the community that cannot be overcome by conditions of release. *See* Order of Detention, ECF 10. Burger was planning a terrorist attack on a Christian music concert on April 12, 2025. He had determined the place and the time but was disrupted by law enforcement's investigation and decisive actions. He exchanged a photo of the weapon he planned to use with a sympathetic individual, claimed to want to become a serial killer, and repeatedly discussed his desire to become a martyr. He further discussed attacking the Austin Police Department and responding with violence (guns and explosives) if law enforcement attempted to arrest him. He shared bomb making plans online and made other bomb making instructions while in custody, along with a list of terrorist attacks. He ascribed to radical Islamic ideology and pledged his allegiance to ISIS and the Islamic State. Those facts show the high level of danger posed by Burger if he were to be released and thus the second and fourth factors strongly support a stay. Burger has also talked about leaving the United States and was found to be a flight risk by the magistrate judge, Order of Detention, ECF 10. Burger's departure from the United States could frustrate further prosecution as a practical matter regardless of a decision from the Fifth Circuit rejecting his arguments for dismissal.

Third, Burger's interests are not dispositive. While an innocent person should not be detained, here the issue of whether the First Amendment protects the statements made by Burger is very much in question. Additionally, if the Court were to grant the stay, it could certainly revisit the issue of detention and hold a hearing to determine whether conditions of release could be crafted sufficient to ensure Burger's appearance and the safety of the community.[2] The government

---

[2] A stay of this Court's dismissal order would leave the superseding indictment in place and therefore obviate Burger's argument that this Court lacks authority to detain him in the absence of pending charges, *see* Def. Resp. to Gov't Mot. to Stay at 1-2. Burger's argument is incorrect. *See, e.g., United States v. Sambasivam*, No. 2:22cr163, 2023 WL 4980932, at *2 (S.D.W. Va. Aug. 3, 2023). In any event, even in the case Burger quotes to support this argument, the district court stayed the defendant's release to allow time for the court of appeals to rule. *See United States v. Arteaga-Centeno*, 360 F. Supp. 3d 1022, 1026 (N.D. Cal. 2019).

anticipates it would oppose release on conditions, but further inquiry could be made by the Court. Similarly, the court in *United States v. Williams* granted in part the government's request for a stay and scheduled a "status conference and/or bond review hearing." 2024 WL 1977151 at *2.

## IV. Conclusion

WHEREFORE, the United States respectfully requests this honorable Court issue a written opinion explaining the Court's reasoning for that decision and stay that decision pending appeal or for at least 7 days after the Court issues a written order dismissing the indictment to allow time for the Solicitor General to consider whether to appeal this Court's decision to the Fifth Circuit Court of Appeals and, if the decision is made to appeal, to give the government time to file that appeal and request a stay of the Court's order from the Fifth Circuit.

Respectfully submitted,

JUSTIN R. SIMMONS
UNITED STATES ATTORNEY

  /s/
KEITH HENNEKE
Assistant United States Attorney
Texas Bar No. 24054497
903 San Jacinto Blvd., Ste. 334
Austin, Texas 78701
(512) 370-1291

MARK T. ROOMBERG
Assistant United States Attorney
Texas Bar No. 24062266
601 NW Loop 410, Suite 600
San Antonio, Texas 78216
(210) 384-7100

<u>CERTIFICATE OF SERVICE</u>

I hereby certify that on the 25th day of November 2025, a true and correct copy of the foregoing instrument was electronically filed with the Clerk of the Court using the CM/ECF System that will transmit notification of such filing to the following CM/ECF participants:

Jose Gonzalez-Falla
Charly Herring
Attorneys for Defendant


_____/s/_____
KEITH HENNEKE
Assistant United States Attorney

# Attachment N
# ECF 76 Order Denying Motion to Stay

# UNITED STATES DISTRICT COURT
## WESTERN DISTRICT OF TEXAS
## AUSTIN DIVISION

| | | |
|---|---|---|
| **UNITED STATES OF AMERICA** | ) | |
| | ) | |
| | ) | |
| **v.** | ) | |
| | ) | **NO. 1:25-CR-00332-ADA** |
| **JAMES WESLEY BURGER** | ) | |
| | ) | |

## <u>ORDER</u>

This matter before the Court on the Government's Motion to Stay Order Dismissing Superseding Indictment and Release Pending Appeal. The Court has reviewed the Motion and James Burger's Response, as well as the applicable law and relevant facts.

On November 24, 2025, the Court orally dismissed Mr. Burger's indictment, and a written order reflecting that dismissal is forthcoming. 18 U.S.C. § 3142 provides that a detention or release order shall issue upon the appearance of a "person charged with an offense[.]" 18 U.S.C. § 3142(a). The Court agrees that Mr. Burger is no longer charged with an offense following the Court orally dismissing the indictment, and therefore Mr. Burger cannot be detained pursuant to § 3142. Therefore, the Court finds that Mr. Burger should not remain detained.

Further, the Court does not find that its order dismissing Mr. Burger's indictment should be stayed pending appeal. Under Fifth Circuit law, a stay is an "extraordinary remedy[.]" *Texas v. United States*, 40 F.4th 205, 215 (5th Cir. 2022). A motion for a stay requires consideration of:

> (1) whether the stay applicant has made a strong showing that he is likely to succeed on the merits; (2) whether the applicant will be irreparably injured absent a stay; (3) whether issuance of the stay will substantially injure the other parties interested in the proceeding; and (4) where the public interest lies.

*See E.T. v. Paxton*, 19 F.4th 760, 764 (5th Cir. 2021) (citations omitted). The Government has failed to make any showing of any of the required factors and the Court does not find that the extraordinary remedy is warranted here. While the Government asserts that Mr. Burger is a danger to the community based on the crimes for which he was indicted, the Government fails to make a clear showing to support that assertion and fails to clearly address the required factors. *See* Dkt. 72. The Court therefore finds that a stay pending the Government's appeal is inappropriate in this case.

IT IS HEREBY ORDERED that the Government's Motion to Stay Order Dismissing Superseding Indictment is **DENIED.**

IT IS FURTHER ORDERED that the Government's Motion to Stay Release Pending Appeal is **DENIED.**

**SIGNED** on November 25, 2025.


_____
ALAN D ALBRIGHT
UNITED STATES DISTRICT JUDGE

# Attachment O
# ECF 77 Order Granting Motion to Dismiss

# UNITED STATES DISTRICT COURT
# WESTERN DISTRICT OF TEXAS
# AUSTIN DIVISION

| | | |
|---|---|---|
| **UNITED STATES OF AMERICA** | ) | |
| | ) | |
| | ) | |
| **v.** | ) | |
| | ) | **NO. 1:25-CR-00332-ADA** |
| **JAMES WESLEY BURGER** | ) | |
| | ) | |

## ORDER

On this date, the Court considered Defendant's Motion to Dismiss. Dkt. 53. The Court, having considered the motion, the response, the reply, and heard arguments from counsel, is of the opinion that the motion should be **GRANTED.**

On November 24, 2025, the Court orally ruled on this motion and dismissed Mr. Burger's indictment. A memorandum in support of this written order reflecting the dismissal is forthcoming.

IT IS THEREFORE ORDERED that the Defendant's Motion to Dismiss (Dkt. 53) is hereby GRANTED. The Indictment (Dkt. 40 – Superseding Indictment) is HEREBY DISMISSED.

**SIGNED** on November 26, 2025.

_____
ALAN D ALBRIGHT
UNITED STATES DISTRICT JUDGE

# Attachment P
# ECF 78 Government's Notice of Appeal

UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF TEXAS
AUSTIN DIVISION

| | |
|---|---|
| UNITED STATES OF AMERICA,<br>    Plaintiff, | |
| v. | No. 1:25-cr-332-ADA |
| JAMES WESLEY BURGER,<br>    Defendant. | |

## NOTICE OF APPEAL

The United States appeals to the United States Court of Appeals for the Fifth Circuit from this Court's oral order of November 24, 2025, dismissing the Superseding Indictment; its Order of November 25, 2025, denying the Government's Motion to Stay Order Dismissing Superseding Indictment and Release Pending Appeal (ECF No. 76); and its Order of November 26, 2025, granting the Defendant's Motion to Dismiss (ECF No. 77).

Respectfully submitted,

JUSTIN R. SIMMONS
UNITED STATES ATTORNEY

By:    */s/ Keith Henneke*
KEITH HENNEKE
Texas Bar No. 24054497
MARK T. ROOMBERG
Texas Bar No. 24062266
Assistant United States Attorneys
601 N.W. Loop 410, Suite 600
San Antonio, Texas  78216
(210) 384-7100

**Certificate of Service**

I certify that on November 26, 2025, I electronically filed this document with the Clerk of Court using the CM/ECF system, which will send notification to all counsel of record.


/s/ Keith Henneke
KEITH HENNEKE
Assistant United States Attorney

# Attachment Q
# Government Trial Exhibit 3
(submitted to the district court November 24, 2025)



**GOVERNMENT EXHIBIT**

CASE NO. A-25-CR-332

EXHIBIT NO. 3



















