**In the**
**United States Court of Appeals for the Fifth Circuit**

———————————

No. 25-50976

UNITED STATES OF AMERICA,

*Plaintiff-Appellee,*

v.

JAMES WESLEY BURGER,

*Defendant-Appellant.*

———————————

Appeal from the United States District Court
for the Western District of Texas
No. 1:25-CR-322-AA

———————————

## Response in Opposition to the Government's Emergency Motion to Stay Orders Dismissing Indictment and Releasing Defendant

United States District Judge Alan Albright dismissed the superseding indictment against Defendant-Appellee James Wesley Burger dismissed and ordered him released from custody. The government has appealed and filed an emergency motion to stay the district court's orders. *See* Fed. R. App. 8(a)(2); Fifth Cir. Rule 27.3. Burger opposes the requested stay. *See* Fed. R. App. 27(a)(3). Under Fifth Circuit Rule 27.3, a party "should not file" a motion "seeking emergency relief unless there is an emergency sufficient to justify disruption of the normal appellate process." There is no such emergency here. The Court should deny the stay.

# I

## Proceedings Below

Burger was charged by superseding indictment with three counts of transmitting threats in interstate commerce, in violation of 18 U.S.C. 875(c). Att. E.[1] Burger moved to dismiss the indictment, arguing, among other things, that the statements were not true threats but protected speech under the First Amendment. Att. F. After reviewing extensive briefing and holding two separate hearings, the district court agreed. Att. O.

At the end of the second hearing, on November 24, 2025, the district court orally granted the motion to dismiss the superseding indictment. See Att. N, O. The Government filed a motion to stay pending appeal the order dismissing the superseding indictment and releasing Burger. Att. K. The next day, November 25, the court issued a written order dismissing the superseding indictment and ordering Burger's release from custody, as he was no longer "charged with an offense." 18 U.S.C. § 3142(a); Att. O. In the order, the court stated that a written explanation of its order would be forthcoming. Att. O. The court also denied the government's motion to stay. Att. N. That same day, the government filed its notice of appeal. Att. P. The next day, November 26, at approximately

---

[1] There is no record on appeal. When the government filed its motion to stay in this Court, it included an Attachment with relevant documents. Burger cites to the relevant documents by Attachment letter.

7:47 P.M., the government filed its emergency motion to stay with this Court.[2]

## II

## Argument

The government's burden, as the proponent of the stay, is a "substantial one," because an emergency stay is an "extraordinary remedy" and "an equitable one committed to this Court's discretion." *Texas v. United States*, 40 F.4th 205, 215 (5th Cir. 2022), *overruled on other grounds*, *United States v. Texas*, 599 U.S. 670 (2023) (quoting *Thomas v. Bryant*, 919 F.3d 298, 303 (5th Cir. 2019)). In determining whether to grant this extraordinary remedy, this Court considers:

1)  whether the government has made a strong showing that it is likely to succeed on the merits;

2)  whether the government will be irreparably injured absent a stay;

3)  whether issuance of a stay will substantially injure the defendant; and

4)  where the public interest lies.

*Id.* (citing *Thomas v. Bryant*, 919 F.3d at 303). The district court's factual findings are reviewed for clear error and its legal conclusions de novo. *Id.* (A review of these four factors shows that the government has not met its burden for this extraordinary relief here.

---

[2] Fifth Circuit Rule 27.3 states that an emergency motion is to "[b]e filed in the clerk's office by 2:00 p.m. on the day of filing."

1. The government makes the same merits arguments in the emergency motion that it made to the district court, which rejected them. Because the government filed this motion to stay before the district court issued its written explanation for granting the dismissal, this Court does not have before it the documents necessary to determine the government's likelihood of success on the merits. Nor did the government provide this Court with the transcripts from the two hearings that the district court held on the motion to dismiss. In the absence of necessary information, this Court should not grant the stay but instead allow the normal appellate process to take place.

2. Contrary to its claim, the government will not be "irreparably injured" absent a stay. The government states that "Burger's statements and comments … establish the threat of irreparable harm," Gov't Mtn. 2, but does not explain how those statements result in it being irreparably injured. The statements alleged in the superseding indictment were made by Burger as part of an internet role-playing game on Roblox in an experience called "Church," in which he played the part, with a Lego figure avatar, of a fundamentalist Muslim. App. F. There is no evidence that Burger took any action in the real world related to these statements. While the government and the public have an interest in the prosecution of crimes, they also have a strong interest in protecting free speech under the First Amendment.

The government also argues that it will be irreparably injured by Burger's release from custody. Gov't Mtn. 14. This is a strained argument. Burger was not in custody during the time the government investigated these alleged offenses, and no one was hurt. Burger was an 18-year-old high school senior living with his aunt and uncle in an Austin suburb. When government agents arrested Burger, his uncle was about to take him to school because Burger has no driver's license or car. The agents searched Burger's home and did not find any firearms, weapons, or munitions. All of Burger's behavior that the government points to took place online, in virtual worlds. Nothing happened in the real world.

The government points to the magistrate judge's order detaining Burger as evidence that he is a danger to others. App. C. But Burger's circumstances have changed. A major factor in Burger being detained was that he did not have a verified residence for release. App. C. At the time, the aunt and uncle Burger had been living with for four years decided not to take him back after his arrest. However, when Burger was released from custody because the indictment was dismissed, he returned to residing with that aunt. Burger has also been in weekly counseling during this period, including while in custody. The magistrate's decision to detain Burger also appears to have been influenced by incorrect information. The magistrate found that Burger, who was 18 years old at the time of the alleged offenses, had a "lengthy criminal record." App. C. He does not. Burger has two arrests. One was for drug possession when he

was 16 years old. The other was for these alleged offenses. Burger has no criminal convictions or adjudications of delinquency. Strangely, while the government argues that it will be irreparably harmed by Burger's release from detention, it also acknowledges that should this Court grant its stay request, the district court could again release Burger from custody. The alleged harm does not seem "irreparable."

Indeed, the government's interest in prosecuting Burger is not comparable to the types of harm this Court has recognized as "irreparable." *See, e.g., Thomas v. Bryant*, 919 F.3d 298 (5th Cir. 2019); *Odonnell v. Goodhart*, 900 F.3d 220, 221–22 (5th Cir. 2018). *Thomas v. Bryant* involved an alleged Voting Rights Act violation. *Id.* 301–302. The State of Mississippi lost in the district court and filed a motion to stay in the Fifth Circuit. *Id.* at 302–03. This Court found that the State could establish irreparable injury without a stay because a full appeal could not be decided before the year's elections. *Id.* at 303. But the plaintiffs would also suffer irreparable harm if a stay were granted because it would result in an election under an unlawful plan with discriminatory effects. *Id.* at 303–34. In *Odonnell v. Goodhart*, plaintiffs brought a class action against Harris County, Texas, challenging its system of setting bail for indigent misdemeanor arrestees. *Id.* at 221–22. The plaintiffs won a preliminary injunction in the district court. *Id.* at 222–23. The county moved to stay the preliminary injunction in the Fifth Circuit. *Id.* at 223. This Court held that the county and the public were harmed by enjoining the county's bail

system because it would undermine the county's criminal justice system and endanger public safety. *Id.* at 228.

The government will not be irreparably harmed without a stay. The government's interest in prosecuting Burger can be satisfied through the normal appellate process. During that process, the government will be able to continue to monitor Burger's online activity. Att. A. Should the government win on appeal, then the district court's order dismissing the superseding indictment will be overturned, and the prosecution of Burger will continue.

3. Burger, on the other hand, will be substantially injured by a stay. As a result of the district court's dismissal of the superseding indictment against him, Burger was released from jail because he was no longer charged with an offense. *See* 18 U.S.C. § 3142(a). He is back living with family. Burger is a young man, 19 years old as of October 31, 2025, who is starting down the path to adulthood. He has learned that statements made in an online virtual world can have real world consequences. He has been in counseling. Should this Court grant the government's stay request, Burger will be arrested again. The government has made clear that they will argue for his detention pending appeal. To the criminally accused, the "prospective of additional time behind bars is not some theoretical or mathematical concept. Any amount of actual jail time is significant and has exceptionally severe consequences for the incarcerated

individual and for society which bears the direct and indirect costs of incarceration." *Rosales-Mireles v. United States*, 585 U.S. 129, 139 (2018) (cleaned up).

4. The government has not made a strong showing that it is likely to succeed on the merits. Because prosecution under 18 U.S.C. § 875(c) involves punishment of pure speech, First Amendment protections apply. *See Watts v. United States*, 394 U.S. 705, 707 (1989). "What is a threat must be distinguished from what is constitutionally protected speech." *Id*.

The First Amendment permits restrictions upon the content of speech only in a few limited areas. *Counterman v. Colorado*, 600 U.S. 66, 73 (2023). One of those areas is "true threats" of violence. *Id*. To be a "true threat," the statement, "when taken in context," must convey a real possibility that violence will follow. *Id*. at 74. This distinguishes a "true threat" from jests or hyperbole. *Id*. True threats are "serious expressions" conveying that the speaker means to "commit an act of unlawful violence to a particular group or individuals." *Id*. The government must prove a "true threat" to pierce the First Amendment's shield, regardless of the speaker's intent. *See Watts*, 394 U.S. at 708. "[A] communication is a threat under § 875(c) if 'in its context [it] would have a reasonable tendency to create apprehension that its originator will act according to its tenor.'" *United States v. Morales*, 272 F.3d 284, 287 (5th Cir. 2001) (quoting *United States v. Myers*, 104 F.3d 76, 79 (5th Cir. 1987)).

8

The "context" of the three "threatening communications" was Roblox—an internet role-playing game platform and creation tool. App. F. Roblox players, also known as Robloxians, interact with each other in the form of avatars. *Id.* The avatars might be Lego characters dressed as storm troopers, police officers, skateboarders, or sheikhs. *Id.* The avatars can chat and message each other as they play together. *Id.* A Roblox "experience" takes place in an interactive and immersive 3D environment. *Id.* The three communications took place in a Roblox experience called "Church." *Id.* In Church, the Robloxians would walk around and chat about religion. *Id.* The chats appeared in bubbles above the avatars' heads. *Id.* The chat bubbles lasted 10 seconds and then disappeared. *Id.* It was here that Burger, represented by a Lego fundamentalist Muslim, espoused extremism views. He expressed them in a game about arguing over religious matters.

Count One alleges that Burger's statement in Roblox to "deal a grievous wound upon the followers of the Cross" violated § 875(c). It is not a true threat. *See Bailey v. Iles*, 87 F.4th 275, 285 (5th Cir. 2023) (defendant's Facebook post during COVID-19 pandemic that sheriff's deputies had order to "shoot on sight" the "infected" was not a "true threat"). Although the statement expresses unfocused enmity against Christians as a whole, it lacks specificity as to place, time, or method of the purported threat, and fails to identify a particular person or group of "followers of the Cross" that it targets. *See id.* (post did not threaten specific harm at

specific location). In context—a statement made by an avatar in the Roblox Church—this is protected speech under the First Amendment. "As a general matter, the First Amendment means that government has no power to restrict expression because of its message, its ideas, its subject matter, or its content." *Ashcroft v. American Civil Liberties Union*, 535 U.S. 564, 573 (2002) (cleaned up).

Count Two alleges that Burger's statement in Roblox—"I've come to conclude it will befall the 12 of Shawwal aa/And it will be a music festival/Attracting bounties of Christians s/In'shaa'allah we will attain martyrdom/And deal a grievous wound upon the followers of the Cross/Pray for me and enjoin yourself to martyrdom"—violates § 875(c). That is not a true threat. The statement was made by an avatar in the Roblox Church experience and captured on a keystroke logger. App. F. What other Robloxians were in the game, what statements they made, and what their reactions were is not known. App. F. The statement lacks the context to have "a reasonable tendency to create apprehension that its originator will act according to its tenor." *Morales*, 272 F.3d at 287. It fails to provide details from which one may conclude there exists "a real possibility that violence will follow." *Counterman*, 600 U.S. at 73. The statement is not a true threat; it is constitutionally protected speech.

Count Three alleges that Burger's statement in Roblox—"I have guns. In [ ] case the authorities want to arrest me … I am ready To sacrifice my life for my Rabb … Detonate what I've prepared Of munitions And use

my firearms To take many with me. Yes wish me luck On the path of martyrdom In'shaa'allah"— violates § 875(c). It is not a true threat. It was made on Roblox in the Church experience. The speech was just hyperbole. It was also conditional. The "expressly conditional nature of the statement" made it highly unlikely that a listener would perceive violent action to be imminent. *See Watts*, 394 U.S. at 708. The statement depended on the avatar's arrest, which in turn depended upon the avatar being real, with real guns and munitions, in the real world. But this was never true.

The government also argues that Burger engaged in other bad acts that show he intended to make an online threat. But Burger's curiosity about Muslim extremists and an adolescent attraction to the idea of martyrdom do not change the context of the three indicted statements. The statements were made by virtual characters in conversations with other virtual characters playing an online game in a virtual space. The statements did not target any identifiable living victim or location. No victim experienced fear. No victim sought or needed protection. That is because no threat was real. The First Amendment protects against this prosecution.

# III

## Conclusion

For these reasons, Burger requests that this Court deny the Government's opposed motion to stay the district court's orders dismissing the superseding indictment and releasing him from custody.

Respectfully submitted.

MAUREEN SCOTT FRANCO
Federal Public Defender

s/ Judy Fulmer Madewell
JUDY FULMER MADEWELL
Assistant Federal Public Defender
Western District of Texas
300 Convent Street, Suite 2300
San Antonio, Texas 78205
Tel.: (210) 472-6700
Fax: (210) 472-4454

*Attorney for Defendant-Appellant*

## Certificate of Compliance with Type-Volume Limit

1. This document complies with the word limit of Fed. R. App. P. 27(d)(2)(A) because, excluding the parts of the document exempted by Fed. R. App. P. 32(f), this document contains 2,570 words.

2. This document complies with the typeface requirements of Fed. R. App. P. 32(a)(5) and the type-style requirements of Fed. R. App. P. 32(a)(6) because this document has been prepared in a proportionally spaced typeface using Microsoft Word for Office 365 in 14-point Century Schoolbook.

s/ Judy Fulmer Madewell
JUDY FULMER MADEWELL
*Attorney for Defendant-Appellant*
Dated: December 1, 2025