# No. 25-50976

IN THE UNITED STATES COURT OF APPEALS
FOR THE FIFTH CIRCUIT

**United States of America**,
Plaintiff-Appellant,

v.

**James Wesley Burger**,
Defendant-Appellee.

On Appeal from the United States District Court
for the Western District of Texas
Austin Division, No. 1:25-CR-332

**Reply in Support of Emergency Motion to Stay Orders
Dismissing Indictment and Releasing Defendant**

The government has sought emergency intervention because this case is extraordinary. Without reasoned explanation, the district court dismissed an indictment one week before trial. And without addressing any of the dangers found by a magistrate judge and amply supported by the evidence, the district court released—wholly unsupervised—a defendant who admits an "adolescent attraction to the idea of martyrdom," Resp. 11, and who threatened to "attain" that martyrdom by "deal[ing] a grievous wound" at a "music festival [a]ttracting bounties of Christians," Att. D at 11. In these extraordinary circumstances, this Court should stay the district court's dismissal and release orders while this appeal unfolds. Nothing in the defendant's response supports acting otherwise.

### I. The government is likely to succeed on the merits in showing that the district court should not have dismissed the indictment pretrial.

Defendant James Wesley Burger disputes whether the limited pretrial record shows that his statements were true threats. Resp. 8-11. But he fails to rebut the government's showing that a jury—not a district judge acting under Federal Rule of Criminal Procedure 12—must make the factual findings pertinent to whether his statements are true threats. *See* Mot. 12-13.[1] Rule 12 permits dismissal based on "a defect in the indictment," Fed. R. Crim. P. 12(b)(3), not a district judge's intuition about how the trial evidence might eventually stack up, *see United States v. Rafoi*, 60 F.4th 982, 984 (5th Cir. 2023); *accord United States v. Rodríguez-Rivera*, 918 F.3d 32, 35 (1st Cir. 2019); *United States v. Wedd*, 993 F.3d 104, 121 (2d Cir. 2021); *United States v. Sholley-Gonzalez*, 996 F.3d 887, 893 (8th Cir. 2021). Thus, pretrial dismissal under Rule 12 is permissible only "if trial of the facts surrounding the commission of the alleged offense would be of no assistance in determining the validity of the defense" raised by a motion to dismiss. *United States v. Covington*, 395 U.S. 57, 60 (1969). And it is trial jurors, not a district judge, who must determine whether a reasonable person would have interpreted a statement as a serious expression of intent to cause harm. *See United States v. Perez*, 43 F.4th 437, 443 (5th Cir. 2022); *United States v. Morales*, 272 F.3d 284, 288 (5th Cir. 2001).

---

[1] Burger complains that the government's motion was not filed by 2 p.m. on the day of filing. *See* Resp. 3 n.2. The government filed its motion the day after the district court ordered Burger released and hours after the district court issued its written order dismissing the indictment. Atts. N-O. A deputy clerk of this Court assured the government that it did not need to hold its emergency motion until 12:01 a.m. on Thanksgiving to ensure that it was "filed in the clerk's office by 2:00 p.m. on the day of filing."

Despite Burger's arguments to the contrary, Resp. 9, issuing a threatening statement from inside Roblox does not prevent that statement from being a true threat as a matter of law. That view ignores the reason Burger used Roblox to begin with: his belief that it was less likely to be monitored. Mot. 3. It also ignores the reality that criminals use Roblox too. *See* Osmond Chia, *Texas sues Roblox for 'putting paedophiles and profits' over safety*, BBC (Nov. 6, 2025), https://www.bbc.com/news/articles/cy0kd4kk0kqo (noting that at least three states so far have sued Roblox over potential harms to children); Queenie Wong, *'Real-life nightmare for kids.' 'Roblox' faces multiple lawsuits over child safety*, L.A. Times (Aug. 15, 2025), https://www.latimes.com/business/story/2025-08-15/roblox-faces-lawsuits-over-child-safety ("Sextortionists have used a variety of platforms, including social media gaming platforms such as 'Roblox,' . . . to threaten victims."); Natalie Neysa Alund & Benjamin Johnson, *'Burn the infant': Woman convinced child to try to kill 2-month-old on Roblox, police say*, USA Today (Oct. 23, 2204), https://www.usatoday.com/story/news/nation/2024/10/23/tara-sykes-roblox-convinced-child-kill-baby-pensacola/75804569007/ (reporting skull fracture suffered by infant dropped by child instructed to do so over Roblox).

Nor does it matter whether the intended victims of the attacks Burger threatened "experienced fear" or "sought . . . protection," Resp. 11. This Court rejected that argument in *Morales*, 272 F.3d 284. In *Morales*, the defendant argued that his statements could not be a true threat because they were "made to a random third party" with no connection to the school he threatened. *Id.* at

288. This Court explained that its precedent "does not allow for this distinction." *Id.*

Burger's count-by-count attack on the charges against him also fails to show how the district court could have determined as a matter of law that his charged statements were not true threats.

Burger argues that the statement charged in Count One was insufficiently specific, but that statement was more extensive than he admits, *see* Resp. 9-10. Count One alleges that Burger "made statements on Roblox . . . to attack a Christian concert, and the communication contained a threat to injure the person of another." Att. E (Superseding Indict.) at 1. This count is based on an episode during which Burger not only announced that he would "deal a grievous wound upon the followers of the Cross"—a "glorious wound," in his estimation—but said he would do so "[u]pon their capitol" in "April," the very month when a Christian music concert was scheduled in Austin. Att. D (Detention Hr'g Exs.) at 2-5. He also promised that "things are in motion." *Id.* at 6. A Roblox user who witnessed Burger's statements and was alarmed enough to report them is expected to testify at trial about the entire exchange, including Burger's references to a Christian music concert not captured in screen shots. Nothing in *Bailey v. Iles*, 87 F.4th 275 (5th Cir. 2023), establishes that this threat lacked enough specificity for an objectively reasonable person to interpret it as a serious expression of an intent to cause future harm. Rather, in *Bailey*, this Court addressed an "absurd post" that "call[ed] for rescue by Brad Pitt." *Id.* at 285.

Burger also fails to present the full context of the statement charged in Count Two: that he hoped to "attain martyrdom [a]nd deal a grievous wound upon the followers of the Cross" at "a music festival [a]ttracting bounties of Christians" on "the 12 of Shawwal [April]." Att. D at 11. Just because this threat was captured by a keystroke logger does not mean that the trial evidence will not establish that Burger had an audience, Resp. 10. Rather, the trial evidence will show that Burger, over a platform called Discord, told a user in Saudi Arabia that he had "come to a conclusion on the when and where." That Saudi Arabian user invited Burger to join him or her on Roblox, where Burger explained that he would strike a music festival on April 12.

Burger's effort to portray the statement charged in Count Three as "conditional" does not prevent it from being a true threat as a matter of law either, Resp. 10-11. Burger stated that if "the authorities" tried to arrest him, he would "[d]etonate what [he had] prepared [o]f munitions [a]nd use [his] firearms [t]o take many with me . . . [o]n the path of martyrdom." Att. Q (Gov't Trial Ex. 3) at 6-10; Att. E (Superseding Indict.) at 2-3. Burger's statement mirrors the statement found to be a true threat in *United States v. Elonis*, 841 F.3d 589, 594 (3d Cir. 2016), in which the court upheld a defendant's conviction under 18 U.S.C. § 875(c) for stating that "if worse comes to worse/I've got enough explosives to take care of the state police and Sheriff's Department." And Burger's threat was unlike the statement addressed by the Supreme Court in *Watts v. United States*, 394 U.S. 705, 708 (1969). In *Watts*, the Court did not hold that any conditional statement cannot be a true threat. *Id.* Instead, it

held—after the benefit of a full trial—that "[t]aken in context" (a political gathering during which the speaker promised that the condition would never occur) and given the "reaction of the listeners" (laughter), the charged statement was just an "offensive method of stating a political opposition to the President." *Id.* at 706-08.

Finally, the continuing absence of any reasoning from the district court does not undermine the government's showing of a strong likelihood of success. Burger's contrary position, Resp. 4, would allow a district judge to insulate an erroneous and damaging decision from this Court's immediate review by failing to explain it.[2]

## II. The government will be irreparably injured absent a stay.

The government has shown that Burger's indefinite release without court monitoring will irreparably injure its and the public's strong interest in ensuring a dangerous defendant subject to valid criminal charges is subject to court supervision. Mot. 14. An ongoing threat to public safety is an irreparable injury sufficient to justify a stay pending appeal. *See, e.g.*, *Woodfox v. Cain*, 789 F.3d 565, 572 (5th Cir. 2015) (recognizing irreparable injury from release of dangerous prisoner); *Duncan v. Bonta*, 83 F.4th 803, 806 (9th Cir. 2023) (en banc) (finding irreparable injury based on "significant threats to public safety"); *Maryland v. King*, 567 U.S. 1301, 1303 (2012) (Roberts, C.J., in chambers)

---

[2] The government has ordered expedited transcripts of the hearings on Burger's motion to dismiss but has not received them.

(recognizing that preventing a state from employing a duly enacted statute to prevent injuries caused by crimes is "irreparable harm").

Burger tries to minimize the danger he poses. Resp. 4-5. But his insistence that he was just "play[ing] the part . . . of a fundamentalist Muslim" and that "[n]othing happened in the real world," Resp. 4, ignores what the government's evidence showed happened in the real world, including Burger's research on music festivals near him and his efforts to obtain and train with firearms. No one was hurt while Burger prepared because law enforcement intervened before his planned attack. Mot. 3-6. And the suggestion that the government "will be able to continue to monitor Burger's online activity," Resp. 7, is untethered to reality. Burger's threats came to law enforcement's attention not because the government was "monitor[ing]" him, but because concerned individuals were alarmed by his statements and reported him. Mot. 2-5. Even assuming that Burger has "learned that statements made in an online virtual world can have real world consequences," Resp. 7, the lesson he has absorbed may not be that he should stop his activities, but that he should prepare more circumspectly.[3]

---

[3] The government expects the trial evidence to show that Burger made the charged threats *after* learning that his online statements caused real-world alarm. Around seven months before the charged threats, Burger's aunt and uncle confronted him about alarming statements they found on the keylogger, including:

> No I moved on to the real world and am [w]orking hard to . . . [k]ill lots of Western people in Texas
>
> . . .
>
> I think the Austin Police Department
> Would be a good target
> Cuz I hate

That the government has acknowledged the district court might release Burger *under supervision* rather than detain Burger, Mot. 15, does not mean that his release *without supervision* does not pose a threat. If this Court stays the dismissal order, the district court will have to consider whether detention is required or whether some set of conditions would reasonably ensure public safety. *See* 18 U.S.C. § 3142(c), (e). Release on those conditions is a far cry from the unconditional release the district court ordered.

### III. Any injury to Burger can be mitigated if his individual circumstances warrant.

That prospect of release under court supervision offers the possibility to mitigate any unnecessary injury to Burger from staying the district court's orders. Mot. 15. An arrest may be unnecessary if Burger voluntarily appears for a detention hearing, as would be in his interest if he seeks release on conditions. At that hearing, a judicial officer can consider alongside Burger's record of alarming conduct his claims that he has truly "returned to residing" with an "aunt" and is undergoing regular treatment with a mental-health professional,

---

> The police so much
> I hate all constitutions and government
> Outside of the Sharia
> And all laws outside of Sharia
>  . . .
> But yah I would
> Definitely kill a lot of cops someday
> I have like a handgun and a couple rifles and a shotgun at my house
> And I'm gonna buy an AR off someone I know lolJit

8

Resp. 5, 7. *See* § 3142. But the district court's refusal to consider that measured course should not rule the day.

## Conclusion

This Court should stay the district court's dismissal and release orders pending resolution of this appeal.

Respectfully submitted,

Justin R. Simmons
United States Attorney

By: */s/ Zachary C. Richter*
Zachary C. Richter
Assistant United States Attorney
903 San Jacinto, Suite 334
Austin, Texas 78701
(512) 916-5858
Zachary.C.Richter@usdoj.gov

**Certificate of Service**

    I certify that on December 2, 2025, I filed this motion through this Court's electronic case-filing system, which will serve it on all registered counsel, and sent paper copies to registered counsel by U.S. Mail.

                                      */s/ Zachary C. Richter*
                                      Zachary C. Richter
                                      Assistant United States Attorney

                            \*     \*     \*

**Certificate of Compliance with Federal Rule of Appellate Procedure 27**

    I certify that

    (1) this document complies with the word limit of Federal Rule of Appellate Procedure 27(d)(2)(C) because, excluding the parts of the document exempted by Federal Rule of Appellate Procedure 32(f), this document contains 2,088 words; and

    (2) this document complies with the typeface requirements of Federal Rule of Appellate Procedure 32(a)(5) and the type-style requirements of Federal Rule of Appellate Procedure 32(a)(6) because it was prepared in a proportionally spaced typeface using Microsoft Office Word 2016 in Calisto MT font, size 14.

                                      */s/ Zachary C. Richter*
                                    Zachary C. Richter
                                    Assistant United States Attorney

                                    Dated: December 2, 2025