UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF TEXAS
AUSTIN DIVISION

| | | |
|---|---|---|
| UNITED STATES OF AMERICA | § | |
| | § | |
| | § | |
| v. | § | No. 1:25-CR-00332-ADA |
| | § | |
| | § | |
| JAMES WESLEY BURGER | § | |

**ORDER DISMISSING INDICTMENT**

On November 26, 2025, this Court granted Defendant's Motion to Dismiss (Dkt. 53) and dismissed the Superseding Indictment (Dkt. 40). After the Government filed a notice of appeal, the Fifth Circuit entered a temporary administrative stay of ten days requesting that this Court "provide its reasons for [1] dismissing the superseding indictment against James Wesley Burger and [2] ordering him released from custody," citing Federal Rule of Criminal Procedure 12(d).[1] Dkt. 80. The opinion below states the Court's "essential findings" pursuant to Fed. R. Crim. P. 12(d).[2]

**I.      BACKGROUND**

A three-count indictment alleged that Defendant James Wesley Burger violated 18 U.S.C. § 875(c) by making unlawful interstate-threatening communications ("the threatening communications") on Roblox—an online video game platform that allows players to create their own "experiences" or "games" on public or personal servers and to disseminate those games to other players. The threatening communications were made in a popular Roblox experience called

---

[1] The Fifth Circuit also requested transcripts of Mr. Burger's detention and motions hearings. The Court has filed the requested transcripts. *See* Dkt Nos. 85, 86, and 90.
[2] The Court's opinion in no way condones Mr. Burger's statements or diminishes the important work the FBI and prosecutor's office performed in this case.

1

"Church," which had logged 20 million visits at the time it was taken down after Mr. Burger's arrest. Dkt. 53 at 3. To play Roblox, players would create an avatar, choosing its physical appearance and clothing. Upon entering "Church," the avatar would find a space with rows of pews and a pulpit. The Church experience provided a venue where the avatars could exist, walk around, observe, and if they chose, interact. Some players engaged in role-play, including arguments and "trolling," intentionally engaging in distasteful debate and attempting to be edgy and anger others. *Id.* Dkt 59. ¶ 5. Some Roblox players dressed their avatars as "Middle East terrorists" and discussed "violent Jihadism." Dkt. 85 at 18.

In the context of Roblox's Church environment, Mr. Burger made multiple disturbing statements, including: (Count 1) threats to "deal a grievous wound upon the followers of the Cross;" (Count 2) "I've come to conclude it will be the 12 of Shawwal aa/And it will be a music festival/Attracting bounties of Christians/In'shaa'allah we will attain martyrdom/And deal a grievous wound upon followers of the cross/Pray for me and enjoin yourself to martyrdom;" and (Count 3) "I have guns In[]case the authorities want to arrest me … I am ready to sacrifice my life for my Rabb….[The Defendant would] Detonate what I've prepared Of munitions And use my firearms To take many with me," and "Yes wish me luck on the path of martyrdom In'shaa'allah." Dkt. 40.

Defendant moved to dismiss the indictment under Fed. R. Crim. P. 12, claiming "the First Amendment shields Mr. Burger from prosecution for [his] speech." Dkt. 53 at 1. The Government countered that First Amendment protections do not apply to true threats where the speaker "means to communicate a serious expression of an intent to commit an act of unlawful

2

violence to a particular individual or group of individuals." Dkt. 59 at 7 (quoting *Virginia v. Black*, 538 U.S. 343, 359 (2003)).³

## II.     LEGAL STANDARD

Federal Rule of Criminal Procedure 12 authorizes the court to dismiss an indictment when a pretrial motion presents a question of law in the presence of undisputed facts. *United States v. Flores*, 404 F.3d 320, 325 (5th Cir. 2005). Under § 875(c), the court must dismiss an indictment if no reasonable juror could find that the communication at issue was a "true threat." *United States v. Daughenbaugh*, 49 F.3d 171, 173 (5th Cir. 1995). Thus, the court performs a gatekeeping function in deciding, as a matter of law, whether the First Amendment protects the defendant's speech. *See United States v. O'Dwyer*, 443 Fed. App'x 18, 20 (5th Cir. 2011) (per curiam).

The required *mens rea* is recklessness as to the threatening character of the statements. *Counterman v. Colorado*, 600 U.S. 66, 73 (2023). A person acts recklessly when he "consciously disregard[s] a substantial [and unjustifiable] risk that the conduct will cause harm to another." *Id.* at 79 (citing Voisine v. United States, 579 U.S. 686, 691 (2016) (internal quotation marks omitted)). In the "true threat" context, the speaker must have been aware "that others could regard his statements as" threatening violence and "deliver[ed] them anyway." *Id.* (citing Elonis, 575 U.S. at 746, 135 S.Ct. 2001 (ALITO, J., concurring in part and dissenting in part)). *See also* Dkt. 59 at 9-10 (citing heightened burden under *Counterman v. Colorado,* 600 U.S. at 73 600 U.S. 66, 73 (2023), to prove "the defendant had some understanding of his statement's character.") *Counterman*, 600 U.S. at 73.

---

³ Mr. Burger also moved under the Fifth Amendment, claiming the statute he is charged with violating (Title 18, United States Code, Section 875(c)) is void for vagueness. The Court did not reach this issue as it found that Mr. Burger's speech was protected as a matter of law under the First Amendment.

3

### III. ANALYSIS

Below, the Court outlines the facts relevant to its analysis and explains the basis for its conclusion that Defendant's speech as alleged in the superseding indictment is protected by the First Amendment.

#### A. The Motion to Dismiss Presents Undisputed Facts

For purposes of this Motion, the Defendant does not dispute the facts contained in the superseding indictment. *See, e.g.*, Dkt. 53 at 14; *see also* 3–13 (discussing facts of the case); Dkt. 59 at 3-7 (same). Thus, for the purposes of this motion, the Court accepts the Government's versions of the facts as true. The Court does not, however, accept the legal conclusions contained in the Government's statements. For example, the Court disagrees with the Government's legal conclusion that "[Defendant's] statements were true threats." Dkt. 59 at 4. Further, the Court rejects the Government's position that evidence it collected *after* the threatening communications were made, which evidence was not known to any recipient of the allegedly threatening communications, is relevant in determining whether a reasonable jury could find Mr. Burger's statements to be "true threats."

#### B. Evidence Not Known to Any Recipient of Mr. Burger's Statements Cannot Support a Conviction

Mr. Burger was charged with transmitting "in interstate … commerce any communication containing … any threat to injure the person of another." 18 U.S.C. § 875(c). A communication is a "threat" if "in its context [it] would have a reasonable tendency to create apprehension that its originator will act according to its tenor." *United States v. Morales*, 272 F.3d 284, 287 (5th Cir. 2001). The focus is on whether the "recipient of the in-context threat reasonably feared [the threat] would be carried out." *Id*. (quoting *United States v. Myers*, 104 F.3d 76, 79 (5th Cir. 1997)).

4

To make this determination, logic dictates that the evidence be limited to facts known to the recipient, whose apprehension or fear must be reasonable based on the context in which the threatening communications are made. In contrast here, the Government seeks to demonstrate the threatening nature of Defendant's communications by relying on out-of-context, extrinsic evidence unknown to any recipient of the alleged threatening communications (i.e., those who saw the communications charged in the superseding indictment). Specifically, the Government points to Mr. Burger's computer search history and later-discovered communications and sharing of bomb-making instructions and photographs with another individual. Dkt. 59 at 4–7. There is no claim that a recipient of the threatened communications was made privy to that evidence. Accordingly, the evidence is extrinsic, out-of-context, and irrelevant to the jury's determination whether Mr. Burger's communication was a true threat.[4] As such, the only facts that could possibly support a conviction here are presented in paragraphs 5 through 8 of the Government's response, Dkt. 59.

### C. The Undisputed Facts Show That Mr. Burger's Speech is Protected

Each count of the superseding indictment charges Mr. Burger with making threatening communications in the context of Roblox's Church, where individuals appear as avatars and intentionally engage in distasteful debate. Dkt. 59 ¶ 5. Defendant made the statements at issue while playing an *online video game*, speaking as a *character*, among other *players* who were similarly acting as *characters* in a virtual Church. The Government would need to convince the jury that Mr. Burger, while typing *as his character*, making statements to the other *online characters*, in a fictional game understood as such by all participants, created a substantial risk

---

[4] As the Government admitted, none of the Government's evidence is sufficient evidence of any other crime, such as attempted terrorism. Dkt. 86 at 18-19. Thus, the Government wishes to take otherwise non-criminal behavior and bootstrap it to obtain a conviction that requires a "true threat."

5

his communications would be understood as a threat by other Roblox players. There is no showing that Mr. Burger recklessly disregarded the risk that other online characters, *also playing a game*, would see his fictional character's statements and understand them to be a true threat.

The jury would be asked to find, beyond a reasonable doubt, that Mr. Burger's statements were a true threat made in a public video game where people role-play. Without more context, such as Mr. Burger's search history, no reasonable juror could find that these statements were true threats outside the purview of the First Amendment. This Court follows *Counterman*'s guidance in finding that the true-threat standard requires a subjective showing, and this case fails to meet it.

**i. No reasonable juror could find Count One is a true threat beyond a reasonable doubt based on the contents and context of the statement.**

Count 1 charges Defendant Burger for stating, "deal a grievous wound upon the followers of the Cross." Dkt. 40. Again, this allegedly threatening statement was made in the context of a role-playing video game. Specifically, it was made in a world designed for religious debate, where Roblox players would dress their avatars as different religious figures included Islamic terrorists. Dkt. 85 at 18.

Though Burger's statement is troubling, he did not threaten harm to any particular individual. *See U.S. v.* O'Dwyer, 443 Fed. Appx. 18, 20 (5th Cir. 2011) (holding that O'Dwyer's statements were not true threats, in part, because they "did not threaten bodily harm to any particular individual.") The communication merely describes, "followers of the Cross." Burger could have been referring to followers of the Cross within the Roblox "Church" experience. Even if he was referring to Christians in the real world, the statement did not threaten harm to a particularized or identifiable group. Additionally, the statement did not state a specific means, time, or place of attack. Due to the statement's lack of specificity and the role-playing context in

6

which it was made, the Court finds that a reasonable juror could not find the communication in Count 1 a "true threat."

> ii. **No reasonable juror could find Count Two is a true threat beyond a reasonable doubt based on the contents and context of the statement.**

Count 2 charges Defendant Burger for stating on Roblox, "I've come to conclude it will befall the 12 of Shawwal aa/And it will be a music festival/Attracting bounties of Christians s/In'shaa'allah we willl attain martyrdom /And deal a grevious wound upon the followers of the Cross /Pray for me and enjoin yourself to martyrdom." Dkt. 40.

Again, Defendant's charged statement was made in the Roblox "Church" experience. While Count 2 involves the highest level of particularity by describing a "music festival" on the "12 of Shawwal," it does not threaten harm against a particularized group or clarify the location of the music festival. Due to the statement's lack of specificity and the role-playing context in which it was made, the Court finds that a reasonable juror could not find the communication in Count 2 a "true threat."

> iii. **No reasonable juror could find Count Three is a true threat beyond a reasonable doubt based on the contents and context of the statement.**

Count 3 charges Defendant Burger for stating on Roblox, "I have guns In[ ]case the authorities want to arrest me . . .I am ready To sacrifice my life for my Rabb….[The Defendant would] "Detonate what I've prepared Of munitions And use my firearms To take many with me," and "Yes wish me luck On the path of martyrdom In'shaa'allah."

As is true for the first two counts, Defendant's statements were made in the context of the Roblox "Church" experience and lack specificity. Though disturbing, Defendant does not identify any targeted group or location within the allegedly threatening statement. Due to the

7

statement's lack of specificity and the role-playing context in which it was made, the Court finds that a reasonable juror could not find the communication in Count 3 a "true threat."

## IV. CONCLUSION

For the reasons stated above, no reasonable jury could conclude that the charged statements were true threats. Thus, Mr. Burger's statements, as abhorrent as they are, are protected by the First Amendment. Accordingly, the Court grants Mr. Burger's Motion to Dismiss.

SIGNED this 10th day of December, 2025.

_____
ALAN D ALBRIGHT
UNITED STATES DISTRICT JUDGE

8