

United States Department of Justice

United States Attorney
Western District of Texas

_____

December 15, 2025

**<u>By Electronic Case Filing</u>**
Mr. Lyle W. Cayce, Clerk
United States Court of Appeals for the Fifth Circuit
600 South Maestri Place
New Orleans, Louisiana 70130

    Re: *United States v. Burger*, No. 25-50976
        Government's Supplemental Letter Brief

Dear Mr. Cayce:

    The district court's written explanation for its dismissal order confirms that it misunderstood its role under Federal Rule of Criminal Procedure 12 and this Court's precedent on true threats when it dismissed the indictment. The district court improperly resolved disputed facts—most notably, by deciding that Burger was just "playing a game" when he threatened to attack a Christian music concert on a specific date. Op. 5-6, ECF No. 51-7. And it adopted requirements for true threats that conflict with this Court's binding precedent. *Id.* at 6-8. Those errors mean that this Court is likely to reverse the district court's dismissal of the indictment and its resulting release of Burger. Because of that strong likelihood of reversal, and because the balance of equities still weighs heavily in favor of a stay, this Court should stay those decisions during this appeal.

**I.    The government has shown a strong likelihood of success on the merits because the district court misunderstood Rule 12 and this Court's precedent on true threats.**

    The district court misapplied Rule 12 in at least two ways. First, it improperly resolved disputed facts. Second, it improperly resolved those facts on an incomplete pretrial record. The district court also misapplied this Court's precedent on true threats.

Mr. Cayce
Page 2

### A.  The district court improperly resolved disputed facts.

Whether a district court can dismiss an indictment under Rule 12 "is by-and-large contingent upon whether the infirmity in the prosecution is essentially one of law or involves determinations of fact." *United States v. Flores*, 404 F.3d 320, 324 (5th Cir. 2005) (cleaned up), *abrogated on other grounds by Abramski v. United States*, 573 U.S. 169, 191 (2014). "If a question of law is involved, then consideration of the motion is generally proper." *Id.* And a court "may make preliminary findings of fact necessary to decide the questions of law presented by pre-trial motions so long as the court's findings on the motion do not invade the province of the ultimate finder of fact." *Id.* at 324 n.6. But a district court can dismiss under Rule 12 only "if trial of the facts surrounding the commission of the alleged offense would be of no assistance in determining the validity of the defense" raised by that motion. *United States v. Covington*, 395 U.S. 57, 60 (1969). "If contested facts surrounding the commission of the offense would be of *any* assistance in determining the validity of the motion, Rule 12 doesn't authorize its disposition before trial." *United States v. Pope*, 613 F.3d 1255, 1257 (10th Cir. 2010) (Gorsuch, J.)

The district court recognized that it had to limit itself to "undisputed facts," Op. 3, and purported to "accept[] the Government's versions of the facts as true," *id.* at 4, but did neither. Instead, the district court made its own findings on disputed facts.

First, the district court resolved disputed facts bearing on whether Burger's statements were true threats—that is, whether "an objectively reasonable person would interpret the speech as a serious expression of an intent to cause a present or future harm," *United States v. Jubert*, 139 F.4th 484, 490 (5th Cir. 2025). This Court has held repeatedly that a jury should decide this question. *See* U.S. Stay Mot. 13, ECF No. 12-1[1]; *United States v. Coalwell*, No. 20-50869, 2021 WL 4768286, at *1 (5th Cir. Oct. 12, 2021); *United States v. Daughenbaugh*, 49 F.3d 171, 173 (5th Cir. 1995). But the district court did so itself. It discounted Burger's threats because he issued them in Roblox, which the district court found to be "a fictional game understood as such by all participants." Op. 5. And in dismissing each count of the indictment, the district court reiterated its disputed view that Burger made the threats in a "role-playing context." *Id.* at 6-8.

---

[1] All references to ECF numbers are to this Court's docket, which includes motion attachments incorporating key filings in the district court.

Mr. Cayce
Page 3

Those contested findings ignore disputed evidence about how Burger and other participants understood Roblox. Even as the district court purported to focus only on evidence of how the recipients of Burger's threats reacted to them, it ignored those reactions. Op. 5-6. It failed to acknowledge that experienced Roblox users who saw Burger's threats took them seriously and contacted the FBI. U.S. Stay Mot. 4. These fearful reactions are "probative" of whether an objectively reasonable person would interpret a statement as a threat. *Coalwell*, 2021 WL 4768286, at *1; *Daughenbaugh*, 49 F.3d at 174. The district court also ignored evidence that Burger used Roblox to avoid law-enforcement detection, U.S. Stay Mot. 3, and that he corresponded with an internet user in Russia who suggested that using Roblox would help him avoid the attention of authorities, Mot. Hr'g Tr. at 35:5-12, ECF No. 51-7.[2]

The district court also made its own findings on disputed evidence about whether Burger had the requisite mental state—that is, whether he was subjectively aware of the threatening nature of his statements, *Counterman v. Colorado*, 600 U.S. 66, 79 (2023); *Jubert*, 139 F.4th at 491. Determining a defendant's mental state when issuing a threat is "up to the jury." *United States v. Morales*, 272 F.3d 284, 288 (5th Cir. 2001). When the recipients of a defendant's statements tell him that those statements cause real-world alarm, but the defendant persists in issuing similar statements, a jury can infer that the defendant knowingly or recklessly disregarded the threatening nature of his statements. *See United States v. Elonis*, 841 F.3d 589, 599-601 (3d Cir. 2016). For example, in *Elonis*, the court held that no rational juror could have found that the defendant was unaware of the threatening nature of his online posts when the recipients of similar posts had told him that the earlier posts alarmed them. *Id.* A similar scenario played out here: As the government's trial evidence will show, about seven months before the threats charged in the indictment, Burger's aunt and uncle confronted him about statements they caught him making that promoted Islamist-inspired attacks on law enforcement.[3] Yet Burger kept issuing similar statements, including the threats charged here. U.S. Stay Mot. 3-5.

---

[2] This transcript is Attachment S to the government's motion to vacate the second release order, ECF No. 51.

[3] One of those statements was:

> No I moved on to the real world and am [w]orking hard to . . . [k]ill lots of Western people in Texas
>
> . . .
> I think the Austin Police Department
> Would be a good target
> Cuz I hate

Mr. Cayce
Page 4

Evidence of Burger's conduct outside Roblox—evidence the district court improperly and pre-emptively excluded as "out-of-context" and "irrelevant," Op. 5—would further support a jury's finding that he issued the threats knowingly or recklessly. A jury can consider evidence of conduct surrounding a threat to assess the defendant's mental state in making that threat. *See, e.g.*, *United States v. Miah*, 120 F.4th 99, 111-12 (3d Cir. 2024) (affirming admission of evidence that a defendant was familiar with firearms, idolized terrorists, and disliked law enforcement to show his mental state when issuing threats); *United States v. Viefhaus*, 168 F.3d 392, 398 (10th Cir. 1999) ("The only way a jury could properly assess the sincerity of [the defendant]'s beliefs . . . was to examine the circumstances in which the comments were made."); *United States v. Cox*, 957 F.2d 264, 267 (6th Cir. 1992) (explaining that "the circumstances surrounding the making" of threatening calls were "probative of defendant's state of mind and tend[ed] to counter his allegation of benign purpose"). Burger's history of discussing violent attacks across various platforms belies the district court's notion that Burger saw himself as just playing a game in Roblox. *See* U.S. Stay Mot. 3-5; U.S. Mot. to Vacate Release Order 6, 13-14. And Burger's preparation for an attack—by searching for festivals, visiting the website of the company promoting a Christian concert on the day he identified for an attack, and training with a rifle—all undermine the district court's benign interpretation of his conduct. U.S. Stay Mot. 3-5; U.S. Mot. to Vacate Release Order 6, 13-14. The district court could allow Burger to argue at trial that he lacked the necessary mental state. But it could not decide that question for itself pretrial.

**B.   The district court improperly relied on an incomplete pretrial record.**

Not only did the district court resolve disputed factual questions, but it did so on an incomplete record. The district court said that "the only facts that could possibly support a conviction here" came from four paragraphs in the government's response to the motion to dismiss. Op. 5. But the government never represented that these were the only facts that it would present at trial,

---

> The police so much
> I hate all constitutions and government
> Outside of the Sharia
> And all laws outside of Sharia
>  . . .
> But yah I would
> Definitely kill a lot of cops someday
> I have like a handgun and a couple rifles and a shotgun at my house
> And I'm gonna buy an AR off someone I know lolJit

Mr. Cayce
Page 5

and they are not. *See* U.S. Stay Mot. 2-6; U.S. Mot. to Vacate Release Order 13-14.

The district court erred in assuming otherwise. *See United States v. Wedd*, 993 F.3d 104, 121 (2d Cir. 2021) (affirming a district court's refusal to dismiss under Rule 12 where the government never purported to make a full proffer of its trial evidence). "No circuit" allows dismissal under Rule 12 on an "incomplete or disputed factual record." *United States v. Rodríguez-Rivera*, 918 F.3d 32, 35 (1st Cir. 2019). Nor did Rule 12 empower the district court to require the government to preview its entire trial presentation. *See United States v. Rafoi*, 60 F.4th 982, 994 (5th Cir. 2023) (explaining that a defendant may not challenge under Rule 12 a facially sufficient indictment as not supported by adequate evidence); *accord Rodríguez-Rivera*, 918 F.3d at 35; *Wedd*, 993 F.3d at 121. That sort of requirement "could effectively force a summary judgment-like motion on the government." *Wedd*, 993 F.3d at 121. And "federal criminal procedure does not provide for a pre-trial determination of sufficiency of the evidence." *United States v. Sholley-Gonzalez*, 996 F.3d 887, 893 (8th Cir. 2021) (cleaned up); *accord Pope*, 613 F.3d at 1259-60 (Gorsuch, J.) (explaining reasons for this approach).

The district court's misunderstanding of this aspect of Rule 12 is evident from its comments that it was "seeing its role as a gatekeeper" akin to the role it might play in civil litigation like "patent cases." Status Conf. Hr'g Tr. 6:2-23, ECF No. 51-7.[4] "Rule 12 is not a parallel to civil summary judgment procedures." *Pope*, 613 F.3d at 61. Instead, Rule 12 "helps draw and police this distinction between civil and criminal procedure." *Id.* at 1260. In failing to recognize this distinction, the district court erred.

The cases the district court relied on, Op. 3, are not to the contrary. In *Flores*, the Rule 12 motion hinged on a purely legal question about the interaction between two statutes: whether an alien who entered the country illegally and later qualified for temporary protected status, 8 U.S.C. § 1254a, was "illegally or unlawfully in the United States," 18 U.S.C. § 922(g)(5)(A). *Flores*, 404 F.3d at 324 & n.5, 326. In *Daughenbaugh*, this Court did not address dismissal under Rule 12 at all, because there the issue was the sufficiency of the trial evidence. 49 F.3d at 173. And the unpublished decision *United States v. O'Dwyer*, 443 F. App'x 18 (5th Cir. 2011), involved a much different statement: one this Court characterized as "vague speculation about becoming homicidal," *Jubert*, 139

---

[4] This transcript is Attachment T to the government's motion to vacate the second release order, ECF No. 51-1.

Mr. Cayce
Page 6

F.4th at 491. Burger's statements were not vague speculation; he threatened to attack Christians attending a concert on a specific date. U.S. Stay Mot. 4-5.

### C. The district court misapplied the law of true threats.

Not only did the district court improperly resolve disputed facts on an incomplete pretrial record, but its analysis of each count reveals that it misunderstood what is necessary to make a statement a true threat.

In analyzing the threats charged in Counts One and Two, for example, the district court concluded that the statement did "not threaten harm" to a "particularized group." Op. 6-7. But a threat need not "name 'a particular individual or group of individuals'" because none of the factors that renders threats unworthy of First Amendment protection "turns on whether a speaker names individuals or merely places them where those individuals are likely to be." *United States v. Perez*, 43 F.4th 437, 443 (5th Cir. 2022) (quoting *Virginia v. Black*, 538 U.S. 343, 359 (2003)). Count One identified a threat to attack Christians at a Christian music concert in a "capit[a]l" in April. U.S. Stay Mot. 4; Superseding Indict. 1, ECF No. 51-4.[5] Count Two identified an even more specific threat—to attack a "music festival . . . [a]ttracting bounties of Christians" on the specific day a Christian concert was planned for the Texas state capital. U.S. Stay Mot. 5; Sup. Indict. at 2. Those threats placed a group of individuals where they were likely to be.

The district court also erred in suggesting that the threat in Count One was not a true threat because Burger "did not state a specific means" or "time . . . of attack." Op. 6. Burger specified the means: He referred his audience to a different online-communication platform to see photographs of the guns he planned to use. U.S. Stay Mot. 4-5. That threat to use specific firearms was even more exact than the statement a jury reasonably found to be a true threat in *Morales*, 272 F.3d at 286, 288 ("[I]F NE ONE STANDS N MY WAY WILL SHOT"). And Burger did not need to "state a specific . . . time . . . of attack" to make these statements a true threat. In *Morales*, the defendant did not explain when he would attack beyond the valediction "SEE U IN A COUPLE OF MONTHS." 272 F.3d at 286. Yet this Court still held that "a reasonable juror could find all the facts necessary to make Morales's communication a 'true threat.'" *Id.* at 288.

In analyzing the threat charged in Count Three, the district court made similar mistakes. Count Three focused on a threat against law enforcement—

---

[5] The superseding indictment is Attachment E to the government's emergency motions to stay and to vacate the release order.

Mr. Cayce
Page 7

the "authorities" that might try "to arrest" him. U.S. Stay Mot. 3; Superseding Ind. at 3. That was the "targeted group" the district court said was missing, Op. 7. This statement was still a true threat even if it was conditioned on authorities trying to arrest Burger. *See United States v. Myers*, 104 F.3d 76, 78-79 (5th Cir. 1997). For example, in *Myers*, the defendant issued a conditional threat: He told a congressional aide he was "talking about body bags" *if* nothing was done to help his sick wife. *Id.* at 78. This Court held the evidence "more than sufficient" to show that these statements met the test for a true threat. *Id.* at 79. The jury in Burger's case should also have been allowed to find that Burger's statements were true threats.[6]

## II. The balance of equities favors a stay.

Not only has the government shown a strong likelihood of success on the merits, but the remaining equities courts consider when addressing a stay motion, *see Nken v. Holder*, 556 U.S. 418, 434 (2009), still on balance weigh strongly in favor of a stay.

Burger's unconditional and indefinite release still irreparably injures the governmental and public interests in ensuring a dangerous defendant subject to valid criminal charges is subject to court supervision. U.S. Stay Mot. 14; U.S. Reply 6-8. The district court's decision to issue a second release order—despite this Court's administrative stay—does not moot the question of release. The government has moved on an emergency basis to vacate that second release order, and that emergency motion underscores the danger posed by Burger's release. U.S. Mot. to Vacate Release Order 3-7, 12-14. Burger notes that the government cannot cite conduct by Burger since the district court released him. *See* Def. Ltr. 1, ECF No. 55. But that observation only highlights that the district court's decision to release him unsupervised has eliminated an important way to identify further troubling conduct: court supervision.

Because the likelihood-of-success and injury factors—the "most critical," *Nken*, 556 U.S. at 434—support a stay, and because the public interest also favors a stay, this Court should stay the district court's dismissal order and first release order. As discussed in the government's motion to vacate the district court's second release order, this Court should also vacate the district court's

---

[6] The district court has clarified that it did not rely on Burger's vagueness argument under the Fifth Amendment's Due Process Clause. Op. 3 n.3.

order releasing Burger on personal recognizance and direct that he be detained pending a reopened detention hearing. [7]

                                              Sincerely,

                                              */s/ Zachary C. Richter*
                                              Zachary C. Richter
                                              Assistant United States Attorney

copy (by ECF):    Carl Hennies, Attorney for Defendant-Appellee

---

[7] The government still favors expediting merits briefing, *see* U.S. Stay Mot. 15 n.4, but has postponed proposing a schedule until this Court rules on the stay motion and the clerk makes the record on appeal available.