## FEDERAL PUBLIC DEFENDER
WESTERN DISTRICT OF TEXAS

| | | |
|---|---|---|
| **MAUREEN SCOTT FRANCO**<br>FEDERAL PUBLIC DEFENDER<br><br>JUDY F. MADEWELL<br>FIRST ASSISTANT<br>―――――<br>CHRISTOPHER J. CARLIN \| *ALPINE*<br>HORATIO R. ALDREDGE \| *AUSTIN*<br>BIANCA ROCHA DEL RIO \| *DEL RIO*<br>REGINALDO TREJO, JR. \| *EL PASO*<br>EDGAR HOLGUIN \| *EL PASO*<br>JOHN J. VELASQUEZ \| *MIDLAND*<br>KRISTIN M. KIMMELMAN \| *SAN ANTONIO*<br>LEWIS B. GAINOR \| *WACO*<br>SUPERVISORY ASSISTANTS | 300 CONVENT STREET<br>SUITE 2300<br>SAN ANTONIO, TEXAS 78205-3744<br><br><br>December 30, 2025 | TELEPHONE<br>(210) 472-6700<br>TOLL FREE<br>(855) 867-3570<br>FACSIMILE<br>(210) 472-4454<br>―――――<br>ALPINE<br>AUSTIN<br>DEL RIO<br>EL PASO<br>MIDLAND<br>PECOS<br>WACO |

Mr. Lyle W. Cayce, Clerk of the Court
United States Court of Appeals for the Fifth Circuit
600 S. Maestri Place
New Orleans, Louisiana 70130

Re:   *United States v. Burger*, Nos. 25-50976 & 25-51021
       Burger's Response to the Government's Request for Interim Relief

Dear Mr. Cayce,

The government, in its own words, "has consistently sought emergency intervention resulting in Burger's detention *or carefully supervised and conditional release.*" Gov't Reply in Support of Emergency Mot. to Vacate (ECF No. 71) at 6 (emphasis added). The government has now received exactly what it has consistently sought. Yesterday, the district court ordered that Burger be released pending appeal and imposed strict conditions of release, including home detention, GPS monitoring, no access to firearms, and continuing to attend counseling. *See* Att. A.

Apparently unsatisfied, the government now asks this Court to vacate that order—without actually appealing the district court's order or citing any rule or statute authorizing that unprecedented relief. *See* ECF No. 95. This Court lacks jurisdiction to vacate the district court's order releasing Burger with conditions because the government has not appealed that order. In any event, the district court's order was entirely proper. And if for any reason the Court determines otherwise, it should grant the government's emergency motion to vacate the earlier order releasing Burger on personal recognizance and remand for further proceedings in the district court.

### A. This Court lacks jurisdiction to review the district court's order releasing Burger with strict conditions.

Although the government requests that this Court vacate the order issued yesterday releasing Burger with conditions, this Court lacks jurisdiction to review that order. "It is well settled that the requirement of a timely notice of appeal is mandatory and jurisdictional." *Griggs v. Provident Consumer Disc. Co.*, 459 U.S. 56, 61 (1982). A notice of appeal "must … designate the judgment—or the appealable order—from which the appeal is taken." Fed. R. App. P. 3(c)(1)(B). "Rule 3's dictates are jurisdictional in nature, and their satisfaction is a prerequisite to appellate review." *Smith v. Barry*, 502 U.S. 244, 248 (1992).

Because the government has not appealed the district court's order releasing Burger with conditions, this Court does not have jurisdiction to review that order. *See, e.g.*, *Fiess v. State Farm Lloyds*, 392 F.3d 802, 806–07 (5th Cir. 2004) (holding that Court lacked jurisdiction to review a district court order issued *after* party filed notice of appeal).

### B. The district court's order releasing Burger with strict conditions was entirely proper.

The government raises two objections to the district court's order releasing Burger with conditions. Neither has merit.

*First*, the government argues that the district court lacked jurisdiction. Not so. Under 18 U.S.C. § 3145(b), "[i]f a person is ordered detained by a magistrate judge … the person may file, with the court having original jurisdiction over the offense"—here, the district court—"a motion for revocation or amendment of the order." That is exactly the jurisdiction the district court exercised here.

Nothing about the government's appeal of the district court's earlier order releasing Burger on personal recognizance divests that authority, and the government cites no case remotely on point. Indeed, the cornerstone of the government's argument to vacate the earlier release order was that "Burger never moved for review under § 3145" and the "district court's release order shows no sign that it was 'reviewing' the magistrate judge's order." Gov't Reply in Support of Emergency Mot. to Vacate (ECF No. 71) at 5. So under the government's own theory, its appeal of the earlier order does not involve the district court's authority under § 3145. Here, by contrast, Burger specifically moved to revoke under § 3145(b), *see* Att. B at 1, and the district court granted that request, *see* Att. A.

At most, the government's earlier appeal places before this Court the issue—which is now moot—of whether Burger should be released *on personal recognizance*. That appeal does not raise—and this Court will not consider—whether release with strict conditions is proper, so the district court was not divested of jurisdiction to review the magistrate judge's detention order. After all, a notice of appeal only divests the district court of its control over "those aspects of the case involved in the appeal." *Griggs*, 459 U.S. at 58.

*Second*, the government argues that the district court's order was inconsistent with this Court's administrative stay. Wrong again. Although this Court's order said "that nothing prohibits the government, in its discretion, from detaining the defendant or from requesting that the district court impose conditions of release pursuant to 18 U.S.C. § 3143," ECF No. 81-1, nothing in the order suggested that the district court itself could not exercise its authority to impose conditions of release. The government's suggestion that it alone had the discretion to decide whether to release Burger on conditions or detain him is akin to leaving the fox in charge of the henhouse. Under the statutory scheme set out by Congress, that discretion belongs to a neutral "judicial officer," *see* 18 U.S.C. § 3143, subject to review by an Article III district court, *see id.* § 3145.

### C. In the alternative, the Court should vacate the district court's earlier order releasing Burger on personal recognizance and remand for further proceedings.

If the Court determines that it has jurisdiction and that the district court lacked jurisdiction to release Burger on strict conditions, it should grant the government's emergency motion to vacate the district court's earlier order releasing Burger on personal recognizance, *see* ECF No. 51-1, treat the district court's release order with conditions as an indicative ruling, *see* Fed. R. Crim. P. 37(a)(3), and remand for further proceedings, *see* Fed. R. App. P. 12.1(b).

There is no longer any reason to litigate the district court's original order releasing Burger on personal recognizance. For purposes of procedural streamlining, Burger no longer asserts that he should be released on personal recognizance—he will abide by the strict conditions imposed by the district court yesterday. So Burger has no objection to granting the government's emergency motion to vacate the earlier release order. And given that the judge most familiar with Burger and this case—the district court—has determined that Burger should be released with strict conditions, *see* Att. A, this Court

should treat that order as an indicative ruling and remand for further proceedings.[1]

\* \* \*

There is no reason to detain Burger at this point. Burger has been on release for over a month without incident. The district court believes that Burger should be released subject to strict conditions. *See* Att. A. Burger does not contest release with strict conditions. *See supra.* And the government itself has repeatedly suggested that release with strict conditions would be adequate to ensure Burger's appearance and public safety. *See, e.g.*, Gov't Emergency Mot. to Stay (ECF No. 12-1) at 15 (government arguing that "releas[ing] Burger under supervision … would better assure public safety while this Court considers this appeal"). Whatever path it takes, this Court should deny the government's request to either order Burger's detention or order the district court to issue an arrest warrant.

                                                  Respectfully submitted,

                                                  MAUREEN SCOTT FRANCO
                                                  Federal Public Defender

                                                  s/ Carl R. Hennies
                                                  CARL R. HENNIES
                                                  Assistant Federal Public Defender

---

[1] The government's emergency motion requested that the magistrate judge's detention order remain in place subject to reopening the detention hearing. Given that the district court has now held a detention hearing, reviewed the magistrate judge's order under § 3145, and determined that detention is not appropriate, that request for relief is moot. *See United States v. Maull*, 773 F.2d 1479, 1486 (8th Cir. 1985) (en banc) (explaining that § 3145's provisions "underscore the importance of the judge having original jurisdiction over the offense" and rejecting the view that "this substantial responsibility, placed in the hands of an Article III judge, can be diminished by the earlier action of a magistrate").

**ATTACHMENT A**

District Court Order Setting Conditions of Release
ECF No. 104

AO 199A (Rev. 06/19) Order Setting Conditions of Release

Page 1 of 4 Pages

# UNITED STATES DISTRICT COURT
## for the
## Western District of Texas

FILED
DEC 29 2025
CLERK, U.S. DISTRICT COURT
WESTERN DISTRICT OF TEXAS
BY ____VR____
DEPUTY CLERK

United States of America )
v. )
) Case No. 1:25-CR-00332-ADA-SH
James Wesley Burger )
*Defendant* )

## ORDER SETTING CONDITIONS OF RELEASE

IT IS ORDERED that the defendant's release is subject to these conditions:

(1) The defendant must not violate federal, state, or local law while on release.

(2) The defendant must cooperate in the collection of a DNA sample if it is authorized by 34 U.S.C. § 40702.

(3) The defendant must advise the court or the pretrial services office or supervising officer in writing before making any change of residence or telephone number.

(4) The defendant must appear in court as required and, if convicted, must surrender as directed to serve a sentence that the court may impose.

The defendant must appear at: United States Courthouse, 501 West 5th Street, Austin, Texas
*Place*

on _____
*Date and Time*

If blank, defendant will be notified of next appearance.

(5) The defendant must sign an Appearance Bond, if ordered.

AO 199B (Rev. 12/20) Additional Conditions of Release

## ADDITIONAL CONDITIONS OF RELEASE

Pursuant to 18 U.S.C. § 3142(c)(1)(B), the court may impose the following least restrictive condition(s) only as necessary to reasonably assure the appearance of the person as required and the safety of any other person and the community.

IT IS FURTHER ORDERED that the defendant's release is subject to the conditions marked below:

( X ) (6) The defendant is placed in the custody of: ▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓
Person or organization ▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓
Address *(only if above is an organization)* ▓▓▓▓▓▓▓▓▓▓
City and state ▓▓▓▓▓▓▓▓▓▓  Tel. No. ▓▓▓▓▓▓

who agrees to (a) supervise the defendant, (b) use every effort to assure the defendant's appearance at all court proceedings, and (c) notify the court immediately if the defendant violates a condition of release or is no longer in the custodian's custody.

Signed: ▓▓▓▓▓▓▓▓▓▓   12/29/2025
Custodian   Date

( X ) (7) The defendant must:
( X ) (a) submit to supervision by and report for supervision to the **U.S. Pretrial Services Office**, telephone number, **(512) 916-5297**, no later than **as directed.**
( X ) (b) continue or actively seek employment.
( ) (c) continue or start an education program.
( ) (d) surrender any passport to: **U.S. Pretrial Services.**
( X ) (e) not obtain a passport or other international travel document.
( X ) (f) abide by the following restrictions on personal association, residence, or travel: **Travel restricted to St. Lucie and surrounding counties unless authorized by the Court or U.S. Pretrial Services. May travel to Austin, TX for court and to meet with counsel. No foreign tr**
( X ) (g) avoid all contact, directly or indirectly, with any person who is or may be a victim or witness in the investigation or prosecution, including: **All co-defendants.**
( X ) (h) get medical or psychiatric treatment: _____
( ) (i) return to custody each _____ at _____ o'clock after being released at _____ o'clock for employment, schooling, or the following purposes: _____
( ) (j) maintain residence at a halfway house or community corrections center, as the pretrial services office or supervising officer considers necessary.
( X ) (k) not possess a firearm, destructive device, or other weapon.
( X ) (l) not use alcohol ☒ at all ☐ excessively.
( X ) (m) not use or unlawfully possess a narcotic drug or other controlled substances defined in 21 U.S.C. § 802, unless prescribed by a licensed medical practitioner.
( X ) (n) submit to testing for a prohibited substance if required by the pretrial services office or supervising officer. Testing may be used with random frequency and may include urine testing, the wearing of a sweat patch, a remote alcohol testing system, and/or any form of prohibited substance screening or testing. The defendant must not obstruct, attempt to obstruct, or tamper with the efficiency and accuracy of prohibited substance screening or testing.
( X ) (o) participate in a program of inpatient or outpatient substance abuse therapy and counseling if directed by the pretrial services office or supervising officer.
( X ) (p) participate in one of the following location restriction programs and comply with its requirements as directed.
☐ (i) **Curfew.** You are restricted to your residence every day ☐ from _____ to _____, or ☐ as directed by the pretrial services office or supervising officer; or
☒ (ii) **Home Detention.** You are restricted to your residence at all times except for employment; education; religious services; medical, substance abuse, or mental health treatment; attorney visits; court appearances; court-ordered obligations; or other activities approved in advance by the pretrial services office or supervising officer; or
☐ (iii) **Home Incarceration.** You are restricted to 24-hour-a-day lock-down at your residence except for medical necessities and court appearances or other activities specifically approved by the court; or
☐ (iv) **Stand Alone Monitoring.** You have no residential curfew, home detention, or home incarceration restrictions. However, you must comply with the location or travel restrictions as imposed by the court.
Note: Stand Alone Monitoring should be used in conjunction with global positioning system (GPS) technology.

AO 199B (Rev. 12/20) Additional Conditions of Release

Page 3 of 4 Pages

## ADDITIONAL CONDITIONS OF RELEASE

( X ) (q) submit to the following location monitoring technology and comply with its requirements as directed:
- ☐ (i) Location monitoring technology as directed by the pretrial services or supervising officer; or
- ☐ (ii) Voice Recognition; or
- ☐ (iii) Radio Frequency; or
- ☒ (iv) GPS.

( X ) (r) pay all or part of the cost of location monitoring based upon your ability to pay as determined by the pretrial services or supervising officer.

( X ) (s) report as soon as possible, to the pretrial services or supervising officer, every contact with law enforcement personnel, including questioning, or traffic stops.

( X ) (t) <u>Pay all or part of the costs for referrals (treatment, drug testing, residential placement) based upon your ability to pay as directed by the pretrial services or supervising officer.</u>

AO 199C (Rev. 09/08) Advice of Penalties    Page 4 of 4 Pages

## ADVICE OF PENALTIES AND SANCTIONS

TO THE DEFENDANT:

YOU ARE ADVISED OF THE FOLLOWING PENALTIES AND SANCTIONS:

Violating any of the foregoing conditions of release may result in the immediate issuance of a warrant for your arrest, a revocation of your release, an order of detention, a forfeiture of any bond, and a prosecution for contempt of court and could result in imprisonment, a fine, or both.

While on release, if you commit a federal felony offense the punishment is an additional prison term of not more than ten years and for a federal misdemeanor offense the punishment is an additional prison term of not more than one year. This sentence will be consecutive (*i.e.*, in addition to) to any other sentence you receive.

It is a crime punishable by up to ten years in prison, and a $250,000 fine, or both, to: obstruct a criminal investigation; tamper with a witness, victim, or informant; retaliate or attempt to retaliate against a witness, victim, or informant; or intimidate or attempt to intimidate a witness, victim, juror, informant, or officer of the court. The penalties for tampering, retaliation, or intimidation are significantly more serious if they involve a killing or attempted killing.

If, after release, you knowingly fail to appear as the conditions of release require, or to surrender to serve a sentence, you may be prosecuted for failing to appear or surrender and additional punishment may be imposed. If you are convicted of:

(1) an offense punishable by death, life imprisonment, or imprisonment for a term of fifteen years or more – you will be fined not more than $250,000 or imprisoned for not more than 10 years, or both;
(2) an offense punishable by imprisonment for a term of five years or more, but less than fifteen years – you will be fined not more than $250,000 or imprisoned for not more than five years, or both;
(3) any other felony – you will be fined not more than $250,000 or imprisoned not more than two years, or both;
(4) a misdemeanor – you will be fined not more than $100,000 or imprisoned not more than one year, or both.

A term of imprisonment imposed for failure to appear or surrender will be consecutive to any other sentence you receive. In addition, a failure to appear or surrender may result in the forfeiture of any bond posted.

### Acknowledgment of the Defendant

I acknowledge that I am the defendant in this case and that I am aware of the conditions of release. I promise to obey all conditions of release, to appear as directed, and surrender to serve any sentence imposed. I am aware of the penalties and sanctions set forth above.

_____ James Burger _____
*Defendant's Signature*

_____
*City and State*

### Directions to the United States Marshal

( X ) The defendant is ORDERED released after processing.
( ) The United States marshal is ORDERED to keep the defendant in custody until notified by the clerk or judge that the defendant has posted bond and/or complied with all other conditions for release. If still in custody, the defendant must be produced before the appropriate judge at the time and place specified.

Date: 12/29/2025

_____
*Judicial Officer's Signature*

Alan Albright, U.S. District Judge
*Printed name and title*

DISTRIBUTION:    COURT    DEFENDANT    PRETRIAL SERVICE    U.S. ATTORNEY    U.S. MARSHAL

**ATTACHMENT B**
Burger's Motion to Revoke Detention Order
ECF No. 98

UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF TEXAS
AUSTIN DIVISION

| | | |
|---|---|---|
| UNITED STATES OF AMERICA | § | |
| | § | |
| v. | § | NO. A:25-CR-00332-ADA |
| | § | |
| JAMES WESLEY BURGER | § | |

### MOTION TO REVOKE DETENTION ORDER

TO THE HONORABLE UNITED STATES DISTRICT JUDGE ALAN ALBRIGHT:

COMES NOW Defendant James Wesley Burger, by and through his attorneys, and files this Motion to Revoke Detention Order pursuant to 18 U.S.C. § 3145(b).

Yesterday, the Fifth Circuit stayed this Court's order of release dated December 4, 2025 (the "second release order"). *See* Exhibit C. The government interprets the Fifth Circuit's order to mean Mr. Burger again must be detained. Government counsel has told Mr. Burger's counsel that he has until 2 pm today to turn himself in to custody of the U.S. Marshals or they will have him arrested.

Mr. Burger respectfully requests this Court now revoke the Detention Order issued by U.S. Magistrate Judge Mark Lane on May 27, 2025. In support, Mr. Burger shows the Court the following:

   I.   **PROCEDURAL SAGA**

James Burger was arrested via criminal complaint on May 16, 2025. ECF No. 2. United States Magistrate Judge Mark Lane held a detention hearing on May 27, 2025, and, at the

conclusion of that hearing, ordered Mr. Burger detained.[1] ECF No. 13. At the time of the detention hearing, Mr. Burger did not have family who was willing to have him live with them, as the aunt and uncle with whom he had been living had had their home raided by the FBI only weeks prior. Mr. Burger had nowhere to release to at the time of the detention hearing.

The government indicted Mr. Burger on June 17, 2025, charging him with two counts of interstate threatening communication in violation of 18 U.S.C. § 875(c). ECF No. 19. Undersigned counsel took over the case on July 25, 2025. ECF Nos. 28, 29. Counsel for the government substituted in on August 4, 2025. ECF No. 31. After Mr. Burger rejected a plea offer, the government filed a superseding indictment on October 21, 2025, adding an additional interstate threatening communication count to the superseding indictment. ECF No. 40.

On November 3, 2025, Mr. Burger filed pretrial motions seeking to suppress the statements obtained in violation of *Miranda* and seeking dismissal of the indictment on First Amendment grounds. ECF Nos. 52, 53. This Court held a lengthy hearing on the Motion to Dismiss on November 18, 2025. ECF No. 66. The parties filed supplemental briefing following that hearing. ECF Nos. 68-70. The Court held an additional lengthy hearing on the motion to dismiss on November 24, 2025. At that hearing, the Court announced its decision to dismiss the indictment and told the parties that a written order would be forthcoming. At that hearing, the Court asked the parties directly whether Mr. Burger would be released from custody. The government confirmed for the Court that there were no detainers on Mr. Burger and he would be released. The government did not object to Mr. Burger's release in open court nor request his detention.

---

[1] At the detention hearing, Mr. Burger was represented by a member of the Federal Public Defender's office who has since left the office. Neither of Mr. Burger's current undersigned counsel were present at the detention hearing. Similarly, the government was represented by an AUSA who has since left the U.S. Attorney's Office. The current AUSAs were not present at that detention hearing.

Following the hearing on November 24, 2025, the government filed a Motion to Stay Order Dismissing Superseding Indictment and Release Pending Appeal. ECF No. 72. Mr. Burger responded with his opposition to the government's request (ECF No. 74) and the government filed an additional memorandum in support of its request for a stay. ECF No. 75. On November 25, 2025, the Court denied the government's motion to stay the dismissal of the superseding indictment and ordered Mr. Burger's release. ECF No. 76. The following day, the Court issued the formal Order Dismissing Superseding Indictment. ECF No. 77.

Mr. Burger was released from custody on November 25, 2025, after spending six months in pre-trial detention.

## II. THE GOVERNMENT'S APPEAL

The government has filed emergency appeals in the Fifth Circuit, appealing both this Court's order of dismissal and orders of release. At issue today is the Court's Order Denying Government's Motion for Detention/Bond Hearing, issued December 4, 2025. ECF No. 83. Yesterday, the Fifth Circuit temporarily stayed that order. *See* **Exhibit C** (Fifth Circuit Unpublished Order dated 12/22/2025). The government interprets the Fifth Circuit's order to mean that the order regarding release now in effect is the original order of detention issued by the magistrate court on May 27, 2025.

The government wants Mr. Burger in custody immediately, no later than 2 pm today, or the government intends to have him arrested.[2] Mr. Burger asks this Court to revoke that detention order and set conditions of release.

---

[2] Undersigned counsel is not aware of an active arrest warrant for Mr. Burger at this time but counsel for the government has conveyed they intend to seek one.

3

### III. THE COURT SHOULD REVOKE THE DETENTION ORDER

On May 27, 2025, United States Magistrate Judge Mark Lane ordered Mr. Burger detained after a hearing. A person ordered detained by a magistrate judge "may file, with the court having original jurisdiction over the offense, a motion for revocation … of the order." 18 U.S.C. § 3145(b). Review of a magistrate judge's detention order by the district court is de novo. *See United States v. Lee*, 156 F.Supp.2d 620, 623 (E.D. LA. 2001) (citing *United States v. Fortna*, 769 F.2d. 243, 249 (5th Cir. 1985)).

This Court is very familiar with the facts of this case. This Court can set conditions of release for Mr. Burger that reasonably assure his appearance in court, if required, and protect the community.

Undersigned counsel has made efforts to negotiate conditions of release that would satisfy the government in this case, but the government has refused to engage in negotiation about appropriate conditions, insisting only that Mr. Burger be detained. *See* **Exhibit A** (email from counsel to government counsel).

Mr. Burger should not be detained. His circumstances have changed dramatically since the detention hearing was held back in May.

To begin with, Mr. Burger has been undergoing counseling with Parents4Peace, an organization that specializes in deprogramming persons who have become radicalized. This organization was recommended *by the FBI* to Mr. Burger's family. Undersigned counsel worked to get the organization involved with Mr. Burger while he was in pretrial custody at the Burnet County Jail. Mr. Burger has spent months, even prior to his release, engaged in weekly counseling sessions with licensed social workers and experienced de-radicalization experts. Mubin Sheikh, an

4

experienced deprogrammer, has been working with James and attests to Mr. Burger's active participation in the Parents4Peace programming and his changes in mentality since his engagement with P4P. *See* **Exhibit B** (Letter from Sheikh). The letter reports how James has expressed remorse over his actions and how he has gained an understanding of how he was on a misguided path with his interest in fundamentalist Islam.

Importantly for the Court to note, this counseling has continued under the supervision of his family. Mr. Burger has now been at home for a month. He has continued to engage in counseling with P4P. Since James was released, he returned to live with his aunt and uncle, Dana and Jim Best, at their home in Round Rock. James was originally going to Florida to live with his grandfather, Tom Burger, but returned to Texas when the government filed motions seeking his detention. Since returning to Texas after making it half-way to Florida just after the Thanksgiving holiday, Mr. Burger's grandfather Tom has been living in a hotel to provide additional support close-by, while James has been living with his aunt and uncle at their residence.

Since his release, James has not had any internet access. He does not have a cell phone and does not have access to a computer. These were restrictions that James agreed to abide by, under the direction of his aunt and uncle. They were not imposed by the Court.

James no longer uses marijuana and has not been consuming any alcohol. James has remained sober while he has been living with his family. He has been enjoying the holiday season with them, attending church services.

Additionally, James's family has voluntarily maintained communication with the FBI since his release. and answered their questions. The family has been supportive of the FBIs interest in

5

knowing about James' conduct, despite being under no legal obligation to continue to allow FBI agents to contact them or know the details of their lives.

There are no facts to support an argument that Mr. Burger is a flight risk. The opposite is true: he has a stable residence, he has the support of his aunt and uncle and his grandfather, and he has ongoing guidance and counseling specifically tailored to address his beliefs around Islamic fundamentalism that so concerned the government to begin with.

There is nothing new in the government's continued insistence that Mr. Burger is a danger to the community. The government rehashes its same interpretation of the underlying offense, the alleged "threats' Mr. Burger was charged with making in the online role-playing game Roblox. This Court has judiciously considered Mr. Burger's statements and reached a much different conclusion. As this Court has explained, Burger made his statements while "playing an *online video game*, speaking as a *character*, among other *players* who were similarly acting as *characters* in a virtual Church," an experience where players "appear as avatars and intentionally engage in distasteful debate." ECF No. 91.

The government also argues that a variety of other activity apart from the charged statements make Mr. Burger a danger, such as notes Burger had when he was transferred to federal custody, his internet search history, and other comments he had made online. This is more of the same—more speech and not actual indication that Burger was actively planning any kind of harm. The district court also considered this evidence and correctly noted that this "evidence by itself would not be criminal." ECF No. 91.

The only evidence of danger to the community that the Government presented at the detention hearing—and continues to present today—was the offenses themselves. Because this

6

Court now has a more complete understanding of the facts and circumstances surrounding Mr. Burger's alleged offenses, Mr. Burger respectfully requests that the Court revoke the magistrate judge's detention order.

IV. **CONCLUSION**

Wherefore Defendant James Burger respectfully requests that the Court revoke the detention order in this case and order that he be released on reasonable conditions.

Respectfully submitted,

MAUREEN SCOTT FRANCO
Federal Public Defender

/s/ JOSE I. GONZALEZ-FALLA
Assistant Federal Public Defender
Western District of Texas
Lavaca Plaza
504 Lavaca St., Ste. 960
Austin, Texas 78701
(512) 916-5025
(512) 916-5035 (FAX)
Bar Number: Texas 08135700

/s/ CHARLOTTE A. HERRING
Assistant Federal Public Defender
Western District of Texas
Lavaca Plaza
504 Lavaca St., Ste. 960
Austin, Texas 78701
(512) 916-5025
(512) 916-5035 (FAX)
TX Bar Number: 24064026

*Attorneys for Defendant*